UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C. | ) |
| and | ) |
| JONATHAN W. CUNEO | ) |
| v. | ) Case No. 08-00253 (RBW) |
| JOEL D. JOSEPH, | ) |
| Defendant | ) |

## DEFENDANT'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT AND THE MOTION TO DISMISS THE COUNTERCLAIM AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY JUDGMENT

**Introduction**

Defendant submits this memorandum in response to the motion for summary judgment and to dismiss the counterclaim. This memorandum is also submitted in support of defendant's motion for partial summary judgment. Plaintiffs' motion is based on disputed facts, including:

1. Defendant disputes that the "non-interference" clause was inserted into the contract because of Joseph's prior conduct.

2. Cuneo did not perform all of his obligations. Cuneo withheld moneys from the settlement which were promised to be paid within 90 days, and have not been paid. In addition, there is no provision in the agreement for holding back any money, including the money withheld concerning the Leatherman case.

1

3. Joseph is entitled to more than the amount specified by Cuneo because of unauthorized withholding and the passage of time, to which an interest charge must be attached. Joseph is seeking 1% per month on the unpaid balance.

4. Joseph did not demand a "finders" fee. Joseph admits that Cuneo claimed Joseph's action was a breach of contract, but it was not in fact a breach of contract, certainly not a material breach.

5. The Gold Train case was final when Joseph first contacted Cuneo's co-counsel.

6. Joseph denies that his suit against Dubbin et all interfered with relations between the firms.

7. While Cuneo may have retained counsel in Florida, he was under no obligation to do so.

Cuneo claims that this case is the second round of litigation between the parties, with the implication that defendant did something wrong. In fact, the first "round" was settled quickly because Cuneo realized that defendant was entitled to compensation. Now, once again, Cuneo is trying to get out of his legal obligations to Joseph, a person who brought Cuneo and his firm millions of dollars worth of legal fees.

## I.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE DECLARATORY ACTION AND ON THE BREACH OF CONTRACT CLAIM

. The contract clearly provides, and is attached to defendant's verified answer, that Cuneo is responsible for paying Joseph 20% of the amount that he or his firm received for the *Leatherman* case. Cuneo admits that he received payment on February

12, 2008 and immediately filed this action seeking a declaration that a provision of the contract voids entirely Joseph's interest.

The agreement is clear on its face that Joseph did not violate its terms. Cuneo claims that Joseph violated the provision that he not "correspond with the litigants." Cuneo claims that Joseph corresponded with **lawyers**, not litigants. Litigants are parties to an action, not their lawyers. Cuneo also claims that Joseph somehow interfered with the pending cases. The *Gold Train* case was settled, not pending, when Joseph sought compensation from co-counsel for work that he performed on the case. According to PACER, Case No. 1:01-cv-01859-PAS *Rosner, et al v. United States*, was terminated on September 29, 2005. Cuneo admits disbursement to Joseph of the Gold Train settlement in January, 2006. The Gold Train case was not pending after September 29, 2005.

### A. Ambiguities in Contracts Are Construed Against Their Drafters

Joseph verified that Mr. Cuneo's attorney drafted the agreement in question. The canon of construction known as *contra proferentum* – that ambiguities in a contract should be construed against the party who drafted the contract. *United States v. Ins. Co. of N. Am.,* 327 U.S. App. D.C. at 389 n.11, 131 F.3d at 1043 n.11.

In *American Airlines v. Wolens*, 513 U.S. 219, 248 (1995), Justice O'Connor, writing for court stated, "If the court finds the language to be ambiguous, it might invoke the familiar rule that the contract should be construed against its drafter, and thus that respondents should receive the benefit of the doubt. See 2 E. Farnsworth, Farnsworth on Contracts § 7.11, pp. 265-268 (1990) (hereinafter Farnsworth)." Williston on Contracts agrees with Farnsworth. 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 32:12 at 471-72 (4th ed. 1999) ("Since the language is

presumptively within the control of the party drafting the agreement, it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter."

Since Joseph reasonably believed that he had every right to contact his co-attorneys, and not litigants, the contract should be so construed. He obviously did not interfere in the case, since the case was already settled and terminated.

### B. Voiding the Agreement Because of a Minor Breach Constitutes an Unreasonable Liquidated Damages Penalty and is Therefore Void

A five-dollar late fee for late payment of a cable bill was found to be an illegal liquidated damages penalty in the District of Columbia. *District Cablevision v. Bassin*, 828 A.2d 714; 51 U.C.C. Rep. Serv. 2d (Callaghan) 149 (D.C. Court of Appeals, 2003). In the *Bassin* case the D.C. Court of Appeals ruled,

> For a liquidated damages clause to be valid and enforceable, and not void as a penalty, the common law insists that "the liquidated damages must not be disproportionate to the level of damages reasonably foreseeable at the time of the making of the contract." *Counsel v. Hogan*, 566 A.2d 1070, 1072 (D.C. 1989). "Agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced." *Order of AHEPA v. Travel Consultants, Inc.,* D.C. 367 A.2d 119 (D.C. 1976) (citations omitted). Where liquidated damages provision is "designed to make the default of the party against whom it runs more profitable to the other party than performance would be, it will be void as a penalty." *Id*. And "when a contract specifies a single sum in damages for any and all breaches even though it is apparent that all are not of the same gravity, the specification is not a reasonable effort to estimate damages; and when in addition the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach, its character as a penalty becomes unmistakeable." *Lake River Corp, v. Carborundum Co.,*

4

      769 F.2d 1284, 1290 (7th Cir. 1985." 2003 D.C. App. Lexis 471 at 22.

The penalty at issue in this case is whether voiding a $460,000 fee constitutes an illegal penalty. What was the actual cost to Cuneo of alleged breaches by Joseph? Joseph verifies that he received a settlement of $12,500 from co-counsel in the *Gold Train* case. That, at most, is the actual damage suffered by Cuneo. Since Cuneo had no legal obligation to pay this amount, he and his firm were not damaged in any way.

Total forfeiture of approximately $460,000 in fees bears no reasonable relationship to the actual costs incurred by Cuneo, and must therefore be held to be an illegal penalty.

## II.    JOSEPH'S FIRST, THIRD AND FOURTH CAUSES STATE VALID CLAIMS

Plaintiffs' breach of the settlement agreement reopens the underlying claims. Claim regarding malpractice is not time barred as Joseph continues to suffer harm. Because of Cuneo's legal malpractice, Joseph and other plaintiffs in the MCI case are still harassed by MCI and its assigns for the illegal debts to MCI that Cuneo failed to extinguish.

### A.  Joseph has Suffered Injury During the Past Two Years

Mr. Joseph states in his declaration that he has continued to recent telephone calls and written claims for payment for bills for long-distance telephone services that were the subject of the lawsuit. See Joseph's declaration at paragraphs 2, 3. In addition, Joseph had no reason to believe when the settlement agreement was entered into that he would be harassed by collections agencies concerning an illegal debt.

This is a mutual mistake of fact. There was no meeting of the minds on this point and the contract, as applied to legal malpractice committed by Cuneo, is not binding.

### B. Cuneo's Breach Reopens the Underlying Claims

If Cuneo is allowed to breach the settlement agreement, Joseph should be allowed to seek his original claim. *Kingvision Pay-Per-View v. Mardi Gras, Inc.,* 185 F. Supp. 2d 1340 (MD Georgia, 2002). In the *Kingsvision* case a settlement was reached, and one payment was made. Similarly, in the case at bar a settlement was reached and one payment was made. In the *Kingvision* case the court allowed the settlement agreement to be put aside and the original case was reinstated.

### III. DC CONSUMER PROTECTION LAW IS NOT DEFECTIVE

The scope of the D.C. Consumer Protection Procedures Act is exceptionally broad. *DeBerry v. First Gov't Mortg. & Investors Corp.,* 743 A.2d 699 (D.C. 1999). The court in DeBerry noted,

> the [broad] sweep with which the Council in the CPPA defined the subject matter of "trade practices" as "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process." Section 28-390 1 (7); *see* REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, ON BILL 1-253, THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT, at 14 (March 24, 1976) (1976 Report) (defining "goods and services" as "the subject matter of any trade practice, including *any action normally considered only incidental to the supply of goods and services to consumers"* (emphasis added by Court of Appeals)).

The contract between Cuneo and Joseph was incidental to the supply of legal services to consumers and thus comes within the broad reach of the D.C. Consumer Protection Procedures Act. Cuneo's attempt to extort an unreasonable liquidated damage

6

from Joseph runs afoul of the CPPA, as well as the common law standard for interpretation of contracts.

### IV.     CLAIM FOR INTENTIONAL INFLICTION IS PROPERLY STATED

When a party in bad faith breaches a contract, there is liability in addition to the breach of contract claim. *Campbell v. State Farm Ins. Co.,* 65 P.3d 1134, 432 Utah Adv. Rep. 44 (2001); rev'd on other grounds 538 U.S. 408 (2003). In that case, "the jury found that State Farm had acted unreasonably and in bad faith in its decision to take the case to trial . . . ." 65 P. 3d at 1143. Cuneo also acted unreasonably and in bad faith in failing to pay the sum due as agreed in the settlement agreement.

In the *Campbell* case the jury awarded the Campbells $2.6 million in compensatory damages and $45 million in punitive damages. The trial court ordered a remittitur of the damage awards to $1 million in compensatory damages and $25 million in punitive damages. In addition, the trial court awarded the Campbells $400,834.70 (forty percent of the compensatory damages award) for attorney fees and $400,747.78 for litigation expenses, totaling $801,582.48. The U.S. Supreme Court upheld the $1 million in compensatory damages, and the attorneys' fee award, but reversed the punitive damage award as being disproportionate to actual damages. 538 U.S. 408 (2003).

Intentional infliction of emotional distress requires conduct so " 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) (quoting RESTATEMENT (SECOND) OF TORTS Section 46 cmt. d(1965)). Liability requires more than "mere insults,

7

indignities, threats, annoyances, petty oppressions, or other trivialities." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotation marks and citation omitted). The tort of intentional infliction of emotional distress is reserved for outrageous behavior.

Cuneo's conduct was truly outrageous and should not be justified in a civilized society. Cuneo has no valid argument for failing to pay Joseph, other than to punish him for receiving compensation from other lawyers for a case that he created. Cuneo's conduct is utterly intolerable in a civilized community. Cuneo knew that Joseph is relying upon this money to fund his retirement and that Cuneo knew that deprivation of such a large sum for retirement would cause Joseph substantial emotional stress and pain.

In a civilized society we should not tolerate lawyers disregarding the law. Cuneo certainly can read. He knows that Joseph did not breach the settlement agreement, yet he hangs on to the thin thread that Joseph somehow breached the settlement agreement.

The settlement agreement provides:

> Joel Joseph shall make **no attempt to interfere with the pending cases** or cases that follow, nor shall he attempt to file liens or notices of claim, or **correspond with the litigants**. If he does he has breached the agreement and waives his percentages. (emphasis added).

A litigant is a party. Joseph did not communicate with any party. Joseph did not interfere with any of the pending cases. Joseph did not breach the settlement agreement in any way. See his declaration at paragraphs 6-10.

The tort of intentional infliction of emotional distress has three elements. A defendant will not be liable unless he or she engages in (1) "extreme and outrageous conduct" which (2) "intentionally or recklessly" causes (3) "severe emotional distress to another." Restatement (Second) of Torts, Section 46 (1965), cited with approval in *Sere*

8

*v. Group Hospitalization, Inc.,* 443 A.2d at 37 and *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C. 1980). The requisite intent or recklessness "can be inferred from the outrageousness of the acts." *Howard University v. Best,* 484 A.2d 958, 985 (D.C. 1984. However, a defendant will be liable "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT, *supra,* Section 46 comment d.  *See Simon v. Solomon*, 385 Mass. 91, 431 N.E.2d 556, 562 (1982);  *Hilder v. St. Peter*, 144 Vt. 150, 478 A.2d 202, 209 (1984).

Intent or recklessness can be inferred from the outrageousness of the acts. *Id.; Anderson v. Prease*, 445 A.2d 612, 613 (D.C. 1982).  A plaintiff need not prove actual physical injury. *Waldon v. Covington,* 415 A.2d at 1076.  It is for the trial court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, *Sere v. Group Hospitalization, Inc., supra*, 443 A.2d at 38.  The case should be submitted to the jury if reasonable people could differ on whether the conduct is extreme and outrageous. *Boyle v. Wenk*, 378 Mass. 592, 392 N.E.2d 1053 (Mass. 1979); *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 615 (1977) (en banc).

Punitive damages will generally not lie for breach of contract. *Bedell v. Inver Housing, Inc.,* 506 A.2d 202, 206 (D.C. 1986). The only exception to that rule recognized in the District of Columbia is that "where the alleged breach of contract 'merges with, and assumes the character of, a willful tort' . . . punitive damages [will] be available." *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.) (citations omitted), *cert. denied,* 459 U.S. 912, 74 L. Ed. 2d 176, 103 S. Ct. 221 (1982); *see Washington Medical Center, Inc.*

9

*v. Holle,* 573 A.2d 1269, 1284 n.24 (D.C. 1990).  Cuneo's breach of contract merges with and assumes the character of the tort of intentional infliction of emotional distress and therefore punitive damages are properly sought.

## V.  CONCLUSION

Cuneo's attempt to avoid payment of an obligation stemming from the settlement of a case is outrageous and unjustified.  Cuneo earned $2.3 million based solely on a case created by Joseph.  This court should grant Joseph motion for partial summary judgment and deny Cuneo's motion for summary judgment.

/s/ Joel D. Joseph
_____
1717 4th Street, Third Floor
Santa Monica, CA 90401
(310) 394-6600

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE CUNEO LAW GROUP, P.C.     )
                              )
        and                   )
                              )
JONATHAN W. CUNEO             )
                              )
        v.                    )   Case No. 08-00253 (RBW)
                              )
JOEL D. JOSEPH,               )
                              )
        Defendant             )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE

Defendant submits this statement of material facts in opposition to plaintiffs' statement of material facts.

1. Defendant does not dispute the accuracy of paragraph one.

2. Defendant disputes that the "non-interference" clause was inserted into the contract because of Joseph's prior conduct.

3. Cuneo did not perform all of his obligations. Cuneo withheld moneys from the settlement which were promised to be paid within 90 days, and have not been paid. In addition, there is no provision in the agreement for holding back any money, including the money withheld concerning the Leatherman case.

4. Joseph is entitled to more than the amount specified by Cuneo because of unauthorized withholding and the passage of time, to which an interest charge must be attached. Joseph is seeking 1% per month on the unpaid balance.

5. Joseph did not demand a "finders" fee. Joseph admits that Cuneo claimed Joseph's action was a breach of contract, but it was not in fact a breach of contract, certainly not a material breach.

6. Joseph did sue Dubbin and Berman and their firms, and did settle with them. Joseph was counsel in charge of the Gold Train case and hired Dubbin as local counsel. Joseph felt that his $1 million fee for local counsel was excessive and that part of that should have been paid to Joseph who created and initiated the case, yet earned only $240,000 for the case, less that one-fourth of local counsel's fee.

7. The Gold Train case was final when Joseph first contacted Cuneo's co-counsel.

8. Joseph denied that his suit against Dubbin et all interfered with relations between the firms.

9. While Cuneo may have retained counsel in Florida, he was under no obligation to do so.

/s/ Joel D. Joseph

JOEL D. JOSEPH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C. ) | |
| ) | |
| and ) | |
| ) | |
| JONATHAN W. CUNEO ) | |
| ) | |
| v. ) | Case No. 08-00253 (RBW) |
| ) | |
| JOEL D. JOSEPH, ) | |
| ) | |
| Defendant ) | |

## DECLARATION OF JOEL D. JOSEPH

I, Joel D. Joseph, affirm, under the penalties for perjury, that the following statements are accurate and truthful:

1. I am the defendant in the above-captioned case.

2. During the past two years I have received numerous telephone calls and letters seeking to collect payments for long distance telephone calls concerning MCI service that was the subject of the lawsuit The Cuneo Group was retained to represent me for.

3. The Federal Communications Commission ruled that MCI's long distance charges of approximately $3.00 per minute were not approved, and thus were illegal.

4. The Cuneo Group failed to obtain a fair result in representing me and the class.

5. The settlement for $88 million, including $25 million for attorneys fees, reimbursed plaintiffs for only about 20% of the overcharges made by MCI.

6. After I signed the settlement agreement with Jonathan Cuneo, I did not correspond with any litigants in Kwikset, Leatherman or the Gold Train cases.

7. "Litigant" means to mean a party to the action. According to *Websters II, New Riverside University Dictionary,* Riverside Publishing Company, 1984, a litigant is "a party engaged in a lawsuit." Page 698.

8. I did not interfere in the Leatherman, Kwikset or Gold Train case, and in fact, I assisted Samuel Dubbin in research for those cases (for which I was never paid).

9. I did not file liens or notices of claims after the settlement agreement was entered into.

10. I did not breach the settlement agreement in any way.

11. I have suffered a lack of sleep and anxiety from Cuneo's failure to pay me my share of the Leatherman settlement and worry that Cuneo will not pay me for my share of the Kwikset settlement or judgment.

12. Cuneo told me several years ago that I should be able to retire in style after receiving the Leatherman and Kwikset settlements.

13. As a direct and proximate result of Cuneo intentionally failing to pay what he owes me under the settlement agreement, I often wake up in the middle of the night concerned that I will not be able to afford retirement. I am turning 60 in May, so I am very concerned about being able to pay for my retirement.

I affirm under the penalties for perjury that the above statements are accurate and truthful.

*/s/ Joel D. Joseph*

_____
JOEL D. JOSEPH