## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE CUNEO LAW GROUP, P.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-00253 (RBW) |
| | ) | |
| JOEL D. JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR A PARTIAL SUMMARY JUDGMENT

Plaintiffs Jonathan W. Cuneo and The Cuneo Law Group, P.C., (collectively "Cuneo") submit this memorandum of points and authorities in opposition to Defendant's Motion for a Partial Summary Judgment.

### INTRODUCTION

This case represents the second round of litigation between these parties before this Court. Defendant Joel D. Joseph ("Joseph") is an attorney who was employed by Cuneo at one time. While employed by Cuneo Joseph worked on, among others, three contingent fee cases known as the *Gold Train*, *Leatherman* and *Kwikset* cases. Joseph terminated his relationship with Cuneo by filing a lawsuit against Cuneo before this Court captioned *Joel D. Joseph v. The Cuneo Law Group, P.C. et al.*, Civil Action No. 1:01CV01755. Ultimately the parties entered into a settlement which terminated the litigation. The settlement was embodied in a document entitled Agreement of Release (the "Settlement Agreement"). In the Settlement Agreement Cuneo promised, *inter alia*, to pay Joseph 20% of the net fees received, if any, from any of the three cases. In return, Joseph promised, *inter alia*, that he would not correspond with the litigants or interfere

1

with the three cases and that if he did, he would waive his right to receive a percentage of the fees in these cases.

Cuneo did receive payment in the *Gold Train* case and immediately paid Joseph his full share -- $240, 895. Joseph then contacted Cuneo's *Gold Train* co-counsel, claiming he was entitled to 20% of their fees as a "referral" fee. Cuneo promptly and repeatedly warned Joseph, through counsel, that his conduct breached the Settlement Agreement. Deliberately ignoring these warnings, Joseph then sued Cuneo's *Gold Train* co-counsel in federal court in Miami, claiming he was entitled to 1/3 of their fees. To avoid further disruption to the *Gold Train* case, Cuneo agreed to indemnify his co-counsel and retained Miami counsel to defend the case. The district court twice dismissed the case for failure to state a claim, the second time with prejudice, and Cuneo ultimately paid Joseph a nominal sum to settle the case.

Cuneo received a fee award in the *Leatherman* case on February 12, 2008. Cuneo's net fee was $2,190,982 and Joseph would have been entitled to approximately $438,196. Believing that Joseph had materially breached the Settlement Agreement by his conduct with respect to the *Gold Train* case, Cuneo promptly file a declaratory judgment action seeking a ruling from the Court adjudicating Joseph's entitlement, if any, to a percentage of the *Leatherman* fee. Joseph then filed a counterclaim against Cuneo seeking millions in damages on a variety of theories.

Cuneo has already moved for summary judgment granting his declaratory judgment action and denying Joseph's breach of contract counterclaim, relying on the pleadings and the affidavits of Jonathan W. Cuneo and Samuel J. Dubbin. As to the remainder of Joseph's counterclaims Cuneo has moved for dismissal for failure to state a

claim. Joseph now seeks partial summary judgment against Cuneo's declaratory

judgment action and in favor of his second counterclaim, that for breach of contract. *See*

Defendant's Opposition to the Motion for Summary Judgment and the Motion to Dismiss

the Counterclaim and Statement of Points and Authorities in Support of the Motion for a

Partial Summary Judgment ("Joseph Statement").

Cuneo opposes Joseph's motion for summary judgment. Not only does Joseph

fail to demonstrate that he is entitled to summary judgment in his favor as to his breach of

contract counterclaim, Cuneo has already demonstrated that summary judgment should

be granted in its favor as to the declaratory judgment action, which concerns the identical

issue.

## THE APPLICABLE LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and

affidavits demonstrate that there is no genuine issue of material fact in dispute and that

the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c);

*Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard,

the moving party "bears the initial responsibility of informing the court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v,*

*Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party must "go beyond

the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a

genuine issue for trial.'" *Id.* at 324. Although a court should draw all inferences from the

supporting records submitted by the nonmoving party, the mere existence of a factual

dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be

capable of affecting the substantive outcome of the litigation; to be genuine, the issue

must be supported by sufficient admissible evidence that a reasonable trier of fact could

find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C.

Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that a party must prevail as a matter of law"). "If the evidence is merely

colorable, or it is not sufficiently probative, summary judgment may be granted." *Liberty

Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of

the adverse party's pleading are not enough to prevent the issuance of summary

judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse

party "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). Instead, while the moving party bears the initial responsibility of identifying

those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the nonmoving party to "come forward with 'specific facts

showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e))

(emphasis in original).

## **ARGUMENT**

### **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS BREACH OF CONTRACT CLAIM**

Plaintiffs originally filed a declaratory judgment action against Joseph, alleging that he had materially breached the Settlement Agreement, relieving plaintiffs of their obligation to further perform on that contract.

At issue is Joseph's entitlement to a 20% share of the $2,190,982 fee Cuneo recently received from the *Leatherman* case. Cuneo Aff., ¶ 12. The Settlement Agreement provided that Joseph would receive such a share, if received by Cuneo, in three contingent fee cases, but went on to say that "Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants. If he does he has breached the agreement and waives his percentages." Settlement Agreement, ¶ 6. Joseph maintains that Cuneo has breached the Settlement Agreement by not paying him his 20% share. Joseph Statement at 2-3. Cuneo maintains that it is Joseph who has deliberately breached this provision, despite repeated warnings, by his conduct in corresponding with litigants, filing liens or notices of claim, and by suing Cuneo's co-counsel in the *Gold Train* case for a share of their fees, thereby relieving Cuneo of the obligation to further perform under the Settlement Agreement. Cuneo Aff., ¶¶ 8-9, 13.

Joseph argues that he has not breached the Settlement Agreement because "litigants" means "parties" and he contacted attorneys and not parties, and that he did not interfere with the *Gold Train* case because it was no longer pending when he sued Cuneo's co-counsel. Joseph Statement at 2-3. Joseph further argues that even if he did breach the Settlement Agreement his breach was minor and not material and that even if Cuneo was harmed by his breach the waiver provision in the Settlement Agreement is void as an unreasonable liquidated damages provision. Joseph Statement at 4-5.

5

Because Cuneo's declaratory judgment action and Joseph's breach of contract claim are in fact the opposite sides of the same dispute, they should be considered together. The material facts are not in dispute. Cuneo, as we show, prevails on the issues and is entitled to summary judgment. Joseph's motion for partial summary judgment should be denied.

### A.  Material Facts As To Which There Is No Genuine Issue

There is no genuine issue as to the following material facts:

Cuneo performed all his obligations under the Settlement Agreement up until the present dispute, including paying Joseph a 20% share of the fee in the *Gold Train* case amounting to $240,895.  Affidavit of Jonathan W. Cuneo ("Cuneo Aff."), ¶ 7.

Cuneo did receive a fee in the *Leatherman* case.  Joseph would have been entitled under the Settlement Agreement to 20% of the amount received, or $438,196.  Settlement Agreement, Exhibit A, ¶ 1; Cuneo Aff., ¶¶ 12-13.[1]

The Settlement Agreement provides that "Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants.  If he does he has breached the agreement and waives his percentages."  Settlement Agreement, ¶ 6.

The "non-interference" clause in the Settlement Agreement was inserted in the contract at Cuneo's insistence because of Joseph's prior conduct, including but not limited to filing a lien in the *MCI* case, a case in which he had appeared as a plaintiff, in order to prevent such conduct in the pending cases.  Although Joseph disputes the reason for the non-interference clause, he does not dispute that he agreed to it, that it was an

---

[1] Joseph maintains that he is due a larger amount because of the delay in payment.  Joseph Statement at 2. There is no provision in the Settlement Agreement for interest.

essential and material part of the settlement and that Cuneo would not have entered into the Settlement Agreement without it. Cuneo Aff., ¶ 5; Joseph Statement at 1.

Shortly after receiving his percentage from the *Gold Train* fee, Joseph wrote Cuneo's co-counsel in that case, Samuel J. Dubbin and Steve W. Berman, and demanded a "referral" fee from them amounting to 20% of their fees. Cuneo promptly caused counsel to contact Joseph and warn him that his conduct constituted a breach of the Settlement Agreement. Joseph then sent counsel a draft complaint demanding 1/3 of co-counsels' fees. Counsel again wrote Joseph, warning him that such a suit against co-counsel would constitute a further breach of the Settlement Agreement. Cuneo Aff., ¶ 8; Affidavit of Samuel J. Dubbin ("Dubbin Aff."), ¶ 5.

Despite these repeated warnings, Joseph deliberately persisted in his course of conduct, suing Cuneo's *Gold Train* co-counsel, Samuel Dubbin and Steve Berman and their firms, in U.S. District Court in Miami, FL, claiming he was entitled to 1/3 of their fees from the *Gold Train* case under a variety of theories. Cuneo Aff., ¶ 9; Dubbin Aff., ¶ 5; Answer, ¶ 31.

When Joseph first contacted Cuneo's co-counsel and when he sued them, the *Gold Train* case was still pending. Although the parties had reached a settlement which was accepted by the district court, ending the adversary phase of the case, the settlement implementation phase of the case was ongoing and would be so for another five years. The district court had maintained jurisdiction to oversee implementation of the settlement and Cuneo and his co-counsel had on-going responsibilities to the class as well. There have been numerous filings on the *Gold Train* docket by Cuneo and his co-counsel

during the settlement phase of the case since it was administratively "closed," including

one as recently as January 2008.  Cuneo Aff., ¶ 6; Dubin Aff., ¶ 3.

Indeed, Joseph ignores even his own prior recognition of the pending status of the

*Gold Train* case.  When Joseph sued Cuneo's *Gold Train* co-counsel in Miami, the

defendants there requested the court to transfer the case to the docket of the Honorable

Patricia Seitz, the judge presiding over the *Gold Train* case, pursuant to Local General

Rule 3.9D of the United States District Court for the Southern District of Florida.  That

rule provides that:

> [w]henever an action or proceeding is filed in the Court which
> involves subject matter which is a material part of the subject
> matter of another action or proceeding then pending before this
> Court, or for other reasons the disposition thereof would appear
> to entail the unnecessary duplication of judicial labor if heard by
> a different Judge, the Judges involved shall determine whether the
> newly filed action or proceeding shall be transferred to the Judge
> to whom the earlier filed action or proceeding is assigned.
> (emphasis added).

In their motion, defendants argued that:

> [a]lthough the [*Gold Train*] case is closed for administrative
> purposes, Judge Seitz "retain[ed] exclusive and continuing
> jurisdiction over the Action, all Parties, the Claims Conference
> and Settlement Class Members, to interpret and enforce the terms,
> conditions and obligations of this Final Order and Judgment,
> including all matters relating to the consummation, performance
> and enforcement of the Settlement Agreement ."  Thus, the [*Gold
> Train*] case, despite its administrative closure, remains "pending"
> before Judge Seitz.  Indeed, Judge Seitz continues to preside over
> the case and issue orders, including orders regarding the allocation
> and distribution of attorneys fees.

Defendants' S.D. Fla. Local General Rule 3.9D Notice of Similar Action, attached as

Exhibit A to the Declaration of David W. Stanley ("Stanley Decl.") (citations omitted).

Not only did Joseph not dispute defendants' characterization of the *Gold Train* case as "pending," he filed no opposition at all to the transfer request and the case was subsequently transferred to Judge Seitz. *See* Order Transferring Case and Civil Docket, # 11, Case No. 1:06-cv-20465-PAS, S.D. Fla., attached to Stanley Decl. as Exhibits B and C. Joseph's silence then strongly indicates his understanding that the *Gold Train* case was in fact "pending." He should not be heard now to say the contrary.

Joseph's suit against Cuneo's *Gold Train* co-counsel not only had the potential to, but did, seriously interfere with relations between Cuneo and his co-counsel, upsetting the allocation of fees and future responsibilities in the settlement phase of the case, to the potential detriment of their responsibilities to the class. Cuneo Aff., ¶ 9; Dubbin Aff., ¶¶ 4-5.

To avoid further interference and disruption to the *Gold Train* case, Cuneo promptly agreed to indemnify his co-counsel against Joseph's suit. Cuneo retained counsel to defend the suit in Miami. Miami counsel succeeded in twice having Joseph's suit dismissed for failure to state a claim, the second time with prejudice. Cuneo ultimately paid a sum of money to settle the case on behalf of his co-counsel. Cuneo's out-of-pocket costs, including the settlement, were in excess of $35,000. In addition to his out-of-pocket costs, Cuneo expended substantial time and firm overhead, as did his co-counsel. Cuneo Aff., ¶ 9; Dubbin Aff., ¶¶ 5-6.

### B.    Joseph Materially Breached the Settlement Agreement

Based on the foregoing undisputed and indisputable material facts, it is clear that it was Joseph, not Cuneo, who, despite repeated warnings, deliberately breached the Settlement Agreement. Joseph baldly and desperately contends that "litigants" means

9

"parties" and that he only corresponded with attorneys, not parties. Even if his contention were generally true as a matter of semantics – and it is not[2] -- it is not true in the context of the Settlement Agreement. None of the defendants in the pending cases were natural persons. They were the United States and two corporations, the Leatherman Tool Group, Inc., and the Kwikset Corporation. Thus the only way Joseph could have corresponded with a party defendant would be through its attorney. Obviously then, the term "litigants" was intended to include parties and their attorneys. The fact that it was plaintiffs' attorneys he corresponded with does not change this analysis. When language used in a contract is unambiguous, its interpretation is a question of law for the court. *Unfoldment, Inc. v. District of Columbia Contract Appeals Board*, 909 A.2d 204, 209 (D.C. 2006). "A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract ... and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id.* (internal quotation marks and citation omitted).

Moreover, even if Joseph were correct that he did not correspond with a litigant, the undisputed fact remains that he filed a lien or claim and deliberately interfered with a pending case. Joseph contends that he did not interfere with a pending case because the *Gold Train* case was "settled." Joseph Statement at 3. Although the case was indeed settled, it was nevertheless still pending. The court retained jurisdiction over the settlement, which was to be implemented over a five year period. Counsel, including Cuneo and the co-counsel whom Joseph sued, had continuing obligations to the court and

---

[2] Numerous dictionaries define "litigant" as a "person engaged" in a lawsuit. *See, e.g.,* The New Shorter Oxford English Dictionary, Vol. 1 (1993), p. 1606: "litigant ... *n.* A person engaged in a lawsuit or dispute."; Random House Webster's College Dictionary (1991), p. 793: "litigant *n.* 1. a person engaged in a lawsuit."

the class during the implementation period. The court's docket reflects numerous orders

from the court and filings by Cuneo and his co-counsel since the case was

administratively closed. Moreover, Joseph's conduct did indeed interfere with and

disrupt relations between Cuneo and his co-counsel, upsetting the allocation of fees based

on future contemplated work, to the potential detriment of their duties to the court and the

class.

Joseph's breach was deliberate and material, not minor, as he contends. Joseph

Statement at 5. In the District of Columbia

> [w]hether a particular breach of a contact is 'material' is a classic
> Issue of fact. *See, e.g., Camalier & Buckley, Inc. v. Sandoz &
> Lamberton, Inc.*, 667 A.2d 822, 829 (D.C. 1995); citing
> RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981));
> *Miller v. Mills Constr., Inc.*, 352 F.3d 1166, 1172 (8th Cir. 2003);
> *Sahadi* v. Continental Illinois Nat'l Bank & Trust Co., 706 F.2d
> 193, 196 (7th Cir. 1983) ("[T]he determination of 'materiality' is
> a complicated question of fact, involving an inquiry into such
> matters as <u>whether the breach worked to defeat the bargained-for
> objective of the parties.</u>"); *Ranes v. American Family Mut. Ins. Co.*,
> <u>219 Wisc.</u>2d 49, 580 N.W.2d 197, 200 (1998) ("For a breach to be
> material, <u>it must be so serious to destroy the essential object of the
> agreement.</u>").

*3511 13th Street Tenants' Ass'n v. 3511 13th Street, N.W., Residences, LLC*, 922 A.2d

439, 445 (D.C. 2007) (emphasis added).

Here, the bargained-for objective of the Settlement Agreement was not merely to

resolve Joseph's then–pending case against Cuneo, but also to regulate future conduct

between Cuneo and Joseph with respect to certain cases that Joseph had worked on. In

return for his promise to pay Joseph a percentage of any recovery in those cases, Cuneo

received Joseph's promise that he would abstain from any interference in the cases. The

provision was so important to Cuneo (because of Joseph's past conduct in prior cases)

that he insisted upon a provision that if the promise of non-interference were breached, Joseph would surrender his rights to payment from the cases. Joseph's deliberate breach of the non-interference provision clearly "defeat[ed]" or "destroy[ed]" an "essential object" of the agreement.

Nor was Joseph's deliberate breach of the non-interference agreement a mere technical breach. The interference threatened to disrupt relations and work allocations among plaintiffs' counsel in the *Gold Train* case. More serious disruption from the interference was only averted by Cuneo's agreement to indemnify his co-counsel, an agreement which cost him a substantial sum of money, as well as time, distraction and anxiety. Joseph's breach was thus clearly material.

### C.     The Waiver Provision Is Not an Unlawful Liquidated Damages Penalty

Joseph contends that even if he did breach the Settlement Agreement, his breach was minor and the waiver provision is an unreasonable and unenforceable liquidated damages provision. Joseph Statement at 4-5. To the contrary, the provision is not a liquidated damages provision at all. It states no amount, percentage or other formula. It does not state that Joseph owes Cuneo anything in the event of a breach. Rather it simply makes explicit what would otherwise be implicit in the agreement – if Joseph materially breaches the agreement, then Cuneo is excused from further performance of his obligations under the agreement. In other words, absent the agreement, Cuneo had no obligation to pay Joseph anything. Therefore, if Joseph materially failed to perform his side of the agreement, then Cuneo is absolved from performing his obligation to pay Joseph a percentage of future recoveries.

Even if the waiver provision were held to be a liquidated damage provision, the burden would be on Joseph to establish that it constituted a penalty. The D.C. Court of Appeals "has been tolerant of liquidated damages clauses unless they are <u>demonstrably unreasonable</u>." *S. Brooke Purill, Inc. v. Vailes*, 850 A.2d 1135, 1138 (D.C. 2004) (emphasis added). And "as long as [a] liquidated sum bears [a] reasonable relation to [the] damages foreseeable at [the] time of contracting [the] clause is enforceable." *Id.* (citation omitted). "One criterion [the] court has used to determine whether a provision should be construed as a penalty is that 'damages stipulated in advance should not be more than those which <u>at the time of the execution</u> of the contract can be <u>reasonably expected from its future breach</u>, and agreements to pay fixed sums <u>plainly without reasonable relation to any probable damage which may follow a breach</u> will not be enforced." *Id.* (citation omitted; emphasis added). Moreover, "[w]hen a liquidated damages provision is the product of fair arm's length bargaining, particularly between sophisticated parties, common law suspicions may be eased and more latitude may be afforded the contracting parties to agree as they wish on the remedies for breach." *District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 723-24 (D.C. 2003). That is because liquidated damages clauses "may serve valuable purposes, as where actual damages are likely to be difficult to quantify in the event that the contract is breached. *Id.* at 723.

Here the provision was negotiated by and between sophisticated attorneys. At the time it was agreed to, Cuneo's right to recovery in any of the three cases was completely contingent on future events. He might receive nothing in the cases or he might receive something (as he has in two of the cases), but the amounts he might receive was

13

completely speculative, as were the amounts Joseph might be entitled to receive, if any. It was certainly foreseeable that interference by Joseph, particularly if it came at a delicate time in settlement negotiations, might result in Cuneo's loss of recovery in a case, or at least a diminished recovery. Because it would be difficult, if not impossible, to put a value on three unresolved, contingent fee cases, Joseph cannot meet his burden to establish that there was no reasonable relation between the waiver provision and the damage Cuneo might sustain in the event of breach. He certainly cannot meet it by comparing the amount of damage to Cuneo from his breach to the loss he will suffer from enforcement of the waiver provision. Such a retrospective analysis is contrary to the applicable legal standard which calls for a forward-looking analysis of a liquidated damages provision.

*   *   *   *

In sum, there are no genuine issues of material fact and Cuneo is entitled to judgment on the declaratory judgment action. For the same reason, summary judgment must be granted against Joseph's breach of contract claim and his motion for partial summary judgment must be denied.

April 24, 2008                    Respectfully submitted,


                                 STEIN, MITCHELL & MEZINES, L.L.P.

                                  /s/  Jacob A Stein
                                 JACOB A. STEIN (D.C. Bar  No. 052233
                                 1100 Connecticut Avenue, N.W., Suite 1100
                                 Washington, DC 20036
                                 (202) 737-7777 * Fax (202) 296-8312
                                 E-Mail: jstein@steinmitchell.com

CUNEO GILBERT & LaDUCA, LLP

   /s/  Jonathan W. Cuneo
JONATHAN W. CUNEO (D.C. Bar No. 39389)
David W. Stanley (D.C. Bar No.174318)
Michael G. Lenett (D.C. Bar No. 425592)
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960 * Fax (202) 789-1813
E-Mail: jonc@cuneolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum of Points and
Authorities in Opposition to Defendant's Motion for a Partial Summary Judgment,
Statement of Material Facts as to Which There is No Genuine Issue, Affidavit of
Jonathan W. Cuneo, Affidavit of Samuel J. Dubbin and Declaration of David W. Stanley
were electronically served by the Court's ECF system upon Defendant Joel D. Joseph this
24th day of April, 2008.

David W. Stanley

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

THE CUNEO LAW GROUP, P.C., *et al.*,    )
                                      )
                Plaintiffs,     )
                                        )
                v.               )      Case No. 08-00253 (RBW)
                                        )
JOEL D. JOSEPH,               )
                                        )
                Defendant.    )
_____)

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AS TO HIS BREACH OF CONTRACT COUNTERCLAIM

Plaintiffs respectfully submit the following statement of material facts as to which there is no genuine issue in support of plaintiffs' opposition to Defendant Joseph's (("Joseph") motion for partial summary judgment as to his breach of contract counterclaim, pursuant to Local Civil Rule 7(h):

1.    Joel D. Joseph and Jonathan W. Cuneo and The Cuneo Law Group, P.C., entered into an Agreement of Release on March 15, 2002 (the "Settlement Agreement") settling litigation between them. The Settlement Agreement provides that "Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants. If he does he has breached the agreement and waives his percentages." Settlement Agreement, ¶ 6.

2.    The "non-interference" clause in the Settlement Agreement was inserted in the contract at Cuneo's insistence because of Joseph's prior conduct, including but not limited to filing a lien in the *MCI* case, a multi-district class action in which he had

appeared as a plaintiff, in order to prevent such conduct in the pending cases. The clause, which Joseph agreed to, was an essential and material part of the settlement and Cuneo would not have entered into the Settlement Agreement without it. Affidavit of Jonathan W. Cuneo ("Cuneo Aff."), ¶ 5; Answer, ¶¶ 16, 21.

3.   Cuneo performed all his obligations under the (the "Settlement Agreement") up until the present dispute, including paying Joseph a 20% share of the fee in the *Gold Train* case amounting to $240,895. Cuneo Aff., ¶ 7.

4.   Cuneo received a fee in the *Leatherman* case of $2,190,982. Joseph would have been entitled under the Settlement Agreement to 20% of the amount received, or approximately $438,196. Settlement Agreement, Exhibit A, ¶ 1; Cuneo Aff., ¶¶ 12-13.

5.   Shortly after receiving his percentage from the *Gold Train* fee, Joseph wrote Cuneo's co-counsel in that case, Samuel J. Dubbin and Steve W. Berman, and demanded a "referral" fee from them amounting to 20% of their fees. Cuneo promptly caused counsel to contact Joseph and warn him that his conduct constituted a breach of the Settlement Agreement. Joseph then sent counsel a draft complaint demanding 1/3 of co-counsels' fees. Counsel again wrote Joseph, warning him that such a suit against co-counsel would constitute a further breach of the Settlement Agreement. Cuneo Aff., ¶ 8, Exhibit E; Affidavit of Samuel J. Dubbin ("Dubbin Aff."), ¶ 5.

6.   Joseph sued Cuneo's *Gold Train* co-counsel, Samuel Dubbin and Steve Berman and their firms, in U.S. District Court in Miami, FL, claiming he was entitled to 1/3 of their fees from the *Gold Train* case under various theories, including as a referral fee. Cuneo Aff., ¶ 9; Dubbin Aff., ¶ 5; Answer, ¶ 31.

7.    When Joseph first contacted Cuneo's co-counsel and when he sued them, the *Gold Train* case was still active. Although the parties had reached a settlement which was accepted by the district court, ending the adversary phase of the case, the settlement implementation phase of the case was ongoing and would be so for another five years. The district court had maintained jurisdiction to oversee implementation of the settlement and Cuneo and his co-counsel had on-going responsibilities to the class as well. There have been numerous filings on the *Gold Train* docket by Cuneo and his co-counsel during the settlement phase of the case since it was administratively "closed," including one as recently as January 2008. Moreover, Joseph's case against Cuneo's co-counsel was transferred, without objection by Joseph, to the docket of Judge Patricia Seitz under the local rule because it was related to a pending case. Cuneo Aff., ¶ 6; Dubin Aff., ¶ 3; Affidavit of David W. Stanley, ¶¶ 2, 3.

8.    Joseph's suit against Cuneo's *Gold Train* co-counsel not only had the potential to, but did, seriously interfere with and disrupt relations between Cuneo and his co-counsel, upsetting the allocation of fees and future responsibilities in the settlement phase of the case, to the potential detriment of their responsibilities to the class. Cuneo Aff., ¶ 9; Dubbin Aff., ¶¶ 4-5.

9.    To avoid further interference and disruption to the *Gold Train* case, Cuneo agreed to indemnify his co-counsel against Joseph's suit. Cuneo retained counsel to defend the suit in Miami. Miami counsel succeeded in twice having Joseph's suit dismissed for failure to state a claim, the second time with prejudice. Cuneo ultimately paid a sum of money to settle the case on behalf of his co-counsel. Cuneo's out-of-pocket costs, including the settlement, were in excess of $35,000. In addition to his out-

3

of-pocket costs, Cuneo expended substantial time and firm overhead, as did his co-counsel. Cuneo Aff., ¶ 9; Dubbin Aff., ¶¶ 5-6.

10.     Joseph's actions in corresponding with the litigants, filing a lien or claim for fees, and interfering with the *Gold Train* case while it was still pending all constituted material breaches of the Settlement Agreement. Cuneo Aff., ¶¶ 8, 9.

11.     Cuneo's action in not paying Joseph 20% of the net fee in the *Leatherman* case was not wrongful. It was pursuant to the waiver provision of the Settlement Agreement. Joseph is not entitled to the 20%, nor to interest thereon. Even if Joseph were entitled to the payment there is no provision in the Settlement Agreement for interest. Cuneo Aff., ¶13.

12.     Cuneo did not wrongfully withhold money from Joseph in the *Gold Train* case. Joseph was entitled to 20% of the net fee pursuant to the Settlement Agreement. Because the case was not over and it was likely that more expenses would be incurred in the future, it was impossible to determine what the net fee was. Accordingly, Cuneo withheld $50,000 as a reserve to cover such expenses, and paid Joseph 20% of Cuneo's fee after such amount was withheld. Cuneo Aff., ¶ 7.


April 24, 2008                         Respectfully submitted,


                                       STEIN, MITCHELL & MEZINES, L.L.P.

                                         /s/  Jacob A. Stein
                                       JACOB A. STEIN (D.C. Bar No. 052233
                                       1100 Connecticut Avenue, N.W., Suite 1100
                                       Washington, DC 20036
                                       (202) 737-7777 * Fax (202) 296-8312
                                       E-Mail: jstein@steinmitchell.com


4

CUNEO GILBERT & LaDUCA, LLP

__/s/__  Jonathan W. Cuneo
JONATHAN W. CUNEO (D.C. Bar No. 939389)
David W. Stanley (D.C. Bar No. 174318)
Michael G. Lenett (D.C. Bar No. 425592)
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960 * Fax (202) 789-1813
E-Mail: jonc@cuneolaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No. 08-00253 (RBW) |
| | ) |
| JOEL D. JOSEPH, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**AFFIDAVIT OF JONATHAN W. CUNEO**

I, JONATHAN W. CUNEO, make the following statement under penalty of
perjury:

1.      I am a lawyer licensed to practice in the District of Columbia and
elsewhere, am the sole principal of The Cuneo Law Group, P.C., and am the senior
partner of the successor firm Cuneo Gilbert & LaDuca, LLP. I am over the age of 21,
have personal knowledge of the facts and events recited below and could, if called to
testify, attest to the same.

2.      I hired Joel D. Joseph ("Joseph") in January 2000 to work as a salaried
attorney in my law firm, The Cuneo Law Group. P.C. In that capacity, and later as an
independent contractor paid at an hourly rate, he worked on a number of cases, including
the preliminary stages of three contingent fee cases which are known as the *Gold Train*
case (*Rosner v. United States*, Case No. 01-1859 (S.D.FL.)), the *Kwikset* case (*Benson v.
Kwikset Corp.*, Case ID 00CC01275 (Orange Cty. Super. Ct.)), and the *Leatherman* case
(*Colgan v. Leatherman Tool Group, Inc.*, Case No.BC247899 (Los Angeles Cty. Super.
Ct.)). The *Leatherman* case was filed on April 2, 2001 and the *Gold Train* case was filed

1

on May 7, 2001. Joseph never appeared as counsel of record in either the *Gold Train* case or the *Leatherman* case, nor did he personally have any clients in either case. Any work he did on either of those cases, he did as a salaried employee of, or independent contractor to, and on behalf of, The Cuneo Law Group, P.C.

3.    On August 20, 2001, after our relationship had deteriorated for a variety of reasons, Joseph filed suit against me and the Cuneo Law Group, P.C., in the United States District Court for the District of Columbia. A copy of his First Amended Complaint for Compensatory, Injunctive, Punitive and Declaratory Relief is attached hereto as Exhibit A.

4.    Joseph and I, on behalf of myself and my firm, entered into an Agreement of Release (the "Settlement Agreement") on March 15, 2002, (a copy of which Joseph attached to his Counterclaim herein and which is attached hereto as Exhibit B). The preamble to the Settlement Agreement recited the intent of the parties "to make a full and final release of any and all claims of any type whatsoever that they do or may have against each other." Accordingly, we mutually agreed to "release each other of any and all claims of any type whatsoever including but not limited to the" pending cases. We also agreed, *inter alia*, that Joseph would receive an amount equal to 20% of the net fees, if any, which might be received in the *Gold Train*, *Leatherman*, or *Kwikset* cases.

5.    Because of Joseph's past history of litigious and disruptive conduct, including, but not limited to, his filing a lien in the *MCI* case (*In re: MCI Phone Rate Litig.*, Case No. 99-cv-1275 (S.D.Ill.)), a multi-district class action case in which he had appeared as a plaintiff, I insisted upon a provision providing that "Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to

2

file liens or notices of claim, or correspond with the litigants. If he does he has breached

the agreement and waives his percentages." I sought to avoid such conduct because,

among other things, it had the potential to sow confusion regarding who spoke for the

plaintiffs and disrupt sensitive settlement negotiations and relationships with opposing

and co-counsel. This provision was an essential object of the settlement to me and I

would not have entered into the Settlement Agreement without it.

      6.     The *Gold Train* class action case was preliminarily settled on April 7,

2005, and on September 30, 2005, the U.S. District Court for the Southern District of

Florida issued its Final Order and Judgment ending the adversary litigation phase of the

case. A copy of the Final Order and Judgment is attached hereto as Exhibit C. The *Gold*

*Train* settlement agreement provided that the settlement funds would be disbursed on

behalf of the class over a period of five years. The Miami district court maintained

continuing jurisdiction over the case to oversee the implementation of the settlement

agreement. My co-counsel and I also had continuing obligations over the five year

implementation period to supervise the escrow agent and its disbursement of settlement

funds and respond to inquiries from class members, as well as other aspects of settlement

implementation.    Since final approval of the settlement, and notwithstanding that the

district court's docket reflects that the case was "CLOSED" on September 29, 2005, the

district court, my co-counsel and I have continued to exert efforts on behalf of the class,

only some of which are reflected on the district court's docket, which is attached hereto

as Exhibit D, and will continue to do so, without further compensation, until the

settlement implementation is complete.

7.    Pursuant to the Miami district court's final order, I received a wire transfer for $3.85 million on January 3, 2006, as payment for all attorneys' fees and expenses of the three firms involved. After deduction of expenses (including a $50,000 reserve held for future expenses during the implementation of the settlement), my firm received a 40% share amounting to $1,204,478.00 and my co-counsel each received 30%. Within two days after receiving my share, I paid directly to Joseph or to his assigns the 20% to which he was entitled pursuant to the Settlement Agreement, or $240,895.00.

8.    Immediately after receiving prompt and full payment from me, Joseph wrote to my co-counsel on January 10, 2006 demanding a "finders fee" amounting to 20% of the fees they had received. I then caused counsel, Mr. Jacob A Stein, to write to Joseph warning that his action was a breach of the settlement agreement and could result in a forfeiture of future fees. When Joseph sent Mr. Stein a draft complaint against my co-counsel seeking 1/3 of their fees, I caused Mr. Stein to write again to Joseph warning him that if he filed suit he would further breach the Settlement Agreement. Copies of Mr. Stein's letters are attached hereto as Exhibit E.

9.    Notwithstanding this warning Joseph escalated his conduct, suing my co-counsel in the Miami district court. A copy of the Complaint is attached hereto as Exhibit F. This frivolous and unwarranted action by a former employee of mine had the potential to seriously disrupt my relations with my co-counsel to the detriment of our ongoing responsibilities in the *Gold Train* case (as well as future litigations on which we might work together) and was exactly the type of conduct I sought to guard against by insisting on the non-interference clause in the Settlement Agreement. To avoid such disruption, I agreed to indemnify my co-counsel and retained counsel in Miami to defend

4

the action. Miami counsel moved to dismiss the complaint on April 14, 2006. The district court issued an order on July 13, 2006, dismissing the complaint with the right to replead if additional facts were available. Joseph then filed an amended complaint. A copy of the First Amended Complaint is attached hereto as Exhibit G. Counsel again moved to dismiss and the district court issued an order on December 22, 2006, dismissing the case with prejudice. Copies of the Miami district court's docket and its opinion dismissing the First Amended Complaint are attached hereto as Exhibit H. After the Miami district court dismissed the amended complaint with prejudice Joseph appealed to the Eleventh Circuit. To avoid wasting further time and resources, I agreed to settle the case on behalf of my co-counsel. The terms of that settlement were confidential until Joseph breached the confidentiality provision by publicly revealing the amount of the settlement in a recent filing in this Court. My out of pocket costs to defend this meritless action, including the settlement amount, were in excess of $35,000. This does not include my time and firm overhead, nor the time and overhead of my co-counsel, which were substantial.

10.    Joseph also filed a motion with this Court to enforce the Settlement Agreement, asserting that he was immediately entitled to 20% of the $50,000 that was withheld to cover future expenses in the multi-year implementation of the *Gold Train* settlement. This Court denied the motion on October 16, 2006, citing a U.S. Supreme Court case that clearly held that the Court lacked jurisdiction over the motion. A copy of the Court's opinion is attached hereto as Exhibit I. Nevertheless we were compelled to spend more time and resources responding to this meritless motion.

11.     The *Leatherman* case was initially filed on April 2, 2001.  Joseph was never an attorney of record in the case, nor was he retained personally by any client.  The case was tried over several days in January and February, 2004, long after Joseph had left my employment.  Subsequent to trial the case was appealed twice to the California Court of Appeals, requiring extensive briefing, before it was finally settled.  The trial court subsequently entered a judgment, at which time it made a final award of attorneys fees.  Although the case has now been settled, my firm has continuing obligations to implement the settlement..

12.     My firm received payment on February 12, 2008, for attorneys' fees and expenses in the *Leatherman* case.  My firm's share of the attorneys fee award was $2,190,982, after deduction of expenses (including a $10,000 reserve for unpaid bills).  According to the Settlement Agreement Joseph would have been entitled a payment equal to 20% of that amount, or approximately $438,196..

13.     Because I believe Joseph materially breached the Settlement Agreement by the conduct described above and waived his entitlement to a percentage of the *Leatherman* fee, I promptly filed the instant declaratory judgment action on February 15, 2008, seeking a ruling from the Court adjudicating his entitlement, if any, to this payment.

I make the foregoing statement under the penalty of perjury.

March  27, 2008

JONATHAN W. CUNEO

6

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOEL D. JOSEPH                                        )
8022 Cypress Grove Lane                               )
Cabin John, Maryland 20818                            )
                                                      )
            Plaintiff                                 )
                                                      )
      v.                                              )  Civil Action No. 1:01CV01755
                                                      )
THE CUNEO LAW GROUP, P.C.                             )          (TPJ)
317 Massachusetts Avenue, N.E.                        )
Suite 300                                             )
Washington, .C. 20002                                 )
                                                      )
            and                                       )
                                                      )
JONATHAN W. CUNEO                                     )
317 Massachusetts Avenue, N.E.                        )
Washington, D.C. 20002                               )
                                                      )
            Defendants                                )

FILED

OCT 0 3 2001

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

# FIRST AMENDED COMPLAINT FOR COMPENSATORY, INJUNCTIVE, PUNITIVE AND DECLARATORY RELIEF; JURY TRIAL DEMANDED

I.

## Nature of the Case

1.  This is a case for breach of contract, quantum meruit, unjust enrichment, conversion, promissory estoppel and for discriminatory employment practices concerning plaintiff's age.

II.

## Parties

2.  Joel D. Joseph is a resident of the State of Maryland and is now fifty-three years of age.

1

3.  The Cuneo Law Group, P.C. is a District of Columbia professional corporation.

4.  Jonathan W. Cuneo is a resident of the District of Columbia.

### III.

### Jurisdiction

5.  Jurisdiction is conferred on this court by 28 U.S.C. §1332 (diversity).

6.  The amount in controversy exceeds the sum or value of $75,000.

### IV.

### Factual Allegations

7.  On on about January 18, 2000 plaintiff Joseph entered into a written agreement with The Cuneo Law Group, P.C. (TCLG). Pursuant to this agreement Mr. Joseph became "of counsel" to TCLG. Under that agreement the parties understood that Mr. Joseph would work approximately one day per week on affairs of the firm.

8.  Mr. Joseph's primary function with the firm was to bring in new cases. No attorneys at the firm other than Mr. Cuneo had ever brought new cases into the firm.

9.  After working under this agreement for about two months, Mr. Cuneo asked Mr. Joseph to work more hours, to come into the firm's office three days per week.

10. Pursuant to this offer, the parties entered into a new written contract for one year under which Mr. Joseph was paid a salary of $84,000 per year, plus health insurance and other benefits. This agreement was entered into for one year. Mr. Joseph was entitled to a minimum of ten percent of all business that he brought into the firm, plus a

2

bonus based on the hours that he put into each case that was either settled or decided in favor of his clients.

11. Pursuant to this agreement Mr. Joseph brought into the firm three cases: *Benson v. Kwikset,* the *Leatherman* case and the *Hungarian Gold Train* case.

12. In addition Mr. Joseph brought in the MCI case to the firm, first as plaintiff in a class action and later as attorney since in the MDL complaint Mr. Joseph was not named as a plaintiff.

13. In January 2001, Mr. Cuneo met with Mr. Joseph and told him that he wanted to extend the firm's contract with Mr. Joseph. The parties agreed to extend Mr. Joseph's contract for an additional year.

14. In February, 2001 Mr. Joseph was reviewing statutes, cases and other materials in order to finalize the complaint in the *Gold Train* case.

15. Mr. Joseph found a 1947 treaty and a 1967 international agreement that might have had an impact on the case. No other attorney working on the case had located this treaty or the international agreement.

16. Steven Berman, a Seattle attorney who was working on this case had worked on an earlier case concerning seeking compensation for American servicemen who had been imprisoned by Japan during World War II. A federal court had ruled that the treaty ending the war with Japan had precluded that complaint.

17. Despite Mr. Joseph's objection, Mr. Cuneo faxed to Mr. Berman Mr. Joseph's preliminary memorandum concerning the treaty. Mr. Joseph wanted to do further research before sending out his preliminary results.

3

18. Mr. Berman, in response to this new information sent an email to Mr. Cuneo stating that "Mr. Joseph was trying to make a pig fly."

19. Mr. Berman sought to have Mr. Joseph removed from this case and from Mr. Cuneo's firm.

20. Mr. Berman is younger than Mr. Joseph.

21. Effective April 1, 2001, Mr. Cuneo, without just cause, terminated the employment contract with Mr. Joseph and then hired Mr. Joseph as an independent consultant with far less pay.

22. As a result of questions concerning the 1947 treaty and international agreement of 1967, Mr. Cuneo and Mr. Berman hired an expert in international law, Professor Francis Gabor of the University of Memphis Law School.

23. Professor Gabor determined that Mr. Joseph's theory of the law was correct, that the treaty and international agreement did not bar a claim for damages.

24. Mr. Joseph has had more experience with treaty law than either Mr. Cuneo or Mr. Berman. Mr. Joseph argued *Edwards v. Carter*, 189 U.S. App. D.C.1, 580 F.2d 1055 (D.C. Cir. 1978), cert. Denied, 436 U.S. 907 (1978) before the United States Court of Appeals for the District of Columbia Circuit on behalf of sixty members of Congress and recently argued before the Eleventh Circuit. *Made in the USA Foundation v. United States*, 242 F. 1300 (Eleventh Cir., 2001). These are two of the leading treaty law cases in the United States.

25. On May 9, 2001 the *Gold Train* complaint was filed in the United States District Court for the Southern District of Florida, (*Rosner v. United State*).

4

26. Mr. Cuneo kept Mr. Joseph on as an independent contractor, but severely limited his work and has reduced the amount of work for Mr. Joseph down to virtually nothing.

27. Under May, 2001 agreement TCLG agreed to pay for Mr. Joseph and his family's health insurance benefits.

28. TCLG, without notifying Mr. Joseph in advance, cancelled Mr. Joseph's health insurance policy as of July 1, 2001.

29. On July 2, 2001, upon learning that his health insurance policy had been cancelled, Mr. Joseph insisted that payment for insurance be provided immediately.

30. On July 5, 2001, one insurance payment from TCLG was couriered to Mr. Joseph. However, TCLG, without justification, deducted $150 for courier service.

31. No payment for August, September or October, 2001 health insurance was made by The Cuneo Group.

32. At all times Mr. Joseph was an exemplary employee.

33. TCLG has hired younger, and less experienced attorneys than Mr. Joseph during the past year.

V.

**First Cause of Action: Breach of Contract**

34. Plaintiff incorporates by reference paragraphs one through 33, inclusive.

35. TCLG and Jonathan W. Cuneo intentionally breached the employment contract with Mr. Joseph by reducing his income beginning April 1, 2001 and cutting his health insurance benefis three months later.

5

36. As a direct and proximate result of these breaches plaintiff has been injured and suffers $100,000 in damages.

VI

**Second Cause of Action:  Quantum Meruit**

37. Plaintiff incorporates by reference paragraphs one through 36, inclusive.

38. Plaintiff rendered valuable services to the defendants with the intention of receiving a fee for services rendered.

39. Defendants accepted these services, received the benefit of these services and knew plaintiff expected to be paid for these services.

40. The value of the services provided by plaintiff to defendants is two million dollars plus a reasonable proportion of the fees generated from the cases that plaintiff brought into the firm.

VII.

**Third Cause of Action:  Unjust Enrichment and Conversion**

41. Plaintiff incorporates by reference paragraphs one through 40, inclusive.

42. Defendants were unjustly enriched by the cases that plaintiff brought into the firm.

43. Defendants were unjustly enriched by two million dolars and a reasonable proportion of the fees generated from the cases brought into the firm by plaintiff.

44. Defendants converted cases and proceeds from cases brought into the firm by plaintiff to their own use.

VIII

## Fourth Cause of Action:  Promissory Estoppel

45. Plaintiff incorporates by reference paragraphs one through 44, inclusive.

46. On many occasions defendant Jonathan W. Cuneo promised plaintiff that he would be paid a refereral fee of ten percent of all cases he brought into the firm, plus plaintiff would work on these cases and be paid an additional percentage based on the hours worked on the case.

47. Specifically concerning the MCI case Mr. Cuneo promised plaintiff that he would receive a substantial bonus, so long as the bonus would be allowed by the rules of ethics.

48. Plaintiff is entitled to a bonus of $200,000 for his efforts on the MCI case.

IX

## Fifth Cause of Action:  Age Discrimination in Violation of the District of Columbia Human Rights Law

49. Plaintiff incorporates by reference paragraphs one through 48, inclusive.

50. Mr. Cuneo is younger than Mr. Joseph and in many ways a less experienced attorney than Mr. Joseph.

51. Mr. Cuneo does not like being challenged by a more senior attorney on issues of law.

52. The proper practice of law involves arguing back and forth about points of law, strategy and procedure.

53. Mr. Cuneo and The Cuneo Law Group, P.C. intentionally, wilfully and malicously violated the District of Columbia Human Rights Law, District of Columbia Code Section 1-2511, by discriminating against plaintiff on account of his age.

54. The District of Columbia Human Rights Law created a cause of action for violations of the law. District of Columbia Code Section 1-2556.

55. Mr. Berman violated District of Columbia Code section 1-2526 by aiding and abetting Mr. Cuneo in violating the Human Rights Law by seeking the removal of Mr. Joseph from a case and from the firm.

56. As a direct and proximate result of defendants' discriminatory acts and practices, plaintiff has been harmed in his reputation and suffered a loss of income of two million dollars.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands relief against defendants and a court order as follows:

A.  Judgment against defendants for backpay and frontpay of $84,000  per year for not less than one year, plus appropriate raises and bonuses;

B.  Judgment against defendants for $500 per month for health insurance benefits for not less than one year;

C.  Judgment against defendants for two million for actual damages;

D.  Delaratory judgment and injunctive relief mandating that Mr. Joseph is entitled to 100% of the legal fees generated from the cases that he brought into the firm, including the MCI case;

E.  Punitive damages in the amount of ten million dollars ($10,000,000.00);

8

F.  Attorneys' fees and costs; and

G.  Such other relief as is just and proper.

_____
JOEL D. JOSEPH
8022 Cypress Grove Lane
Cabin John, Maryland 20818
(301) 229-3448

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of six.

_____
JOEL D. JOSEPH

## CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this first amended complaint to Jacob A.

Stein, 1100 Connecticut Avenue, N.W. Suite 1100, Washington, D.C. 20036 this 3rd day

of October, 2001.

_____
JOEL D. JOSEPH

# EXHIBIT B

# AGREEMENT OF RELEASE

The parties to this release which is to bear the effective date of March 15, 2002, are:

Jonathan Cuneo, the Cuneo law firm, its agents, assigns and representatives of any kind

and

Joel Joseph, his agents, assigns and representatives of any kind

The parties intend to make a full and final settlement and release of any and all claims of any type whatsoever that they do or may have against each other and they acknowledge that there is good and valuable consideration for this Agreement, including the mutual promises.  They agree as follows:

1.    The parties release each other of any and all claims of any type whatsoever including but not limited to the civil action, now pending in the civil division of the United States District Court for the District of Columbia.

2.    The parties in the pending action each shall bear their own costs.

3.    Upon the execution of this release by the parties they shall immediately file a praecipe dismissing with prejudice all claims against each other.

4.    Nothing in this release is intended to be nor shall it be interpreted to mean an admission of any allegation of any kind or breach of an obligation of any kind or wrongdoing of any kind.  Furthermore, any such allegation is affirmatively denied.

5.    The parties hereto have had the advice of counsel or the opportunity to have consulted with counsel.

6.    Joel Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants.  If he does he has breached the agreement and waives his percentages.

7.    The terms set forth in the attached exhibit are part of this release.

8.    This  agreement  is  the  entire  agreement  of  the  parties  and  all  other

agreements are merged herein and this agreement cannot be altered or changed except in writing signed by the parties.

Witness

Joel Joseph

Witness

Jonathan Cuneo

## Exhibit A

1.     Joel Joseph shall receive twenty percent (20%) of Cuneo Law Group, P.C.'s net fees in the Gold Train, Leatherman, and Kwikset cases as well as any directly related litigation.   Joel Joseph will release all liens including the MCI lien, will not file any independent fee applications, and will cooperate with the Cuneo Law Group reasonably in the prosecution of these cases.

2.     The existing eighty-eight thousand, three hundred twenty dollar ($88,320) loan Joel Joseph owes Jonathan Cuneo, with interest at three percent (3%) from its inception, is to be paid from proceeds of the percentages.  Joel Joseph will pay fifty percent (50%) of all received as his share to reduce the loan.

3.     In the event that the Joseph 50% does not cover the loan, the balance will be forgiven.

4.     Joel Joseph is to receive twenty-thousand dollars ($20,000) on execution with twenty-five percent (25%) to be paid to his cousin through counsel, and as all other funds are to be disbursed to Joseph, 25% of Joseph's total is to be paid to his cousin pursuant to the agreement between Cuneo and his counsel until his cousin's claim is satisfied; the remaining 25% will go to Joseph.

5.     Jonathan Cuneo shall pay Joel Joseph another ten-thousand dollars ($10,000) on June 1, 2002, and another ten-thousand dollars ($10,000) on September 1, 2002.  No interest will be paid on those two amounts.  These payments are subject to the 5% deduction as set forth above.

We agree:

_____
Joel Joseph

_____
Jonathan Cuneo for himself
and the Law Group

# EXHIBIT C

CLOSED
CIVIL
CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 01-1859-CIV-SEITZ



FILED by _____ D.C.

OE 0 0 2005

CLARENCE MADDOX
CLER. U.S. DST. CT.
S.D. OF FLA. MIAMI

IRVING ROSNER; EDITH KLEIN AMSTER;          )
FRANCISC BASCH; VERONIKA BAUM; ALICE        )
BESSENYEY; ELIZABETH BLEIER; ERWIN          )
DEUTSCH; DR. JOSEPH A. DEVENYI; PETER       )
DREXLER; BARUCH EPSTEIN; MAGDA FEIG;        )
MICHAEL FRIED; PAUL GOTTLIEB; JUDITH        )
KARMI; ETHEL KLEIN; MILDRED KLEIN;          )
TAMÁS MAY; DAVID and IRENE                   )
MERMELSTEIN; EDITH MORE; JOHN J.            )
RAKOS; GEORGE RASKO; ANA ROSNER;            )
GEORG MOSHE SCHWARZ, ESTATE OF              )
GEORGE SEBOK; DR. LASZLO SOKOLY and         )
EDITH REINER; AGNES V. SOMJEN; OLGA         )
STEINER; JONAS K. STERN; IRENE and          )
ANDREW TIBOR; AGNES VADASZ; and             )
ZOLTAN S. WEISS, on behalf of themselves and all )
others similarly situated,                  )
                                            )
                      Plaintiffs,           )
                                            )
        v.                                  )
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
                      Defendant.            )
                                            )
                                            )

## FINAL ORDER AND JUDGMENT

This matter is before the Court on the Motion for Final Approval of the Class Action Settlement (the

"Motion for Final Approval") [DE 228] and the Verified Joint Petition for an Award of Attorneys' Fees and

Expenses and Motion for Modest Incentive Payments to Plaintiffs (the "Fee Petition") [DE 212]. On April

8, 2005, the Court issued an order preliminarily approving the Settlement Agreement[1] and scheduling a Final

Fairness Hearing for September 26, 2005, to determine whether the Settlement Agreement with the United

States ("Defendant") is fair, reasonable, and adequate and to determine an award of attorneys' fees and

---

[1] The Settlement Agreement's provisions are incorporated herein by reference.

expenses and incentive payments to Plaintiffs.[2]

At the Final Fairness Hearing, the Court heard argument and/or comments from Class Counsel, Defendant, the Notice Provider, interested parties, and several Class Members, either personally or through counsel. Furthermore, the Court has read and considered the Settlement Agreement, the Notice Plan, the Plan of Distribution and Proposed Detailed Plan of Allocation (the "Plan of Distribution" and "Plan of Allocation"), the Fee Petition, the Motion for Final Approval, the Declaration of Gideon Taylor, on behalf of the Notice Provider, and the objections and comments to the Settlement filed by various Class Members. Thus, upon review of these documents and all other relevant portions of the record, and for the reasons stated at the Final Fairness Hearing and as set forth below, the Court grants the Motion for Final Approval and the Fee Petition.

I.    **BRIEF PROCEDURAL BACKGROUND OF THE CASE**

Plaintiffs filed their initial Complaint in this Court on May 7, 2001. The Court sustained the Complaint, in part, on August 28, 2002. After conducting extensive jurisdictional discovery, Plaintiffs then filed their First Amended Complaint on October 31, 2003. After Defendant moved to dismiss the First Amended Complaint and after Plaintiffs moved for class certification, on December 20, 2004, the parties announced that they had reached an agreement in principle to settle the case. Thereafter, on April 8, 2005, the Court preliminarily approved the Settlement, certified a settlement class, and directed notice of the settlement to the class worldwide.

II.    **BRIEF FACTUAL BACKGROUND OF THE CASE**[3]

Beginning in April 1944, valuable personal property belonging to the Jewish population of Hungary was confiscated by the Hungarian government. In late 1944, a portion of the confiscated property was loaded

---

[2] Capitalized terms used in this Order have the meaning assigned to them in the Settlement Agreement, Preliminary Approval Order, and Class Notice.

[3] The Brief Factual Background is based generally upon the allegations in the First Amended Complaint.

on a train and taken to Austria where it ultimately fell into the hands of the U.S. Army on May 11, 1945.

Before arriving in Austria, however, a significant portion of the valuable property from the train was

off-loaded to trucks and taken to French-occupied Austria. This portion of the Gold Train Property never

came into U.S. custody. The property on the train that did come under U.S. custody was placed in a

warehouse under U.S. Army control in Salzburg, Austria, where some of it was "requisitioned" by senior U.S.

Army officers and stolen by U.S. Army enlisted personnel and others. Subsequently, the U.S. Government

claimed that the property could not be identified as to ownership or national origin, and thereafter turned the

bulk of the remaining property over to the Inter-Governmental Committee on Refugees which auctioned some

of the property in New York City in 1948-1949. Despite the efforts of the Hungarian Jewish community to

secure the return of the Gold Train Property, none of the property was ever returned by the United States to

its rightful owners. On October 7, 1999, the Presidential Advisory Commission on Holocaust Assets in the

United States published its Progress Report On: The Mystery of the Hungarian "Gold Train," in which the

United States, for the first time, publicly revealed its role in the receipt, handling, and disposition of the Gold

Train Property.

III.    JURISDICTION AND CLASS CERTIFICATION

    This Court has subject matter and personal jurisdiction over this case and the Parties. The Court

finds, and holds, that one or more of the Class Representatives has Article III standing. Thus, based on the

foregoing, the Court has jurisdiction to enter a final order and judgment adjudicating the claims of the entire

Class. See Newberg on Class Actions, § 2:5, at 75 (4th ed. 2002).

    In addition, pursuant to Fed. R. Civ. P. 23, the following Settlement Class is certified for purposes

of final settlement:

> all Persons who have claimed or at any time could claim any
> interest in the Gold Train Property, as defined in the Settlement
> Agreement, including without limitation, all Persons whose
> personal property was taken, seized, confiscated, or stolen by the
> Hungarian government and/or its officers, employees, or agents
> pursuant to Decree 1600 of 1944, Decree 8306 of 1944, or any

similar law, policy, or practice, and all heirs, estates, assigns, and survivors of such Persons.

Moreover, for the reasons stated in the Court's April 8, 2005, Order, which are incorporated herein by reference, the Court finds that, for the purpose of the Settlement Agreement, the requirements of Fed. R. Civ. P. 23 are satisfied, and that a Class Action is an appropriate method for resolving the disputes in this litigation.

## IV.    THE SETTLEMENT AGREEMENT

Plaintiffs have presented to the Court a global settlement on behalf of all people who have claimed or in the future do claim any interest in the Gold Train Property, including all Hungarian Holocaust survivors and their heirs. The terms of the Settlement Agreement are set forth below.

### A.    The Settlement Fund

The Settlement creates a Settlement Fund of $25.5 million which shall be deposited by Defendant into an interest bearing escrow account within 30 days of Final Approval of the Settlement, including resolution of all appeals of the Final Order and Judgment. Of this amount, approximately $21 million will be disbursed as described in the Plan of Allocation, under the Court's supervision and control. The Settlement does not call for individual distributions to all Class Members as compensation. Rather, the funds will be used for the direct provision of social services and humanitarian relief to eligible Victims of Nazi Persecution who are in need as defined in the Settlement Agreement. The Special Fund will be allocated to countries pro rata based on Professor Randolph Braham's estimate of the numbers of Hungarian Holocaust survivors residing in each particular country today.[4]

### B.    Non-Monetary Benefits

In addition to the monetary distributions through humanitarian and welfare agencies, the Settlement contains substantial non-monetary relief which will benefit all Class Members. For example, $500,000 from the Settlement Fund shall be designated for an entity chosen by a panel of experts to collect papers and

---

[4] In addition to the creation of the Settlement Fund, the Defendant also agreed to bear all costs of notice to the Class up to $1 million.

4

materials related to the receipt, handling, and disposition of the Gold Train Property. Moreover, the Settlement also calls for an acknowledgment from the United States relating to its role in the handling of the Gold Train Property.

## V.    CLASS NOTICE AND SETTLEMENT ADMINISTRATION

On April 8, 2005, the Court approved the Notice Plan. That plan, as the Court has found. See April 8 Order at 14-15, comports with all the requirements of applicable law, Rule 23, and due process. See Declaration of the Notice Provider, filed on or about September 15, 2005; Submission of Claims Conference Comments on Items to be Considered at the Final Fairness Hearing on September 26, 2005, filed on or about September 23, 2005.

Specifically, on or about May 2, 2005, the Notice Provider sent by direct mail to over 49,600 individual addresses a copy of the Long-Form Notice. These 49,600 individuals reflect all members of the Settlement Class for whom the Notice Provider and Class Counsel possessed addresses (or whose addresses were reasonably obtainable). Additionally, there were approximately 825 re-mails of notices returned by reason of an incorrect address. Notice was also be given by publication in 25 countries in 125 different publications. According to Professor Braham, the countries where notice was published are the countries where eligible victims and other Class Members are reasonably believed to reside. See Braham Report, attached to Plan of Distribution, Exhibit B to Settlement Agreement. Additionally, a multi-language website provided Class Members with notice of the Settlement, the Settlement Fund, the Special Fund, the Plan of Allocation, the Non-Monetary Relief, the date of the Fairness Hearing, the requested attorney fees and incentive awards, and other essential information that would enable a Class Member to make an informed decision regarding his or her rights. Moreover, the Notice Provider manned specified 1-800 numbers (or the international equivalent thereof) to answer questions and provided additional written materials (including the

5

Court-approved FAQ) to an additional 3,500 individuals.[5]

Thus, the Court finds that the published notice, direct mailing of notice, and Internet posting constituted the best notice practicable under the circumstances regarding the Settlement, Class Counsel's Fee Petition, the Plan of Distribution and Plan of Allocation, the date of the Fairness Hearing, and other matters set forth in the Class Notice and the Summary Notice. The notice constituted valid, due, and sufficient notice to all members of the Settlement Class, and complied fully with the requirements of Fed. R. Civ. P. 23(c)(2)(B), the Constitution of the United States, and other applicable laws.

## VI.    OPT-OUTS AND OBJECTORS

Under the Settlement Agreement, any persons who wished to be excluded from this Settlement were provided a 90-day opportunity to "opt out" pursuant to the Notice, which was executed in accordance with the Court's direction and Order. The Court finds that those individuals whose names (a total of 100 Nazi Victims and 62 Heirs ) are listed in Exhibit A to this Final Order and Judgment have validly excluded themselves from this Action, and accordingly, they have no rights under the Settlement Agreement, and shall not be bound by either the Settlement Agreement or the final judgment herein.    Despite the number of Nazi Victims who excluded themselves from the Settlement, Defendant has chosen not to exercise its rights to withdraw from or reduce its cash payment to the Settlement Fund under Paragraph XI of the Settlement Agreement.[6]

In addition, the Court received a total of 356 objections to the Settlement. Any Class Member who did not timely file and serve an objection in writing to the Settlement Agreement, or to Class Counsels' Fee

---

[5] In addition, the Court notes that the Notice Provider generated additional notice through earned media, organizational outreach, and e-mail bulletins, and that Class Counsel and the Plaintiffs provided further notice through their efforts to meet and speak with the media and other potential Class Members.

[6] The Court has reviewed the Request to Reject the Joint Motion for Order of the Plaintiffs and the Defendant and to Confirm the Rejection of Settlement by the Members of the Organization for the Assertion of Rights of Hungarian Jews filed by Mr. Barak Ben-Amos, Chairman of the Organization for the Assertion of Rights of Hungarian Jews. For the reasons stated in the parties' Joint Motion for Order Addressing Certain Correspondence Received by Notice Provider and the Court's September 12, 2005, Order, Mr. Barak Ben-Amos *only* is excluded from the Settlement.

6

Petition, in accordance with the procedure set forth in the Class Notice and mandated in the Preliminary Approval Order, is deemed to have waived any such objections by appeal, collateral attack, or otherwise.

## VII.    STANDARD OF REVIEW

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). The Federal Rules of Civil Procedure contemplate a multi-step process for approving a class settlement. The Court is now at the second stage in that process, as the Court already made a preliminary fairness determination, found that the settlement class satisfies the requirements of Rule 23 and certified the class, and approved the dissemination of notice, which has occurred. In this step, the Court must determine whether the interests of the Class will be better served by the proposed resolution or by continuation of the litigation.

There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex. Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977);[7] Ass'n for Disabled Ams., Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002). A class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). Moreover, where the settlement previously has been preliminarily approved, the settlement is "presumptively reasonable," and an objector must overcome a "heavy burden" to prove the settlement is unreasonable. Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir.1983) (citations omitted). In determining whether the settlement is fair, adequate, and reasonable, the Court must consider all relevant factors, including (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved. Bennett, 737 F.2d at 986; Cotton, 559 F.2d at 1330-31.

---

[7] The Eleventh Circuit, in the en banc decision of Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent all decisions of the Fifth Circuit rendered before October 1, 1981.

In evaluating these considerations, the Court must not try the case on the merits. Cotton, 559 F.2d at 1330. Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Id. (citation omitted). In evaluating a settlement's fairness, "it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" Id. (quotation omitted). Moreover, a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness. See id. at 1331. "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" Ruiz v. McKaskle, 724 F.2d 1149, 1152 (5th Cir. 1984) (quoting Cotton, 559 F.2d at 1330).

## VIII.   ANALYSIS

As discussed below and at the Final Fairness Hearing, a review of the relevant factors leads to the conclusion that this Settlement is fair, reasonable, and adequate and is not the product of overreaching by, or collusion between, the negotiating parties. Therefore, the Court grants the Motion for Final Approval.

### A.   All Relevant Factors Weigh In Favor Of Approval

#### 1.   The likelihood of success at trial:  The strength of the case and the risk, expense, complexity and likely duration of further litigation militate in favor of final approval

The parties vigorously disputed the factual and legal merits of the instant case, and thus the uncertainties and litigation risks weigh strongly in favor of a finding that the Settlement is fair, adequate, and reasonable. Indeed, Plaintiffs faced considerable risks with respect to Defendant's 12(b)(6) arguments in their Motion to Dismiss as well as with class certification for litigation purposes. Thus, the uncertainties of litigation and the risk of not certifying a litigation class weigh in favor of a compromise settlement. See West Virginia v. Chas. Pfizer & Co., Inc., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), aff'd, 440 F.2d 1079 (2d Cir. 1971).

8

Additionally, avoiding the delay and risk of protracted litigation is itself a legitimate reason for counsel to recommend, and the courts to approve, a settlement. <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968). This is especially true in this case, as many Class Members are elderly and infirm and in need of the benefits offered by the Settlement now. After already four years of pre-trial motion practice and jurisdictional discovery, it is difficult to imagine that the Class Members would have obtained a significantly greater recovery at trial, and to the extent one might be obtained, the expense of doing so would be great. Further, the voluminous record and the papers and pleadings already developed in this case speak loudly to the likelihood of added layers of complexity and the concomitant time required to press the case all the way to trial.

Lastly, had the matter gone to trial, additional post-trial appeals likely would have delayed recovery and thereby reduced the benefits of an ultimate victory for the Class, many of whom are elderly and in need of money, closure, and a historical reckoning now. Thus, in the end, the value of the Settlement is enhanced greatly by the fact that the relief will be provided to Class Members now, without the delay, burden, and risks of further litigation. This factor weighs heavily in favor of final approval.

2.  <u>$25.5 million is a reasonable recovery for the value of the property on the Gold Train when the United States accepted custody</u>

With respect to the second factor, the Court finds that the Settlement provides substantial monetary benefits and is therefore a reasonable recovery. Although there have been many widely-varying estimates of the value of the property on the Gold Train, both contemporaneous and recent, the fact is that no inventory was ever made of the property, much less a detailed appraisal, and therefore any estimate of value is somewhat speculative. According to Plaintiff's expert, Gábor Kádár, the value of the train at the time the U.S. obtained custody was approximately $4.5 to $9 million dollars, or approximately $45 to $90 million today. Taking the mid-point of his range, or $67.5 million, the Settlement represents a return of more than 37% of the total value

9

of the property on the train at the time the U.S. obtained custody.[8]  Such a settlement is fair and reasonable.
See Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 543 (S.D. Fla. 1988) (approving settlement of 5.7%
desired recovery); Strube v. Am. Equity Investment Life Ins. Co., 226 F.R.D. 688, 698 (M.D. Fla. 2005)
(approving settlement equal to 2% of estimated potential recovery).[9]  Accordingly, given the substantial
factual and legal hurdles that Class Members needed to overcome before any recovery, the discounted
compromise figure of $25.5 million represents a fair and reasonable, indeed outstanding, result.

       3.     The reaction of Class Members indicates overwhelming approval for the Settlement

A vast majority of Class Members have expressed a willingness to approve the Settlement, which
weighs heavily toward this Court's decision to approve the settlement.   Cotton, 559 F.2d at 1331 (holding
that a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's
fairness and reasonableness).  In a class numbering approximately 60,000 Victims of Nazi Persecution (as
defined in the Agreement) and tens if not hundreds of thousand additional heirs, approximately 100 victims
of Nazi persecution and 62 heirs timely requested exclusion and only 356 separate objections were received
by the Notice Provider.  Accordingly, this factor also weighs heavily in favor of final approval.

       4.     The stage at which Settlement was obtained: The extensive independent and formal
             discovery conducted by Class Counsel indicate that Counsel was well-versed and
             sufficiently informed to enter into this Settlement

Class Counsel negotiated the instant Settlement with wide knowledge of the relevant facts and law.
See generally Decl. of Jonathan W. Cuneo in Support of Fee Petition.  Indeed, the Settlement was only
reached after four years of litigation, including extensive jurisdictional discovery. The fact that Class Counsel
was well acquainted with the facts and law, the strengths and weaknesses of the case, and had undertaken

---

[8]  Moreover, according to Defendant, the recovery here might come close to 100%.  See e.g., Letter from
Daniel Meron to Moshe Sanbar, July 11, 2005 (noting that most of the property the U.S. obtained was auctioned for
approximately $2.17 million (1948 dollars), or $21.7 million in today's dollars).

[9]  For the same reasons, the Court rejects the arguments of certain objectors that contend that the settlement
amount was insufficient.  See e.g. Objectors/Commentators Nos. 10, 11, 20, 48, 132, 154, 179, 255, 297, and 298.

substantial discovery, strongly supports the conclusion that the Settlement is fair and reasonable.

     5.    Good faith, arms-length negotiations between experienced counsel and the absence of collusion also support final approval of the Settlement

As noted above, courts also examine the process by which a class action settlement was reached in order to determine that it was not the product of fraud or overreaching by, or collusion between, the negotiating parties. Cotton, 559 F.2d at 1330. Here, the absence of evidence that the Settlement is the product of anything other than arm's-length negotiations among counsel for the parties, and was not the product of collusion or any improper influences, clearly supports approval of the Settlement as final. See September 23, 2005, Letter from Mediator Fred F. Fielding. In point of fact, the Settlement was reached only after intensive negotiations conducted over the course of several months, extensive document discovery, and expert consultations that refined the parties' respective assessments of the risks of the litigation. See Preliminary Approval Memorandum at 8; Decl. of Jonathan W. Cuneo in Support of Fee Petition ¶¶ 77-90. Until the settlement papers were finally signed, counsel for both parties zealously represented their clients' interests every step of the way. Accordingly, the non-collusive negotiation and advantageous Settlement obtained also strongly militate in favor of final approval.

**B.**    **No Objection Establishes That The Settlement Is Anything But Fair And Reasonable**

Although the Court preliminarily approved the Settlement, and though the Settlement is presumptively reasonable, under Rule 23 class members have a right to object and/or comment on the settlement and try to convince the Court otherwise, if they are so inclined. After reviewing the approximately 356 objections, however, the Court finds that the Settlement is fair and reasonable.

     1.    The lack of direct payments to all Class Members does not render the Settlement unfair as a cy pres remedy is proper

The most prevalent objection made by Class Members is that individuals should receive direct payments, rather than have the funds distributed for the benefit of Hungarian Nazi victims in need through

designated social service agencies.  This objection is mentioned by more than 300 of the 356 objections,[10] and is by far the principal objection asserted.  Some of the objectors urged that they be compensated for all of the specific property that they lost, while most recommended that the funds be divided equally and distributed pro rata to each Hungarian survivor.  Though this objection has strong emotional and logical attraction, the failure to include individual payments as part of the Settlement does not render it legally unfair or unreasonable.

     a.    *Compensation for Specific Property*

The question of which Class Members might receive a direct payment is a complex question without an easy answer.  Some of the objections urged direct compensation "for those who possess official documents."  See e.g. Objections/Comments Nos. 125, 140, 189, 307.  The shortcoming to this process is that it penalizes those who after 60 years lack documentation.  Given the horrific hardship and dislocation suffered by those who survived the Holocaust, requiring such documentation to share in the proceeds of the Settlement justifiably would invite a large degree of fair criticism.  Furthermore, to complicate the issue, Decree 1600 receipts and other forms of official documentation do not necessarily evidence that the property was on the Gold Train when the U.S. obtained custody.  Thus, possession today of such documentation does not, by itself, differentiate those who had property on the Gold Train when the U.S. accepted custody from those who did not.

Finally, the last, and perhaps most glaring problem with this process is that according to Plaintiffs' experts, most if not all of the Decree 1600 receipts issued are still retained in the Hungarian archives; an archive that has severely restricted access.  See Affidavit of Gábor Kádár ¶66.  Therefore, giving priority (either in order of payment or amount) to victims who could produce receipts today, or who had other

---

[10] See e.g. Objections/Comments 1, 2, 4-8, 11-19, 21-25, 27-30, 32-47, 49-60, 62-68, 72-73, 75-108, 111, 113-124, 126-133, 135-138, 140-143, 146-150, 152-161, 166, 168, 172-182, 184-201, 203-213, 215-228, 230-240, 243-248, 250-268, 270-300, 302-306, 308-315, 318-327, 329-330, 333-335, 337-340, 342-344, 346-348, 350, 354-356.

contemporaneous evidence of their families' belongings in Hungary, would make recovery under the Settlement too dependent on the happenstance of record availability, and under the circumstances would be unjust.

b.    *Equal Payments To All Class Members*

Perhaps recognizing the shortcomings of relying on documentation, other objectors – indeed most objectors – argued for a process of equal payment to each Class Member.  While this option has the appearance of simplicity and ease of administration, upon closer scrutiny this approach in a case based upon a bailment theory is problematic.  For example, Class Members include heirs who are theoretically entitled under the law to share in any restitution given for property unlawfully taken from their fathers and mothers. Unfortunately, however, the cost of ascertaining who is entitled to payment under the laws of inheritance might well deplete the Settlement Fund or result in mere token payments to Class Members, and/or take years to accomplish.  See In re Holocaust Victim Assets Litig. ("Swiss Bank"), 2005 WL 2175955 (2d Cir. Sept. 9, 2005) (citation omitted) (noting that a cy pres allocation was proper because a case-by-case valuation of claims to the looted assets "would have resulted in an unwieldy and enormously expensive apparatus," and "[a] pro rata distribution would have resulted in the payment of literally pennies to each of the millions of individuals who would fall into' the Looted Assets Class.").[11]

Indeed, the overwhelming proportion of the Class supported the choice made and the Settlement. The rationale was eloquently expressed by Mr. Rosner, Mr. Moskovic, Mr. Schwarz, Mr. Rubin, and Mr. Mermelstein who addressed this Court at the Preliminary Approval Hearing. The prevailing view of Plaintiffs and other members of the Settlement Class, including heirs, was that this cy pres distribution would provide more meaningful benefits than one that delivered a truly token and trivial amount to all.  As Irving Rosner

---

[11] In addition, this objection assumes that $25.5 million is available to distribute. However, the United States has made clear that it was not necessarily prepared to offer such amount of money if the parties utilized a different allocation method. *See* Tr. from September 26, 2005, Final Fairness Hearing ("Final Fairness Hearing Tr.") at 79 (stating, "there is no basis for an assumption that the amount would have been 25 million had this been a pro rata distribution as opposed to one that is for the benefit of the needy survivors").

13

explained:

> We are satisfied that this settlement with the United States is the kind of result that
> many of us needed. I hope that the funds from this settlement will be distributed as
> fast and efficiently as possible. There are too many Holocaust survivors alive today
> who cannot take care of themselves with their own resources. That is why I support
> the settlement so Hungarian survivors can get much-needed help before it is too late.
> Many of us do not need the help, Your Honor, and are glad to see that the funds will
> be used for those who are truly in need today or will slip into this condition. Given
> the difficulties of the case and the time it would take to continue, we believe this
> outcome does the most good for the class.

See Tr. from March 17, 2005, Preliminary Approval Hearing ("Preliminary Approval Hearing Tr.") at 19.

In sum, considering all of the practical problems and proof problems associated with direct payments,

as well as the indignity associated with token payments, the Plan of Allocation is a fair and reasonable method

of achieving a meaningful payment with the Settlement Funds. Indeed, the Settlement and the negotiated Plan

of Allocation is fair, and in the best interests of the class as a whole.

> 2.    Objections to $500,000 for archival purposes do not indicate that the Settlement is
>       unfair

A small number of Class Members objected to use of any funds for the creation of an archive to

document the Gold Train episode. As Plaintiffs explained at length in their Preliminary Approval

Memorandum, the archive to be created from this case advances in a vital way the Plaintiffs' goals of

obtaining a historic reckoning of the United States' conduct in regard to the Gold Train. The Class Members

who spoke at the Hearing on Preliminary Approval also mentioned the significance of this archive.[12]  See

Preliminary Approval Hearing Tr. at 17, 24. Moreover, there is no evidence or precedent to suggest that

---

[12] As Mr. Schwarz stated:
I support this settlement to honor my family's memory and the memory of the Hungarian Jews who
suffered so much, to assist those who survived but find themselves in need, and to benefit those
who were not there but should not forget. The archiving and dissemination of information about
the Hungarian Holocaust is vitally important. . . . I do not wish to receive any monetary gains. All
I want is that the proceeds of this settlement will assure the historical truth about the participation
of various nations in my people's tragedy, so when we say NEVER AGAIN, those words will bear
their full meaning, weight and warning, and will resonate around the world to people of all races
creed and color.
See Declaration of Georg Moshe Schwarz, March 16, 2005, at 5.

14

attributing $500,000 of this Settlement toward an archival endeavor is unfair or unreasonable. To the contrary, the Swiss, Austrian, and German Holocaust settlements all devoted settlement funds to the enhancement of the historical record or creation of lasting memorials for the victims of the dead, or for education of future generations about the Holocaust.[13] Here, the $500,000 set aside for such a purpose is reasonable.

        3.    Objections to any Claims Conference involvement in the administration of the Settlement do not illustrate any unfairness

There are approximately four objections to the Claims Conference's playing any role in the administration of the Settlement Fund. These objections state that the Claims Conference is irresponsive to the needs of victims and that the Settlement Fund will be used to pay administrative expenses. See e.g. Objection No. 3. The Plan of Allocation, however, identifies the specific agencies through which the settlement benefits will be distributed; specifies the exact amounts that each agency will have at its disposal; explains that a local Advisory Committee will determine which humanitarian and/or emergency needs grants submitted by eligible victims will be honored; provides for annual reports of expenditures; allows Class Counsel to seek an audit of the Special Fund's administration; and places the organization under the jurisdiction of this Court, which is empowered to address any problems that may arise. Thus, these objections do not demonstrate that the Settlement is either unfair or unreasonable.

---

[13] In the Swiss Bank case, for example, the court approved an allocation of $10 million for the creation of a "victim list" through Yad Vashem to augment the existing database of Jews who perished in the Holocaust. See 2005 WL 2175955, at *5 n.11. The German Foundation Agreement provided DM 700 million for a "Future Fund" for education and remembrance projects to be determined by the German Foundation Trustees. See In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. 429, 434 (D.N.J. 2000). The Austrian Bank settlement provided for $2 million for an archive. In re Austrian and German Bank Litig., 80 F. Supp.2d 164, 170 (S.D.N.Y. 2000).

4.    <u>Objections to percentage distributions contained in the Plan of Allocation</u>

Two objectors ask the Court to reallocate a portion of the Special Fund so that Nazi victims in Hungary receive a greater share than was agreed to by the parties. <u>See</u> Objections Nos. 242 & 252.[14]  Both contend in general terms, and without any supporting evidence or documentation, that the population of Nazi victims in Hungary are "needier" than those living in the United States and Israel. These objections will hereafter be referred to as "Reallocation Proposals."

Initially it must be noted that the Reallocation Proposals do not call into question the underlying fairness of the settlement, but rather suggest an alternate method for distributing the Settlement Fund among the relevant countries.[15]  First, Moshe Sanbar proposes re-allocating 10% of the Settlement Fund, or approximately $2.1 million, to Hungary. <u>See</u> Objection No. 242. This number, however, is not based upon any evidence, but rather was negotiated between the Confederation of Holocaust Survivors in Hungary, the Federation of Jewish Communities in Hungary, and the Association of Former Hungarian Jews in Israel under Mr. Sanbar's skilled leadership and guidance. <u>See</u> Final Fairness Hearing Tr. at 20. Similarly, Burt Neubone, on behalf of eleven class members residing in Budapest, objected to the "flawed allocation formula" that "should be modified to account for the disproportionately high concentration of needy class members in Hungary." <u>See</u> Objection No. 252. Mr. Neuborne initially suggested that the Court order the Notice Provider to conduct an investigation into the economic circumstances of the Class Members, as such information is not currently available, in order to determine the appropriate redistribution. However, as he did not know with any degree of certainty the time or costs associated with his proposed investigation, and because he did not want to delay the settlement, Mr. Neuborne later supported the proposal of Mr. Sanbar. <u>See</u> Final Fairness Hearing Tr. at 37.

---

[14]  Additionally, objections 171 and 323 argue that the Settlement should all go to Hungary, but do so for reasons that seem to misapprehend that the case is on behalf of the owners of the property who reside world-wide.

[15]  As stated by Moshe Sanbar at the Final Fairness Hearing, "I cannot challenge the fairness of the agreement because I was an initiator here." Final Fairness Hearing Tr. at 14.

16

There are multiple problems with both Mr. Neuborne's initial proposal and the 10% re-allocation plan suggested by Mr. Sanbar. First, as to Mr. Neuborne's initial proposal, Mr. Neuborne himself conceded that, "this is not a case where you want to spend scarce funds doing a person-by-person survey and census of every poor Hungarian victim around the world. That would be . . . an inefficient use of scarce funds." See id. at 38. Indeed, the Court finds that the time and costs associated with requiring an investigation into the economic status of the Class Members would outweigh any benefits to be gained by the Class Members living in Hungary.[16]

There are similar problems with Mr. Sanbar's 10% re-allocation plan. First, although Mr. Sanbar urges the Court to adopt his proposal, the Court cannot re-write the terms of the Settlement Agreement negotiated between the parties; rather, the Court's only option would be to condition its approval of the Settlement upon the parties' adoption of the 10% re-allocation plan. Thus, Mr. Sanbar's objection fails to consider the real possibility that the parties would not agree to such amendment. See Statement of Daniel Meron, Final Fairness Hearing Tr. at 83 (stating, "Now, I don't know what we would have done as a government if this would have been presented to us before we had an agreement, as we were negotiating the agreement."). Second, the Court hesitates to adopt a proposal not based on an evaluation of need, but on a percentage that was negotiated without the input of Class Counsel or Defendant, as such a plan would be vulnerable to intense criticism from the adversely affected members of the Class.

Finally, and perhaps most significantly, if the Court were to adopt Mr. Sanbar's plan, it would be required to provide re-notice to those Class Members adversely affected by the change, which is approximately 77% of the Class. See Nilsen v. York County, 382 F. Supp. 2d 206, 221 n.9 (D. Me. 2005) (stating, "[i]f the parties decide to amend the settlement to remove the cause for my disapproval, I would

---

[16] In addition, as discussed in the Final Approval Motion, any study designed to determine the "relative neediest" among the needy would be difficult, if not impossible, and fraught with subjectivity. At a minimum, such a study would have to take into account the cost of the specific services that would be subsidized by the Special Fund in each country, the kind, quality, and universal availability and utilization of social safety nets in the various countries, the general cost of living, currency exchange rates, and the like.

17

require a new opportunity for female class members who have filed claims to opt out. . . . I would require notice of the amendment and the opt-out right only to female class members who have already filed claims, because they are the only class members who would be negatively affected by such an amendment."); White v. Nat'l Football League, 836 F. Supp. 1458, 1468-69 (D. Minn. 1993) (requiring re-notice to those class members adversely affected by an amendment to the settlement agreement). Thus, in order to provide approximately $2.1 million dollars of additional social services to Class Members living in Hungary, the Court would first have to provide for re-notice and a second opt-out period, which would not only be costly and delay the ultimate distribution of the Settlement Fund to the Class, but could also potentially defeat the entire Settlement. As expressed by Class Counsel, "[n]ow, any rejection of the settlement could . . . make the process go backwards. We could lose, to the extent we have a consensus, that which we have. . . . And, of course, the consensus that we have been able to build so far has been very difficult, it has been fragile."[17] Final Fairness Hearing Tr. at 107-08. Thus, although Mr. Sanbar's proposal has appeal, the Court finds that it would be unfair and unreasonable to require the parties to adopt it at this stage of the proceedings.

In addition to the costly problems associated with the Reallocation Proposals, the Court finds that the current allocation system, based upon population, is fair and reasonable, as it is consistent with Plaintiffs' theory of the case.[18] As the gravamen of the First Amended Complaint is essentially a property claim, the parties chose to allocate the Settlement Fund equally among all living Class Members today. Notably, other courts have adopted cy pres allocations based on population proxies designed to benefit class members when individual damage determinations are too difficult or too costly. See West Va. v. Chas. Pfizer & Co., 314

---

[17] Indeed, it is not even clear whether all of the named Plaintiffs would approve of an amended Settlement, as a number of them spoke eloquently at the Final Fairness Hearing in favor of the Settlement in its current form.

[18]That the Second Circuit approved the trial court's discretionary use of a different formula proposed by a Special Master in the Swiss Banks case does not compel a different result than the one agreed to by the Parties and preliminarily approved by this Court on April 8, 2005. While the Second Circuit did express dissatisfaction with an allocation system based upon population, the factual and procedural posture of that case varies greatly from the issues pertinent here.

18

F.Supp. 179, 185 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079(2d Cir. 1970) (allocating an anti-trust settlement pro rata among the states); In re Toys "r" Us Antitrust Litig., 191 F.R.D. 347 (E.D.N.Y. 2000) (distirbuting settlement funds uniformly throughout the country for toys and educational programs). Moreover, none of the allocated money will go to waste under the Plan of Allocation, as there is tremendous need all over the world. In fact, the Court has before it proof that the funds allocated from the Settlement will, at best, address only a portion of the needs of eligible Hungarian Nazi Victims in the United States, Hungary, Israel and the rest of the world.[19]

In addition, the Plan of Allocation itself provides for an internal process for annual reconsideration of the allocations made to the various agencies in specific locales. Funds are allocated to agencies on an annual basis. If any funds remain after the annual allocation period, they are canceled. "In such an event, recommended allocations will be reviewed and may be adjusted; should that be necessary, a supplemental Detailed Plan of Allocation will be presented" to the Court for its review and approval. See Plan of Allocation, at 5. Thus, should the facts bear out that some of the money cannot be used in one locale because there is not sufficient need among eligible victims, those monies will be reallocated but done so with Court approval and proof that the money is not in fact needed in the particular locale. Thus, the Settlement and Plan of Allocation contemplated and provided for a method of addressing the concerns raised by the Reallocation Proposals.

Finally, to the extent that it is even applicable, the Court finds that the Settlement does not violate Amchem Prods. v. Windsor, 521 U.S. 591 (1997), as there is no evidence to suggest that Class Counsel subordinated the needs of Class Members living in Hungary to the interests of Class Members living in other countries. First, the Confederation of Holocaust Survivors in Hungary, the Federation of Jewish Communities

---

[19] See e.g. Letter from Stuart E. Eizenstat to the Honorable Edward R. Korman, December 30, 2003, attached as Exhibit A to Declaration of Samuel J. Dubbin in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Supporting Memorandum of Law ("Dubbin Declaration"); Declaration of David Saltman, Jewish Community Services of South Florida (Miami-Dade County programs) and Ken Moskowitz, Jewish Family Services, Inc. of Broward County, Florida, Exhibits B and C to Dubbin Declaration; Submission of United Jewish Appeal/Federation of New York City to Swiss Bank Special Master, Exhibit F to Dubbin Declaration; and Brodsky and Della Pergola study, Exhibit E to Dubbin Declaration.

in Hungary, and the Association of Former Hungarian Jews in Israel all participated in the mediation through

counsel. Furthermore, no objector has suggested that the 10% allocation plan was suggested during the

mediation process. See Objections 242, 252; Final Fairness Hearing Tr. at 111. Third, although the parties

did not select an allocation method that will favor Hungary over the other countries, Class Members living

in Hungary will receive approximately $900,000 a year in financial assistance under the Settlement, which

is a greater amount than that achieved under any other Holocaust restitution case. See Final Fairness Hearing

Tr. at 114. Accordingly, upon careful consideration of the objections and the oral argument of the Objectors,

the Court finds that the current Plan of Allocation is fair, reasonable, and not the product of collusion.

## IX     FEE REQUEST

Class Counsel seeks an award for fees and reimbursable expenses of $3.85 million. When expenses

are deducted, the fees requested represent less than 12% of the total monetary value of the Settlement, which

is far below the Eleventh and Federal Circuits' standards for awarding attorneys fees in common fund class

actions. Class Counsel litigated this case against a highly sophisticated and extremely powerful adversary

with vast resources and an impressive arsenal of legal defenses not available to all defendants. It took five

years of determined and creative lawyering before a settlement could be reached. Considering the

extraordinary time and effort expended by Class Counsel, the difficulty of the case and the risks undertaken,

the fact that not a single lawyer stepped forward to assist Class Counsel on a pro bono basis or at reduced-fee

rates, as well as the quality and historical importance of the results, the fees requested are amply supported.[20]

Accordingly, the Court confirms the appointment of Class Counsel and finds that Class Counsel have fairly

and adequately represented the interests of the Class. In addition, for the reasons set forth herein and

articulated at the Fairness Hearing, the Court finds that attorneys' fees and expenses in the amount of $3.85

---

[20] For the same reasons, and given that there is extremely minimal opposition to Counsel's fee request among the over 60,000 class members, the Court finds that this objection does not render the Settlement either unfair or unreasonable. See Objections Nos. 16, 34, 96, 211, 230, 246, 294, and 347 (suggesting that the attorneys' fees are too high). But see Objections/Comments Nos. 25, 67 & 138 (commenting on the high quality of legal work).

million is fair and reasonable.

Turning to the request for modest incentive awards, the Court finds that such request is also fair and reasonable. Incentive or service awards, such as those sought here, are readily approved by courts within the Eleventh Circuit. As one district court recently noted, "Courts routinely give incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted) (approving incentive award payments of $300,000 per representative, and $3,000 per non-representative class member who provided affidavit). Here, based upon the information submitted by Class Counsel, and noting that no objections were filed, the Court finds that the modest incentive awards requested for certain Plaintiffs are fair, reasonable, and appropriate.

## X.    CONCLUSION

Based upon the foregoing reasons, as well as the oral findings of fact and conclusions of law reflected in the transcript of the Final Fairness Hearing on September 26, 2005, as well as the arguments made in Plaintiff's Final Approval Motion and Class Counsel's Fee Petition, it is hereby

ORDERED that

1.       The Final Approval Motion [DE 228] is GRANTED. The Settlement Agreement, including the Plan of Distribution and Plan of Allocation, is a fair, reasonable and adequate compromise of the claims against the Defendant in the Action, pursuant to Fed. R. Civ. P. 23.   Judgment is entered dismissing the claims except to the extent of the relief provided in the Settlement Agreement, which is incorporated herein by reference.

2.       Defendant and Settlement Class Members are bound by the Settlement Agreement, including all releases contained therein, and this Final Order and Judgment, and Settlement Class Members do not have any further opportunity to exclude themselves from the Action.

3.       All Class members who have not timely filed a Request for Exclusion are permanently barred

21

and enjoined from commencing and/or prosecuting any Settled Claim against the Defendant in any forum.

4.      Class Counsel's Petition for attorney's fees [DE 212] is GRANTED. The fees and expenses requested by Class Counsel are approved in the total amount of $3.85 million and the Escrow Agent is directed hereby to pay such fees and expenses from the Settlement Fund to Cuneo Gilbert & LaDuca, LLP, which shall allocate such fees and expenses to other Class Counsel in a fair and equitable manner.

5.      The Plaintiffs are awarded incentive payments totaling $150,000, as set forth on the Schedule of Plaintiff Incentive Payments, attached hereto as Exhibit B, in recognition of the efforts they have undertaken and the risk they have incurred in connection with this Action. The Escrow Agent is hereby directed to make such payments to the said Plaintiffs from the Settlement Fund.

6.      Without affecting the finality of this Final Order and Judgment, this Court shall retain exclusive and continuing jurisdiction over the Action, all Parties, the Claims Conference and Settlement Class Members, to interpret and enforce the terms, conditions and obligations of this Final Order and Judgment, including all matters relating to the consummation, performance, and enforcement of the Settlement Agreement.

7.      Class Counsel may move this Court for any Order necessary to implement this Judgment or the Settlement Agreement or to assist in the administration of the Settlement Agreement.

8.      Pursuant to the Settlement Agreement, the Settlement Fund and Special Fund shall be maintained by the Escrow Agent under the continuing jurisdiction and supervision of the Court and shall earn interest, which shall become part of the Special Fund.

9.      For administrative purposes, this case is CLOSED.

DONE AND ORDERED in Miami, Florida this 30ᵗʰ day of September, 2005.

Patricia A. Seitz
United States District Court

cc:
Counsel of Record

22

**Exhibit A**

**List of Individuals Excluded from the Settlement**

| | |
|---|---|
| 1 | MOSHKOVICH, LENI |
| 2 | MOSHKOVICH, SAMUEL |
| 3 | NELSON, ALAN |
| 4 | FULOP, GEORGE |
| 5 | NEUMAN, VIOLA |
| 6 | PERL, JENE |
| 7 | KOVACS, ILONA |
| 8 | KOVACS, JOHN |
| 9 | LUKACS, CHARLES |
| 10 | SAMET, PIROSKA PEARL |
| 11 | KALLUS, ELSA |
| 12 | RUDAS, IREN |
| 13 | SAND, RONNIE |
| 14 | SCHOSSBERGER, ANDREW |
| 15 | MEISELS, SAMUEL |
| 16 | NEHEZ, VERA |
| 17 | YASKIL, RACHEL |
| 18 | GLASNER, JUDITH |
| 19 | BRUSZT, IVAN |
| 20 | SZEKELY, IREN |
| 21 | VIG, GYORGY |
| 22 | BAR-NIR, MOSHE |
| 23 | SALAMON ROZENCWEIG, OLGA |
| 24 | GOMBOS, GEORGE |
| 25 | BALASZ, ENDRE |
| 26 | WEISS, LILLIAN |
| 27 | EINHORN, ETA |
| 28 | FEUER, JUDITH |
| 29 | WINTER, PAUL |
| 30 | TESSLER, BUROCH |
| 31 | MOLNAR, PETERNE |
| 32 | LUNGER, ALEXANDER |
| 33 | REICH, ELIZABETH |
| 34 | GEZA, TIMAR |
| 35 | SCHWARTZ, SANDOR |
| 36 | BASCH, ESTHER |
| 37 | SIMON, FRANCES |
| 38 | ANGYALOSI, ENDRE |
| 39 | RASMUSEN, EVA |
| 40 | ANGYALOSI, LASZLO |
| 41 | BLUMENTHAL, PETER |
| 42 | WEINBERGER, JOSE GABRIEL |
| 43 | JENEI, SANDORNE |
| 44 | SZIRT, MARTA |
| 45 | GRUNWALD, ANNA |
| 46 | MELLINGER, FRANCISCO |
| 47 | FRISCH, ILONA |
| 48 | LAZAR-FRANCK, SARA |
| 49 | KATZ, GIZELLA |
| 50 | KAISER, JUDIT |

23

| | |
|---|---|
| 51 | VASVARI, JANOS |
| 52 | FOX, PETER A. |
| 53 | BREUER, ZIGMOND |
| 54 | SHARON, HAIM |
| 55 | HELLER, STEVEN |
| 56 | DE FERENCZI, ANA ROSENTHAL |
| 57 | KLEIN, ELLA |
| 58 | KLEIN, ALEXANDER |
| 59 | MECHLOVITZ, RIFKA |
| 60 | MARKUS, MARGARET |
| 61 | PATAKI-MARC, STEPHAN |
| 62 | HARRISON, EDITH |
| 63 | GREEN, ISRAEL |
| 64 | WEISS, SHARON |
| 65 | LOEWY, GEORGE |
| 66 | LOEWY, VERONICA |
| 67 | BODNAR, ZOLTAN |
| 68 | BODNAR, PIROSKA |
| 69 | BENJAMIN, JUDITH |
| 70 | RETI, ISTVANNE |
| 71 | LAWSON, SHARON J. |
| 72 | DE FIDELHOC, RIVKA DASKAL |
| 73 | HIRSCH, PERI |
| 74 | FRIEDMAN, ASHER |
| 75 | RADOS, ARTURNE |
| 76 | BASHAN, ITZHAK |
| 77 | BASHAN, MIRIAM |
| 78 | GUGI, SANDORNE |
| 79 | VAJDA, DEZSOE |
| 80 | FEHER, TIBORNE |
| 81 | JAKUBOVIC, JIRI |
| 82 | AGOSTON, PAL |
| 83 | RETI, ILONA |
| 84 | HAUER, ARIE |
| 85 | ENGEL, SHMUEL |
| 86 | ENGEL, ZAHAVA |
| 87 | PREIS, MARGARETA |
| 88 | FNICKEL, YAKOV |
| 89 | FNICKEL, EKATERINA |
| 90 | JONAS, JONA |
| 91 | ENGELMAN, MIRIAM |
| 92 | WEINBERGER, CHANA |
| 93 | WEINBERGER, BINYOMIN |
| 94 | HIRSCHLER, RITA |
| 95 | MEISNER, JOZSEFNE |
| 96 | RADNAI, ISTVANNE |
| 97 | KELETI, PETER |
| 98 | FEKETE, SZUNSIZ |
| 99 | FEKETE, JANOS |
| 100 | BARAK BEN-AMOS |
| 101 | FULOP, GEORGE (heir) |
| 102 | HEVESI, DR. EVA (heir) |
| 103 | RADO, JANOS (heir) |
| 104 | KOSA-BANKI, AGNES (heir) |
| 105 | RADONE-LOFFLER, MARIA (heir) |

24

| 106 | GLASNER, JUDITH (heir) |
| 107 | WADLER, CHAYA DEBLINGER (heir) |
| 108 | BLISKO, CECELIA DEBLINGER (heir) |
| 109 | ALTMAN, DAVID (heir) |
| 110 | TORMASI, DAVID (heir) |
| 111 | WESTWOOD, JUDITH (heir) |
| 112 | ROSENBERG, SOL (heir) |
| 113 | WEINGARTEN, SARA (heir) |
| 114 | GROSS, JEFFREY (heir) |
| 115 | BASCH, PAUL (heir) |
| 116 | BASCH-RUSSO, FRAN (heir) |
| 117 | BASCH, M. (heir) |
| 118 | TURET, RACHEL (heir) |
| 119 | GABORNE, BARNA (heir) |
| 120 | BLUMENTHAL, SUSAN (heir) |
| 121 | WEISZ, ALEXANDER (heir) |
| 122 | LITTMAN, AUREL (heir) |
| 123 | ILLES, LASZLONE (heir) |
| 124 | VIDA, IMRENE (heir) |
| 125 | GONDOR, MAGDA (heir) |
| 126 | VALYI, GYORGY (heir) |
| 127 | FELDMAN, ELIHU (heir) |
| 128 | KOVACS, TIBOR (heir) |
| 129 | GRUNWALD, LADISLAU (heir) |
| 130 | GROSS, BRIAN (heir) |
| 131 | FOX, PETER (heir) |
| 132 | PORGES, LEO (heir) |
| 133 | SHIMONY, DAVID (heir) |
| 134 | KNAPP, OSZKARNE (heir) |
| 135 | VALYI, GYORGY(heir) |
| 136 | TOLNAI, JUDIT (heir) |
| 137 | MOSKOVITZ, GABRIEL (heir) |
| 138 | LANDESMAN, SLOMO (heir) |
| 139 | MARKUS, MAGGIE (heir) |
| 140 | PAILAS, EVELYN (heir) |
| 141 | GORELICK, BETTY GLUCK (heir) |
| 142 | HOLLANDER, FAYE (heir) |
| 143 | RICKARD, PATRICIA |
| 144 | GILAD, FAYE (heir) |
| 145 | JUHASZ, OTTONE (heir) |
| 146 | RADOS, PETER (heir) |
| 147 | AGOSTON, PAL (heir) |
| 148 | BASHAN, ITZHAK (heir) |
| 149 | BASHAN, MIRIAM (heir) |
| 150 | STERN, ELISABET (heir) |
| 151 | VAJDA, DEZSOENE (heir) |
| 152 | RETI, DAVID (heir) |
| 153 | ZADOR, JULIA (heir) |
| 154 | MEISEL, AGNES (heir) |
| 155 | DERI, GYORGYNE (heir) |
| 156 | FEHER, PETER (heir) |
| 157 | LEVAI, VILMOS (heir) |
| 158 | LOWI, IMRE (heir) |
| 159 | RADNAI, ANDREA FORRAINE (heir) |
| 160 | RADNAI, ISTVANNE (heir) |

| 161 | SCHMIDT, TIBOR (heir) |
| 162 | KELETI, PETER (heir) |

**Exhibit B**

**Schedule of Plaintiff Incentive Payments**

| 1 | Edith Klein Amster | $5,000 |
|---|---|---|
| 2 | Francis Bash | $5,000 |
| 3 | Veronika Baum | $5,000 |
| 4 | Alice Besseney | $2,000 |
| 5 | Elisabeth Bleier | $5,000 |
| 6 | Erwin Deutsch | $5,000 |
| 7 | Dr. Joseph Devenyi | $5,000 |
| 8 | Peter Drexler | $5,000 |
| 9 | Barunch Bernhard Epstein | $5,000 |
| 10 | Magda Feig | $2,000 |
| 11 | Michael Fried | $5,000 |
| 12 | Paul Gottlieb | $5,000 |
| 13 | Judith Karmi | $5,000 |
| 14 | Ethel Klein | $5,000 |
| 15 | Mildred Klein | $2,000 |
| 16 | Tamas May | $5,000 |
| 17 | David Mermelstein | $5,000 |
| 18 | Irene Mermelstein | $5,000 |
| 19 | Edith Moore | $5,000 |
| 20 | John J. Rakos | $5,000 |
| 21 | Goerge Rasko | $5,000 |
| 22 | Ana Rosner | $3,000 |
| 23 | Irving Rosner | $5,000 |
| 24 | Georg Moshe Schwarz | $5,000 |
| 25 | Estate of Beorge Sebok | $5,000 |

27

| 26 | Dr. Laszlo Sokoly | $2,000 |
|-----|------------------|--------|
| 27 | Agnes V. Somjen | $5,000 |
| 28 | Olga Steiner | $2,000 |
| 29 | Jonas Stern | $5,000 |
| 30 | Irene Tibor | $5,000 |
| 31 | Andrew Tibor | $5,000 |
| 32 | Agnes Vadasz | $5,000 |
| 33 | Zoltan S. Weiss | $5,000 |
| 34. | Ms. Edith Reiner | $2,000 |

# EXHIBIT D

CLOSED

# U.S. District Court
## Southern District of Florida (Miami)
### CIVIL DOCKET FOR CASE #: 1:01-cv-01859-PAS

| | |
|---|---|
| Rosner, et al v. United States | Date Filed: 05/07/2001 |
| Assigned to: Judge Patricia A. Seitz | Jury Demand: Plaintiff |
| Demand: $0 | Nature of Suit: 890 Other Statutory Actions |
| Cause: 28:1346 Tort Claim | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Irving Rosner**     represented by     **David W. Stanley**
Cuneo Waldman & Gilbert
317 Massachusetts Avenue NE
Suite 300
Washington, DC 20002
202-789-3960
Fax: 789-1813
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
Dubbin & Kravetz
701 Brickell Avenue
16th Floor
Miami, FL 33131
305-357-9039
Fax: 357-9050
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
Cuneo Waldman & Gilbert
317 Massachusetts Avenue NE
Suite 300
Washington, DC 20002
202-789-3960
Fax: 789-1813
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
Cuneo Waldman & Gilbert
Rockefeller Center
620 Fifth Avenue
New York, NY 10020

212-698-4504
Fax: 698-4505
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
Hagens & Berman
1301 5th Avenue
Suite 2900
Seattle, WA 98101
206-268-9363
Fax: 623-0594
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
Dubbin & Kravetz
701 Brickell Avenue
16th Floor
Miami, FL 33131
305-357-9004
Fax: 371-4701
Email: sdubbin@dubbinkravetz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
Hagens & Berman
1301 5th Avenue
Suite 2900
Seattle, WA 98101
206-623-7292
Fax: 623-0594
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ana Irving**                  represented by   **David W. Stanley**
*TERMINATED: 10/31/2003*                        (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Jeffrey Lee Kravetz**
                                                (See above for address)
                                                *TERMINATED: 10/31/2003*
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Jonathan W. Cuneo**
                                                (See above for address)

*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
Dubbin & Kravetz
701 Brickell Avenue
16th Floor
Miami, FL 33131
305-357-9004
Fax: 371-4701
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andrew Tibor**                    represented by   **David W. Stanley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Irene Tibor**                    represented by    **David W. Stanley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Irene Mermelstein**                  represented by **David W. Stanley**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey Lee Kravetz**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jonathan W. Cuneo**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Michael A. Waldman**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **R. Brent Walton**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Samuel Johnathan Dubbin**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Steve W. Berman**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Ethel Klein**                        represented by **David W. Stanley**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jeffrey Lee Kravetz**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Jonathan W. Cuneo**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Klein**
*TERMINATED: 10/31/2003*

represented by **David W. Stanley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Regina Baskin**
*TERMINATED: 10/31/2003*

represented by **David W. Stanley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edith Reiner**

represented by **Jeffrey Lee Kravetz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leopold Fettman**
*TERMINATED: 10/31/2003*

represented by **David W. Stanley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)

*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*TERMINATED: 10/31/2003*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Marla Simon**                    represented by   **David W. Stanley**
*TERMINATED: 10/31/2003*                            (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jeffrey Lee Kravetz**
                                                    (See above for address)
                                                    *TERMINATED: 10/31/2003*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Jonathan W. Cuneo**
                                                    (See above for address)
                                                    *TERMINATED: 10/31/2003*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **R. Brent Walton**
                                                    (See above for address)
                                                    *TERMINATED: 10/31/2003*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Samuel Johnathan Dubbin**
                                                    (See above for address)
                                                    *TERMINATED: 10/31/2003*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Steve W. Berman**
                                                    (See above for address)
                                                    *TERMINATED: 10/31/2003*
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Laslo Sokoly**                   represented by   **David W. Stanley**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jeffrey Lee Kravetz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan W. Cuneo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Waldman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R. Brent Walton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samuel Johnathan Dubbin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steve W. Berman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Mermelstein**                 represented by  **David W. Stanley**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Michael A. Waldman**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **R. Brent Walton**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Samuel Johnathan Dubbin**
                                                       (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**V.**

**Defendant**

**United States**                                    represented by    **Andrea G. Cohen**
United States Department of Justice
901 E Street NW
Washington, DC 20530
202-616-5197
Fax: 616-8470
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caroline Lewis Wolverton**
United States Department of Justice
Civil Division
PO Box 883
Ben Franklin Station
Washington, DC 20044
202-514-3336
Fax: 318-2672
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carolyn A. McKee**
United States Department of Justice
Civil Division
PO Box 883
Ben Franklin Station
Washington, DC 20044
202-514-4102
Fax: 318-7592
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel Meron**
United States Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Suite 3141
Washington, DC 20530
202-353-2793
Fax: 514-8071
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Smith**
United States Department of Justice

Civil Division
PO Box 883
Ben Franklin Station
Washington, DC 20044
202-514-5751
Fax: 616-8202
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robyn Juanita Hermann**
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
305-961-9332
Fax: 530-7139
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent M. Garvey**
United States Department of Justice
Civil Division
PO Box 883
Ben Franklin Station
Washington, DC 20044
202-514-2395
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edith Klein Amster**                    represented by    **Michael A. Waldman**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Francisc Basch**                        represented by    **Michael A. Waldman**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Verokina Baum**                         represented by    **Michael A. Waldman**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alice Bessenyey**                       represented by    **Michael A. Waldman**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elizabeth Bleier**                                 represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Erwin Deutsch**                                    represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dr. Joseph A. Devrnyi**                            represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Drexler**                                    represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barach Epstein**                                   represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Magda Feig**                                       represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Fried**                                    represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Gottlieb**                                    represented by   **Michael A. Waldman**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Judith Karmi**                              represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tamas May**                                represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edith More**                               represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John J. Rakos**                            represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**George Rasko**                             represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ana Rosner**                               represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**George Sebok**                             represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Agnes V. Somjen**                          represented by  **Michael A. Waldman**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

| Olga Steiner | represented by | **Michael A. Waldman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| Jonas K. Stern | represented by | **Michael A. Waldman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| Agnes Vadasz | represented by | **Michael A. Waldman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| **Zoltan S. Weiss**<br>*on behalf of themselves and other*<br>*similarly situated* | represented by | **Michael A. Waldman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/10/1953 | 190 | Settlement agreement by All Plaintiffs (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 05/07/2001 | 1 | COMPLAINT filed; FILING FEE $150.00 RECEIPT # 841284 ; A-7; Magistrate Judge Garber (dg, Deputy Clerk) (Entered: 05/08/2001) |
| 05/07/2001 | 2 | SUMMONS(ES) issued for United States by serving U.S. Attorney (dg, Deputy Clerk) (Entered: 05/08/2001) |
| 05/07/2001 | 3 | SUMMONS(ES) issued for United States by serving U.S. Attorney General (dg, Deputy Clerk) (Entered: 05/08/2001) |
| 05/21/2001 | 4 | ORDER requiring counsel to meet and file joint scheduling report and proposed order ( Signed by Judge Patricia A. Seitz on 5/18/01) CCAP [EOD Date: 5/22/01] (dg, Deputy Clerk) (Entered: 05/22/2001) |
| 06/08/2001 | 5 | RETURN OF SERVICE executed as to United States By Serving: U.S. Atty General 5/30/01 Answer due on 7/30/01 for United States (dg, Deputy Clerk) (Entered: 06/11/2001) |
| 06/13/2001 | 6 | RETURN OF SERVICE executed as to United States By Serving: Guy Lewis 6/5/01 Answer due on 8/6/01 for United States (dg, Deputy Clerk) (Entered: 06/14/2001) |
| 07/31/2001 | 7 | MOTION by United States to extend time to respond to complaint (dg, Deputy Clerk) (Entered: 08/01/2001) |

| 08/02/2001 | 8 | ORDER granting [7-1] motion to extend time to respond to complaint reset answer due for 9/4/01 for United States ( Signed by Judge Patricia A. Seitz on 8/2/01) [EOD Date: 8/3/01] (dg, Deputy Clerk) (Entered: 08/03/2001) |
| --- | --- | --- |
| 08/24/2001 | 9 | ORDER TO SHOW CAUSE within ten (10) days, parties shall show why this Court should not find them in contempt for failure to comply with Court's 5/18/01 order requiring counsel to meet and file joint scheduling report (Signed by Judge Patricia A. Seitz on 8/23/01) [EOD Date: 8/27/01] (Former Deputy Clerk) (Entered: 08/27/2001) |
| 08/30/2001 | 10 | JOINT RESPONSE to [9-1] Order to Show Cause by All Plaintiffs, United States (dg, Deputy Clerk) Modified on 08/31/2001 (Entered: 08/31/2001) |
| 08/30/2001 | 10 | JOINT MOTION by All Plaintiffs, United States for entry of scheduling order (dg, Deputy Clerk) (Entered: 08/31/2001) |
| 08/30/2001 | 11 | MOTION by All Plaintiffs for Steve W. Berman to appear pro hac vice (dg, Deputy Clerk) (Entered: 08/31/2001) |
| 08/30/2001 | | Filing Fee Paid; FILING FEE $ 75.00 RECEIPT # 848339 (dg, Deputy Clerk) (Entered: 08/31/2001) |
| 08/30/2001 | 12 | MOTION by All Plaintiffs for Jonathan W. Cuneo to appear pro hac vice (dg, Deputy Clerk) (Entered: 08/31/2001) |
| 09/05/2001 | 13 | ORDER granting [12-1] motion for Jonathan W. Cuneo to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 9/4/01) [EOD Date: 9/6/01] (dg, Deputy Clerk) (Entered: 09/06/2001) |
| 09/05/2001 | 14 | ORDER granting [11-1] motion for Steve W. Berman to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 9/4/01) [EOD Date: 9/6/01] (dg, Deputy Clerk) (Entered: 09/06/2001) |
| 09/05/2001 | 15 | ORDER establishing briefing schedule and modifying prior order requiring counsel to file joint scheduling report; vacating [9-1] order ( Signed by Judge Patricia A. Seitz on 9/4/01) [EOD Date: 9/6/01] (dg, Deputy Clerk) (Entered: 09/06/2001) |
| 09/21/2001 | 16 | MOTION by United States to dismiss complaint (dg, Deputy Clerk) (Entered: 09/24/2001) |
| 09/21/2001 | 17 | MEMORANDUM of points & authorities by United States in support of [16-1] motion to dismiss complaint (dg, Deputy Clerk) (Entered: 09/24/2001) |
| 10/25/2001 | 18 | JOINT MOTION by All Plaintiffs, United States to extend time to brief defendant's motion to dismiss (dg, Deputy Clerk) (Entered: 10/26/2001) |
| 10/26/2001 | 19 | ORDER granting [18-1] joint motion to extend time to brief defendant's motion to dismiss Response to motion reset to 11/12/01 for [16-1] motion to dismiss complaint , Reply to Response to Motion reset to 11/28/01 for [16-1] motion to dismiss complaint ( Signed by Judge Patricia A. Seitz |

| | | |
|---|---|---|
| | | on 10/25/01) [EOD Date: 10/29/01] (dg, Deputy Clerk) (Entered: 10/29/2001) |
| 11/13/2001 | 20 | JOINT MOTION by All Plaintiffs, United States for leave to file response to motion to USA's motion to dismiss in excess of page limit , and to extend time for USA to file reply to response to motion to dismiss (dg, Deputy Clerk) (Entered: 11/14/2001) |
| 11/13/2001 | 21 | MEMORANDUM of points & authorities by All Plaintiffs in opposition to [16-1] motion to dismiss complaint (dg, Deputy Clerk) (Entered: 11/14/2001) |
| 11/15/2001 | 22 | ORDER granting [20-1] joint motion for leave to file response to motion to USA's motion to dismiss in excess of page limit, granting [20-2] joint motion to extend time for USA to file reply to response to motion to dismiss Reply to Response to Motion reset to 12/5/01 for [16-1] motion to dismiss complaint ( Signed by Judge Patricia A. Seitz on 11/14/01) [EOD Date: 11/16/01] (dg, Deputy Clerk) (Entered: 11/16/2001) |
| 12/04/2001 | 25 | MOTION by United States for enlargement of page limit for reply in support of motion to dismiss (dg, Deputy Clerk) (Entered: 12/11/2001) |
| 12/05/2001 | 23 | REPLY by United States in support of [16-1] motion to dismiss complaint (Former Deputy Clerk) (Entered: 12/06/2001) |
| 12/05/2001 | 24 | ORDER granting defendant's unopposed motion for enlargement of page limit for defendant's reply in support of it's motion to dismiss ( Signed by Judge Patricia A. Seitz on 12/5/01) [EOD Date: 12/6/01] (tb, Deputy Clerk) (Entered: 12/06/2001) |
| 01/11/2002 | 26 | SEALED DOCUMENT placed in vault (Former Deputy Clerk) (Entered: 01/17/2002) |
| 01/11/2002 | 27 | SEALED DOCUMENT with attachments placed in vault (Former Deputy Clerk) (Entered: 01/17/2002) |
| 03/11/2002 | 28 | NOTICE of Change of Address of attorney by All Plaintiffs (dg, Deputy Clerk) (Entered: 03/13/2002) |
| 04/03/2002 | 29 | NOTCE OF HEARING setting motion hearing on [16-1] motion to dismiss complaint by United States for 10:00 4/17/02 (Signed by Judge Patricia A. Seitz on 4/3/02) [EOD Date: 4/4/02] (dg, Deputy Clerk) (Entered: 04/04/2002) |
| 08/09/2002 | 30 | ORDER Motion hearing before Judge Patricia A. Seitz set for 8:30 8/22/02 for [16-1] motion to dismiss complaint ( Signed by Judge Patricia A. Seitz on 8/9/02) [EOD Date: 8/12/02] (dg, Deputy Clerk) (Entered: 08/12/2002) |
| 08/28/2002 | 31 | ORDER granting in part, denying in part [16-1] motion to dismiss complaint dismissing count 1 of complaint with prejudice , set Scheduling meeting report due for 9/16/02 (Signed by Judge Patricia A. Seitz on 8/28/02) [EOD Date: 8/29/02] (dg, Deputy Clerk) (Entered: 08/29/2002) |

| 09/03/2002 | 32 | Transcript filed re: Motion To Dismiss held August 22, 2002 before Judge Patricia A. Seitz Volume #: I Pages: 1-46 (hh, Deputy Clerk) (Entered: 09/03/2002) |
|---|---|---|
| 09/11/2002 | 33 | JOINT MOTION by All Plaintiffs, United States to extend time to file joint scheduling report (dg, Deputy Clerk) (Entered: 09/12/2002) |
| 09/11/2002 | 34 | ORDER granting [33-1] joint motion to extend time to file joint scheduling report reset Scheduling meeting report due for 10/4/02 ( Signed by Judge Patricia A. Seitz on 9/11/02) [EOD Date: 9/12/02] (dg, Deputy Clerk) (Entered: 09/12/2002) |
| 09/12/2002 | 35 | MOTION by United States for partial reconsideration of [31-3] order , and to stay 9/11/02 order to submit a joint scheduling report (dg, Deputy Clerk) Modified on 10/01/2002 (Entered: 09/13/2002) |
| 09/12/2002 | 36 | MOTION with memorandum in support by All Plaintiffs for reconsideration of [31-3] order (dg, Deputy Clerk) (Entered: 09/13/2002) |
| 09/26/2002 | 37 | RESPONSE by United States to [36-1] motion for reconsideration of [31-3] order (dg, Deputy Clerk) (Entered: 09/27/2002) |
| 09/26/2002 | 38 | MOTION by All Plaintiffs to extend time to respond to defendant's motion for reconsideration (dg, Deputy Clerk) (Entered: 09/27/2002) |
| 09/30/2002 | 39 | MEMORANDUM by All Plaintiffs in opposition to [35-1] motion for partial reconsideration of [31-3] order (dg, Deputy Clerk) (Entered: 10/01/2002) |
| 10/01/2002 | 40 | ORDER granting [38-1] motion to extend time to respond to defendant's motion for reconsideration Response to motion reset to 9/30/02 for [35-1] motion for partial reconsideration of [31-3] order ( Signed by Judge Patricia A. Seitz on 9/30/02) [EOD Date: 10/2/02] (dg, Deputy Clerk) (Entered: 10/02/2002) |
| 10/03/2002 | 41 | MOTION by United States for ruling on its motion for stay of order to submit a joint scheduling report by 10/4/02 (dg, Deputy Clerk) (Entered: 10/04/2002) |
| 10/03/2002 | 42 | REPLY MEMORANDUM by All Plaintiffs in support of [36-1] motion for reconsideration of [31-3] order (dg, Deputy Clerk) (Entered: 10/04/2002) |
| 10/04/2002 | 43 | ORDER denying [41-1] motion for ruling on its motion for stay of order to submit a joint scheduling report by 10/4/02 reset Scheduling meeting report due for 10/9/02 ( Signed by Judge Patricia A. Seitz on 10/3/02) [EOD Date: 10/7/02] (dg, Deputy Clerk) (Entered: 10/07/2002) |
| 10/08/2002 | 44 | REPLY by United States in support of [35-1] motion for partial reconsideration of [31-3] order (dg, Deputy Clerk) (Entered: 10/09/2002) |
| 10/09/2002 | 45 | Joint Scheduling Report of Scheduling Meeting by All Plaintiffs, United States 10/9/02 (dg, Deputy Clerk) (Entered: 10/10/2002) |
| 11/25/2002 | 46 | ORDER denying [35-1] motion for partial reconsideration of [31-3] order |

| | | and clarifying the Court's August 28, 2002 Order. See Order for details. ( Signed by Judge Patricia A. Seitz on 11/26/02) [EOD Date: 11/26/02] (ct, Deputy Clerk) (Entered: 11/26/2002) |
|---|---|---|
| 11/25/2002 | 47 | ORDER denying [36-1] motion for reconsideration of [31-3] order ( Signed by Judge Patricia A. Seitz on 11/22/02) [EOD Date: 11/26/02] (ct, Deputy Clerk) (Entered: 11/26/2002) |
| 12/13/2002 | 48 | REVISED JOINT Scheduling Report of Scheduling Meeting in accordance with the Court's Order of November 26, 2002 by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein (ct, Deputy Clerk) (Entered: 12/16/2002) |
| 12/23/2002 | 49 | MOTION by United States for certification for interlocutory review , and to stay of further proceedings pending interlocutory review (ct, Deputy Clerk) (Entered: 12/26/2002) |
| 12/23/2002 | 50 | MEMORANDUM by United States in support of [49-1] motion for certification for interlocutory review, [49-2] motion to stay of further proceedings pending interlocutory review (ct, Deputy Clerk) (Entered: 12/26/2002) |
| 01/06/2003 | 51 | UNOPPOSED MOTION by All Plaintiffs to extend time to respond to motion for certification through January 20, 2003 (ct, Deputy Clerk) (Entered: 01/07/2003) |
| 01/07/2003 | 52 | ORDER granting [51-1] motion to extend time to respond to motion for certification through January 20, 2003 ( Signed by Judge Patricia A. Seitz on 1/06/03) [EOD Date: 1/8/03] (ct, Deputy Clerk) (Entered: 01/08/2003) |
| 01/21/2003 | 53 | MEMORANDUM by All Plaintiffs in opposition to [49-1] motion for certification for interlocutory review, [49-2] motion stay of further proceedings pending interlocutory review (ct, Deputy Clerk) (Entered: 01/22/2003) |
| 01/22/2003 | 54 | UNOPPOSED MOTION by United States to extend time to file its reply brief in support of its Motion for Certification for Interlocutory Review until February 5, 2003 (ct, Deputy Clerk) (Entered: 01/23/2003) |
| 01/23/2003 | 55 | ORDER granting [54-1] motion to extend time to file its reply brief in support of its Motion for Certification for Interlocutory Review until February 5, 2003 ( Signed by Judge Patricia A. Seitz on 1/22/03) [EOD Date: 1/24/03] (ct, Deputy Clerk) (Entered: 01/24/2003) |
| 01/23/2003 | 56 | ORDER Setting Status Conference and Hearing Motion hearing before Judge Patricia A. Seitz set for 10:00 2/12/03 for [49-1] motion for certification for interlocutory review, set for 10:00 2/12/03 for [49-2] motion to stay of further proceedings pending interlocutory review . See Order for additional details. ( Signed by Judge Patricia A. Seitz on 1/24/03) [EOD Date: 1/24/03] (ct, Deputy Clerk) (Entered: 01/24/2003) |
| 01/29/2003 | 57 | UNOPPOSED MOTION by United States to reschedule February 12, |

| | | |
|---|---|---|
| | | 2003 Status Confence and Hearing (ct, Deputy Clerk) Modified on 01/30/2003 (Entered: 01/30/2003) |
| 01/30/2003 | 58 | ORDER granting [57-1] motion to reschedule February 12, 2003 Status Confence and Hearing Motion hearing before Judge Patricia A. Seitz set for 9:00 2/26/03 for [49-1] motion for certification for interlocutory review . See Order for additional details. ( Signed by Judge Patricia A. Seitz on 1/29/03) [EOD Date: 1/31/03] (ct, Deputy Clerk) (Entered: 01/31/2003) |
| 02/05/2003 | 59 | REPLY by United States in support of [49-1] motion for certification for interlocutory review, [49-2] motion to stay of further proceedings pending interlocutory review (ct, Deputy Clerk) (Entered: 02/06/2003) |
| 02/20/2003 | 60 | Outline regarding documents and depositions/Notice of compliance: by United States with [58-2] order, [55-1] order (ct, Deputy Clerk) (Entered: 02/21/2003) |
| 02/20/2003 | 61 | Outline of documents and depositions/Notice of compliance: by All Plaintiffs with [58-2] order, [55-1] order (ct, Deputy Clerk) (Entered: 02/21/2003) |
| 02/26/2003 | 62 | Minutes of Motion for Interlocutory Appel and Status Conference held before Judge Patricia A. Seitz on 2/26/03; Court Reporter Name or Tape #: D. Ehlrlich (ct, Deputy Clerk) (Entered: 02/27/2003) |
| 02/26/2003 | | Status conference held before Judge Patricia A. Seitz (ct, Deputy Clerk) (Entered: 02/27/2003) |
| 02/26/2003 | 63 | MOTION by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, David Mermelstein for R. Brent Walton to appear pro hac vice (ct, Deputy Clerk) (Entered: 02/27/2003) |
| 02/26/2003 | | Pro Hac Vice Fee Paid; FILING FEE $ 75.00 RECEIPT # 877897 (ct, Deputy Clerk) (Entered: 02/27/2003) |
| 02/27/2003 | 64 | ORDER REGARDING SCHEDULING ORDER AND FILING AMENDED COMPLAINT. Plaintiff shall have until and including August 4, 2003 to file an amended complaint. See Order for full detials. ( Signed by Judge Patricia A. Seitz on 2/26/03) [EOD Date: 2/28/03] (ct, Deputy Clerk) (Entered: 02/28/2003) |
| 02/28/2003 | 65 | ORDER granting [63-1] motion for R. Brent Walton to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 2/27/03) [EOD Date: 3/3/03] (ct, Deputy Clerk) (Entered: 03/03/2003) |
| 03/03/2003 | 66 | ORDER denying without prejudice [49-1] motion for certification for interlocutory review, denying [49-2] motion to stay of further proceedings pending interlocutory review ( Signed Judge Patricia A. Seitz on 2/28/03) [EOD Date: 3/4/03] (ct, Deputy Clerk) (Entered: 03/04/2003) |
| | | |

| 03/03/2003 | 67 | JOINT MOTION by All Plaintiffs, United States access to Presidential records (ct, Deputy Clerk) (Entered: 03/04/2003) |
|---|---|---|
| 03/05/2003 | 68 | NOTICE regarding correct protocol for encouraging expeditious review of Presidential records by administrations by United States (ct, Deputy Clerk) (Entered: 03/06/2003) |
| 03/06/2003 | 69 | ORDER granting [67-1] joint motion access to Presidential records ( Signed by Judge Patricia A. Seitz on 3/5/03) [EOD Date: 3/7/03] (tb, Deputy Clerk) (Entered: 03/07/2003) |
| 03/06/2003 | 70 | Transcript filed re: Status Hearing held 2/26/03 before Judge Patricia A. Seitz Volume #: I Pages: 1-122 (hh, Deputy Clerk) (Entered: 03/07/2003) |
| 06/24/2003 | 71 | NOTICE of filing change of firm name by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/25/2003) |
| 07/18/2003 | 72 | NOTICE of Reassignment of Attorney. Terminated attorney Caroline Lewis Wolverton for United States Added Carolyn A. McKee (ct, Deputy Clerk) (Entered: 07/21/2003) |
| 07/25/2003 | 73 | MOTION by All Plaintiffs to extend time to file amended complaint (ct, Deputy Clerk) (Entered: 07/28/2003) |
| 07/28/2003 | 74 | ORDER granting [73-1] motion to extend time to file amended complaint to on or before October 16, 2003 ( Signed by Judge Patricia A. Seitz on 7/25/03) [EOD Date: 7/29/03] (ct, Deputy Clerk) (Entered: 07/29/2003) |
| 10/16/2003 | 75 | UNOPPOSED MOTION by All Plaintiffs to extend time to amend conmplaint (ct, Deputy Clerk) (Entered: 10/17/2003) |
| 10/20/2003 | 76 | ORDER granting [75-1] motion to extend time to amend complaint, plaintiffs shall have 10 additional days 10/31/03 within which to amend their complaint in this case ( Signed by Judge Patricia A. Seitz on 10/17/03) [EOD Date: 10/21/03] (cj, Deputy Clerk) (Entered: 10/21/2003) |
| 10/31/2003 | 79 | AMENDED COMPLAINT by Irving Rosner, Irene Mermelstein, Ethel Klein, Edith Reiner, David Mermelstein , (Answer due 11/10/03 for United States ) amending [1-1] complaint adding Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss (ct, Deputy Clerk) Modified on 11/04/2003 (Entered: 11/03/2003) |
| 10/31/2003 | 77 | SEALED DOCUMENT placed in vault (mh, Deputy Clerk) Modified on 11/04/2003 (Entered: 11/04/2003) |
| 10/31/2003 | 78 | SEALED DOCUMENT placed in vault (mh, Deputy Clerk) (Entered: 11/04/2003) |
| 10/31/2003 | 80 | SEALED DOCUMENT placed in vault (mh, Deputy Clerk) (Entered: |

| | | 11/04/2003) |
|---|---|---|
| 11/18/2003 | 81 | MOTION by United States to extend time to respond to plaintiffs' first amended complaint (mh, Deputy Clerk) (Entered: 11/19/2003) |
| 11/26/2003 | 82 | ORDER granting [81-1] motion to extend time to respond to plaintiffs' first amended complaint ( Signed by Judge Patricia A. Seitz on 11/25/03) [EOD Date: 12/1/03] (ct, Deputy Clerk) (Entered: 12/01/2003) |
| 01/15/2004 | 83 | MOTION with memorandum in support by United States to exceed ten-deposition limit so as to depose each named plaintiff (tb, Deputy Clerk) (Entered: 01/16/2004) |
| 01/26/2004 | 84 | MOTION by All Plaintiffs for protective order that prohibits the United States from deposing a single plaintiff until the Court has resolved the threhold issue of jurisdiction and the United States answers the amended complaint (ct, Deputy Clerk) (Entered: 01/27/2004) |
| 01/26/2004 | 84 | RESPONSE by All Plaintiffs to [83-1] motion to exceed ten-deposition limit so as to depose each named plaintiff (ct, Deputy Clerk) (Entered: 01/27/2004) |
| 01/28/2004 | 85 | ORDER granting in part, denying in part [84-1] motion for protective order that prohibits the United States from deposing a single plaintiff until the Court has resolved the threhold issue of jurisdiction and the United States answers the amended complaint, granting [83-1] motion to exceed ten-deposition limit so as to depose each named plaintiff ( Signed by Judge Patricia A. Seitz on 1/28/04) [EOD Date: 1/29/04] (ct, Deputy Clerk) (Entered: 01/29/2004) |
| 02/02/2004 | 86 | Revised Joint Scheduling Report of Scheduling Meeting by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 02/03/2004) |
| 03/05/2004 | 87 | ORDER setting Rule 16 Conference to determine case management plan and setting schedule as to jurisdictional issues set Rule 16 conference for 11:00 3/15/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. on 3/5/04) [EOD Date: 3/8/04] (ct, Deputy Clerk) (Entered: 03/08/2004) |
| 03/11/2004 | 88 | MOTION by All Plaintiffs (Attorney ) for David W. Stanley to appear pro hac vice (ct, Deputy Clerk) (Entered: 03/12/2004) |
| 03/11/2004 | | Pro Hac Vice Fee Paid; FEE $ 75.0 RECEIPT # 898107 (ct, Deputy Clerk) (Entered: 03/12/2004) |
| 03/16/2004 | 89 | Minutes of status conference held before Judge Patricia A. Seitz on 3/15/04; Court Reporter Name or Tape #: Robin Dispenzieri (ct, Deputy Clerk) (Entered: 03/17/2004) |
| 03/16/2004 | 90 | ORDER from March 15, 2004 Conference See Order for complete details. set evidentiary hearing for 9:30 9/7/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. on 3/16/04) [EOD Date: 3/17/04] (ct, Deputy Clerk) (Entered: 03/17/2004) |
| | | |

| | | |
|---|---|---|
| 03/16/2004 | 91 | ORDER granting [88-1] motion for David W. Stanley to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 3/15/04) [EOD Date: 3/17/04] (ct, Deputy Clerk) (Entered: 03/17/2004) |
| 03/19/2004 | 92 | MOTION with memorandum in support by All Plaintiffs (Attorney ) for class certification (ct, Deputy Clerk) (Entered: 03/22/2004) |
| 03/19/2004 | 93 | AFFIDAVIT of R. Brent Walton by All Plaintiffs Re: [92-1] motion for class certification (ct, Deputy Clerk) (Entered: 03/22/2004) |
| 03/19/2004 | 94 | AFFIDAVIT of Gabor Kadar on the history of the Hungarian Gold Train by All Plaintiffs Re: [92-1] motion for class certification (ct, Deputy Clerk) (Entered: 03/22/2004) |
| 03/24/2004 | 95 | Transcript filed re: Rule 16, Jurisdictional Issues held 03/15/04 before Judge Patricia A. Seitz Pages: 1-89 (vl, Deputy Clerk) (Entered: 03/24/2004) |
| 03/30/2004 | 96 | ORDER on parties stipulation regarding expert report deadlines. See Order for details. ( Signed by Judge Patricia A. Seitz on 3/29/04) [EOD Date: 3/31/04] (ct, Deputy Clerk) (Entered: 03/31/2004) |
| 04/01/2004 | 97 | NOTICE of filing defendant's expert report by United States (ct, Deputy Clerk) (Entered: 04/02/2004) |
| 04/30/2004 | 98 | ORDER on parties' stipulation regarding extension of briefing schedule. See Order for complete details. ( Signed by Judge Patricia A. Seitz on 4/30/04) [EOD Date: 5/3/04] (ct, Deputy Clerk) (Entered: 05/03/2004) |
| 05/04/2004 | 99 | JOINT MOTION by All Plaintiffs, United States to extend time to select mediator (ct, Deputy Clerk) (Entered: 05/05/2004) |
| 05/06/2004 | 100 | STATUS REPORT regarding selection of a mediator by United States (ct, Deputy Clerk) (Entered: 05/07/2004) |
| 05/06/2004 | 101 | MOTION by All Plaintiffs (Attorney ) to appoint Fred D. Fielding as Mediator (ct, Deputy Clerk) (Entered: 05/07/2004) |
| 05/06/2004 | 102 | ORDER granting [99-1] joint motion to extend time to select mediator ( Signed by Judge Patricia A. Seitz on 5/5/04) [EOD Date: 5/7/04] (ct, Deputy Clerk) (Entered: 05/07/2004) |
| 05/07/2004 | 103 | RESPONSE by United States to [101-1] motion to appoint Fred D. Fielding as Mediator (ct, Deputy Clerk) (Entered: 05/10/2004) |
| 05/10/2004 | 104 | REPLY by All Plaintiffs to response to [101-1] motion to appoint Fred D. Fielding as Mediator (ct, Deputy Clerk) (Entered: 05/11/2004) |
| 05/11/2004 | 105 | NOTICE of filing declaration of Stephen Gillers by All Plaintiffs (ct, Deputy Clerk) (Entered: 05/12/2004) |
| 05/12/2004 | 106 | ORDER denying [101-1] motion to appoint Fred D. Fielding as Mediator ( Signed by Judge Patricia A. Seitz on 5/12/04) [EOD Date: 5/13/04] (ct, Deputy Clerk) (Entered: 05/13/2004) |
| | | |

| 05/26/2004 | 107 | JOINT STATUS REPORT regarding mediation selection by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 05/27/2004) |
| 06/07/2004 | 108 | JOINT STATUS REPORT regarding mediator selection by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss (ct, Deputy Clerk) (Entered: 06/08/2004) |
| 06/08/2004 | 109 | Joint STATUS REPORT on mediation selection by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss (ct, Deputy Clerk) (Entered: 06/09/2004) |
| 06/09/2004 | 110 | NOTICE of selection of Fred F. Fielding as Mediator by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss (ct, Deputy Clerk) (Entered: 06/10/2004) |
| 06/09/2004 | 110 | JOINT MOTION by All Plaintiffs, United States to extend mediation completion date (ct, Deputy Clerk) (Entered: 06/10/2004) |
| 06/10/2004 | 111 | MOTION by United States (Attorney ) to extend time to respond to first amended complaint (ct, Deputy Clerk) (Entered: 06/14/2004) |
| 06/10/2004 |  | Motion hearing re: [111-1] motion to extend time to respond to first amended complaint (ct, Deputy Clerk) (Entered: 06/15/2004) |
| 06/14/2004 | 112 | Minutes of motion hearing held before Judge Patricia A. Seitz on 6/10/04; (ct, Deputy Clerk) (Entered: 06/15/2004) |
| 06/15/2004 | 113 | ORDER granting [110-1] joint motion to extend mediation completion date ( Signed by Judge Patricia A. Seitz on 6/15/04) [EOD Date: 6/16/04] (ct, Deputy Clerk) (Entered: 06/16/2004) |
| 06/15/2004 | 115 | NOTICE of filing rebuttal expert reports by United States (ct, Deputy |

| | | Clerk) (Entered: 06/16/2004) |
|---|---|---|
| 06/16/2004 | 114 | JOINT NOTICE of submission of proposed order by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss, Fred F. Fielding (ct, Deputy Clerk) (Entered: 06/16/2004) |
| 06/21/2004 | 116 | ORDER from June 10, 2004 Status Conferncen. See Order for complete details. set status conference for 9:30 9/7/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. Seitz on 6/18/04) [EOD Date: 6/22/04] (ct, Deputy Clerk) (Entered: 06/22/2004) |
| 06/23/2004 | 117 | UNOPPOSED MOTION by United States (Attorney ) for enlargement of page limit (ct, Deputy Clerk) (Entered: 06/23/2004) |
| 06/25/2004 | 118 | ORDER granting [117-1] motion for enlargement of page limit ( Signed by Judge Patricia A. Seitz on 6/25/04) [EOD Date: 6/28/04] (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 119 | MOTION by United States (Attorney ) to dismiss 1st amended complaint (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 120 | NOTICE of filing declaration of Istvan Deak, Ph.D by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 121 | Declaration of Istvan Deak by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 122 | NOTICE of filing supplemental expert report and affidavit by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 123 | Supplemental expert report and AFFIDAVIT of Jonathan Petropoulos by All Plaintiffs Re: (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 124 | NOTICE of filing declaration by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 06/25/2004 | 125 | Declaration of Francis A. Gabor by All Plaintiffs (ct, Deputy Clerk) (Entered: 06/28/2004) |
| 07/01/2004 | 126 | MOTION by Irving Rosner, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Edith Reiner, Laslo Sokoly, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. |

| | | Stern, Agnes Vadasz, Zoltan S. Weiss (Attorney ) for Michael A. Waldman to appear pro hac vice (ct, Deputy Clerk) (Entered: 07/02/2004) |
|---|---|---|
| 07/01/2004 | | Pro Hac Vice Fee Paid; FEE $ 75.00 RECEIPT # 903838 (ct, Deputy Clerk) (Entered: 07/02/2004) |
| 07/02/2004 | 127 | ORDER granting [126-1] motion for Michael A. Waldman to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 7/1/04) [EOD Date: 7/6/04] (ct, Deputy Clerk) (Entered: 07/06/2004) |
| 07/02/2004 | 128 | MOTION by United States (Attorney ) to stay decision of class certification (ct, Deputy Clerk) (Entered: 07/06/2004) |
| 07/02/2004 | 128 | MEMORANDUM by United States in opposition to [92-1] motion for class certification (ct, Deputy Clerk) (Entered: 07/06/2004) |
| 07/06/2004 | 129 | NOTICE of filing original materials by United States (ct, Deputy Clerk) (Entered: 07/07/2004) |
| 07/21/2004 | 130 | ORDER on plaintiffs' unopposed motion to amend briefing schedule. See Order for details. ( Signed by Judge Patricia A. Seitz on 7/21/04) [EOD Date: 7/22/04] (ct, Deputy Clerk) (Entered: 07/22/2004) |
| 07/30/2004 | 131 | MOTION by All Plaintiffs (Attorney Samuel Johnathan Dubbin) to amend briefing schedule (ct, Deputy Clerk) (Entered: 08/02/2004) |
| 07/30/2004 | 132 | ORDER granting [131-1] motion to amend briefing schedule ( Signed by Judge Patricia A. Seitz on 7/30/04) [EOD Date: 8/2/04] (ct, Deputy Clerk) (Entered: 08/02/2004) |
| 08/03/2004 | 133 | SEALED DOCUMENT with attachment pages 4-52 (not complete document) placed in vault (ct, Deputy Clerk) (Entered: 08/04/2004) |
| 08/03/2004 | 134 | MOTION by All Plaintiffs (Attorney ) for leave to file exhibits after 10:00 am (ct, Deputy Clerk) (Entered: 08/04/2004) |
| 08/03/2004 | 135 | MEMORANDUM by All Plaintiffs in opposition to [119-1] motion to dismiss 1st amended complaint (ct, Deputy Clerk) (Entered: 08/04/2004) |
| 08/05/2004 | 136 | ORDER granting [134-1] motion for leave to file exhibits after 10:00 am ( Signed by Judge Patricia A. Seitz on 8/5/04) [EOD Date: 8/6/04] (ct, Deputy Clerk) (Entered: 08/06/2004) |
| 08/05/2004 | 137 | ORDER resetting evidentiary hearing on defendant's motion to dismiss reset evidentiary hearing for 9:30 10/12/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. on 8/5/04) [EOD Date: 8/6/04] (ct, Deputy Clerk) (Entered: 08/06/2004) |
| 08/05/2004 | 138 | Declaration of R. Brent Walton by All Plaintiffs Re: [135-1] opposition memorandum (ct, Deputy Clerk) (Entered: 08/06/2004) |
| 08/11/2004 | 139 | UNOPPOSED MOTION by All Plaintiffs (Attorney ) to amend breifing schedule (ct, Deputy Clerk) (Entered: 08/12/2004) |
| | | |

| 08/12/2004 | 140 | ORDER granting [139-1] motion to amend breifing schedule ( Signed by Judge Patricia A. Seitz on 8/12/04) [EOD Date: 8/13/04] (ct, Deputy Clerk) (Entered: 08/13/2004) |
| 08/26/2004 | 141 | MOTION by United States to reschedule 10/12-14/04 evidentiary hearing (Former Deputy Clerk) (Entered: 08/27/2004) |
| 08/27/2004 | 142 | MOTION by United States for enlargement of page limit for its reply memorandum in support of its motion to dismiss the first amended complaint (bs, Deputy Clerk) (Entered: 08/27/2004) |
| 08/27/2004 | 143 | ORDER reset status conference for 9:00 10/7/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. Seitz on 8/27/04) [EOD Date: 8/30/04] (ct, Deputy Clerk) (Entered: 08/30/2004) |
| 08/27/2004 | 144 | MOTION by All Plaintiffs (Attorney ) for leave to exceed page limit for reply memorandum on class certification (ct, Deputy Clerk) (Entered: 08/30/2004) |
| 08/27/2004 | 145 | Agreement to stay decision of class certification and REPLY by All Plaintiffs to response to [92-1] motion for class certification (ct, Deputy Clerk) (Entered: 08/30/2004) |
| 08/31/2004 | 146 | UNOPPOSED MOTION by United States (Attorney ) for leave to file exhibits to reply in support of its motion to dismiss on 9/2/04 (ct, Deputy Clerk) (Entered: 09/01/2004) |
| 08/31/2004 | 147 | REPLY by United States to response to [119-1] motion to dismiss 1st amended complaint (ct, Deputy Clerk) (Entered: 09/01/2004) |
| 09/01/2004 | 148 | ORDER clarifying time and date of status conference set status conference for 8:30 9/7/04 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. Seitz on 9/1/04) [EOD Date: 9/2/04] (ct, Deputy Clerk) (Entered: 09/02/2004) |
| 09/02/2004 | 149 | ORDER granting [146-1] motion for leave to file exhibits to reply in support of its motion to dismiss on 9/2/04 ( Signed by Judge Patricia A. Seitz on 9/1/04) [EOD Date: 9/7/04] (ct, Deputy Clerk) (Entered: 09/07/2004) |
| 09/07/2004 | 150 | Index of EXHIBITS to: [147-1] response reply by United States (ct, Deputy Clerk) (Entered: 09/08/2004) |
| 09/08/2004 | 151 | NOTICE OF WITHDRAWAL by United States of [141-1] motion to reschedule 10/12-14/04 evidentiary hearing (ct, Deputy Clerk) (Entered: 09/09/2004) |
| 09/17/2004 | 152 | NOTICE OF FILING SUPPLEMENTAL AUTHORITY by United States re: [119-1] motion to dismiss 1st amended complaint (ct, Deputy Clerk) (Entered: 09/20/2004) |
| 09/17/2004 | 153 | NOTICE OF FILING SUPPLEMENTAL AUTHORITY by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/20/2004) |
| 09/23/2004 | 154 | RESPONSE by United States to [153-1] notice of supplemental authority |

| | | (ct, Deputy Clerk) (Entered: 09/23/2004) |
|---|---|---|
| 09/29/2004 | 155 | REPLY by All Plaintiffs to [154-1] response by United States to [153-1] notice of supplemental authority (ct, Deputy Clerk) (Entered: 09/30/2004) |
| 10/05/2004 | 156 | Notice re: hearing Motion hearing before Judge Patricia A. Seitz set for 10:00 10/13/04 for [119-1] motion to dismiss 1st complaint ( Signed by Judge Patricia A. Seitz on 10/5/04) [EOD Date: 10/6/04] (ct, Deputy Clerk) (Entered: 10/06/2004) |
| 10/11/2004 | 157 | NOTICE of filing original article and certified translation by United States (ct, Deputy Clerk) (Entered: 10/12/2004) |
| 10/12/2004 | 158 | JOINT MOTION by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss, Fred F. Fielding to postpone hearing set for 10/13/04 (ct, Deputy Clerk) (Entered: 10/13/2004) |
| 10/14/2004 | 159 | ORDER granting [158-1] joint motion to postpone hearing set for 10/13/04 Motion hearing before Judge Patricia A. Seitz set for 2:00 10/20/04 for [119-1] motion to dismiss 1st amended complaint ( Signed by Judge Patricia A. Seitz on 10/14/04) [EOD Date: 10/15/04] (ct, Deputy Clerk) (Entered: 10/15/2004) |
| 10/18/2004 | 160 | JOINT MOTION by Irving Rosner, Ana Irving, Andrew Tibor, Irene Tibor, Irene Mermelstein, Ethel Klein, Mark Klein, Regina Baskin, Edith Reiner, Leopold Fettman, Marla Simon, Laslo Sokoly, All Plaintiffs, United States, David Mermelstein, Edith Klein Amster, Francisc Basch, Verokina Baum, Alice Bessenyey, Elizabeth Bleier, Erwin Deutsch, Joseph A. Devrnyi, Peter Drexler, Barach Epstein, Magda Feig, Michael Fried, Paul Gottlieb, Judith Karmi, Tamas May, Edith More, John J. Rakos, George Rasko, Ana Rosner, George Sebok, Agnes V. Somjen, Olga Steiner, Jonas K. Stern, Agnes Vadasz, Zoltan S. Weiss, Fred F. Fielding to continue hearing of 10/20/04 (ct, Deputy Clerk) (Entered: 10/19/2004) |
| 10/18/2004 | 161 | MOTION (Attorney ) to intervene by Assoc. of Former Hun (ct, Deputy Clerk) (Entered: 10/19/2004) |
| 10/18/2004 | 162 | MOTION by Assoc. of Former Hun (Attorney ) for Jean M. Geoppinger to appear pro hac vice (ct, Deputy Clerk) (Entered: 10/19/2004) |
| 10/19/2004 | 163 | ORDER granting [160-1] joint motion to continue hearing of 10/20/04 ( Signed by Judge Ursula Ungaro-Benages for Judge Patricia A. Seitz on 10/19/04) [EOD Date: 10/20/04] (ct, Deputy Clerk) (Entered: |

| | | 10/20/2004) |
|---|---|---|
| 10/21/2004 | 164 | ORDER granting [142-1] motion for enlargement of page limit for its reply memorandum in support of its motion to dismiss the first amended complaint, granting [144-1] motion for leave to exceed page limit for reply memorandum on class certification, granting [128-1] motion to stay decision of class certification ( Signed by Judge Patricia A. Seitz on 10/20/04) [EOD Date: 10/22/04] (ct, Deputy Clerk) (Entered: 10/22/2004) |
| 11/03/2004 | 165 | AGREED MOTION by All Plaintiffs, United States (Attorney ) to extend time to respond to motion to intervene (ct, Deputy Clerk) (Entered: 11/04/2004) |
| 11/04/2004 | 166 | ORDER granting [165-1] motion to extend time to respond to motion to intervene Response to motion reset to 11/19/04 for [161-1] motion to intervene by Assoc. of Former Hun ( Signed by Judge Patricia A. Seitz on 11/4/04) [EOD Date: 11/5/04] (dg, Deputy Clerk) (Entered: 11/05/2004) |
| 11/17/2004 | 167 | SECOND AGREED MOTION by All Plaintiffs, United States (Attorney ) to extend time to respond to motion to intervene (ct, Deputy Clerk) (Entered: 11/18/2004) |
| 11/18/2004 | 168 | ORDER granting [167-1] motion to extend time to respond to motion to intervene ( Signed by Judge Patricia A. Seitz on 11/18/04) [EOD Date: 11/19/04] (ct, Deputy Clerk) (Entered: 11/19/2004) |
| 12/03/2004 | 169 | AGREED MOTION by All Plaintiffs, United States (Attorney ) to extend time to respond to motion to intervene (ct, Deputy Clerk) (Entered: 12/07/2004) |
| 12/16/2004 | 170 | ORDER denying [161-1] motion to intervene by Assoc. of Former Hun denying [162-1] motion for Jean M. Geoppinger to appear pro hac vice ( Signed by Judge Patricia A. Seitz on 12/15/04) [EOD Date: 12/17/04] (ct, Deputy Clerk) (Entered: 12/17/2004) |
| 12/17/2004 | 171 | MEMORANDUM by All Plaintiffs in opposition to notice of intention to argue treaty defense (ct, Deputy Clerk) (Entered: 12/20/2004) |
| 12/17/2004 | 172 | NOTICE OF FILING SUPPLEMENTAL AUTHORITY by All Plaintiffs (ct, Deputy Clerk) (Entered: 12/20/2004) |
| 12/20/2004 | 173 | Transcript filed re: Proposed Settlement held 12/20/04 before Judge Patricia A. Seitz, J. Volume #: I Pages: 1-17 (vl, Deputy Clerk) (Entered: 12/21/2004) |
| 12/20/2004 | 174 | Minutes of motion hearing held before Judge Patricia A. Seitz on 12/20/04; Court Reporter Name or Tape #: David Ehrlich (ct, Deputy Clerk) (Entered: 12/21/2004) |
| 12/20/2004 | | Motion hearing re: [16-1] motion to dismiss complaint (ct, Deputy Clerk) (Entered: 12/21/2004) |
| | | |

| 12/20/2004 | 175 | ORDER on December 20, 2004 hearing; denying [92-1] motion for class certification set settlement hearing for 3:00 2/25/05 before Judge Patricia Seitz ( Signed by Judge Patricia A. Seitz on 12/20/04) Date: 12/21/04] (ct, Deputy Clerk) Modified on 12/21/2004 (Entered: 12/21/2004) |
|---|---|---|
| 01/07/2005 | 176 | NOTICE of Change of Address of attorney by All Plaintiffs (ct, Deputy Clerk) (Entered: 01/10/2005) |
| 01/14/2005 | 177 | JOINT MOTION by All Plaintiffs, United States for appointment of mediator nunc pro tunc (mh, Deputy Clerk) (Entered: 01/18/2005) |
| 01/14/2005 | 178 | CONFIDENTIALITY ORDER granting [177-1] joint motion for appointment of mediator nunc pro tunc (Signed by Judge Patricia A. Seitz on 1/14/05) [EOD Date: 1/18/05] (mh, Deputy Clerk) (Entered: 01/18/2005) |
| 02/17/2005 | 179 | AGREED MOTION by All Plaintiffs, United States (Attorney ) to extend time to file setteement agreement (ct, Deputy Clerk) (Entered: 02/18/2005) |
| 02/22/2005 | 180 | ORDER granting [179-1] motion to extend time to file setteement agreement reset settlement conference for 8:30 3/17/05 before Judge Patricia A. Seitz ( Signed by Judge Patricia A. Seitz on 2/22/05) [EOD Date: 2/23/05] (ct, Deputy Clerk) (Entered: 02/23/2005) |
| 03/04/2005 | 181 | MOTION by All Plaintiffs to extend date to file settlement agreement and related motions (hd, Deputy Clerk) (Entered: 03/07/2005) |
| 03/08/2005 | 182 | ORDER that at the settlement hearing, the parties should be prepared to address where, and to whom, the Court can refer inquiries and letters. ( Signed by Judge Patricia A. Seitz on 3/8/05) [EOD Date: 3/9/05] (ct, Deputy Clerk) (Entered: 03/09/2005) |
| 03/09/2005 | 183 | ORDER granting [181-1] motion to extend date to file settlement agreement and related motions ( Signed by Judge Patricia A. Seitz on 3/9/05) [EOD Date: 3/10/05] (ct, Deputy Clerk) (Entered: 03/10/2005) |
| 03/10/2005 | 184 | AGREED MOTION with memorandum in support by All Plaintiffs (Attorney ) for leave to file amendment to first amended complaint and other relief (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 03/10/2005 | 185 | MOTION by All Plaintiffs (Attorney ) for an order preliminarily approving settlement (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 03/10/2005 | 186 | MOTION by All Plaintiffs (Attorney ) for an order conditionally certifying settlement class; approving the notice plan; directing notice to the class; entering certain orders with respect to the plan of distribution; and scheduling a final approval hearing (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 03/10/2005 | 187 | MEMORANDUM by All Plaintiffs in support of [186-1] motion for an order conditionally certifying settlement class; approving the notice plan; directing notice to the class; entering certain orders with respect to the plan of distribution; and scheduling a final approval hearing, [185-1] |

| | | motion for an order preliminarily approving settlement (ct, Deputy Clerk) (Entered: 03/11/2005) |
|---|---|---|
| 03/10/2005 | [188](#) | NOTICE of filing praecipe by All Plaintiffs (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 03/10/2005 | [189](#) | NOTICE of filing settlement agreement and exhibits by All Plaintiffs (ct, Deputy Clerk) (Entered: 03/11/2005) |
| 03/11/2005 | [191](#) | RESPONSE by United States to [185-1] motion for an order preliminarily approving settlement (ct, Deputy Clerk) (Entered: 03/14/2005) |
| 03/15/2005 | [192](#) | Notice regarding hearing. See Notice for details. ( Signed by Judge Patricia A. Seitz on 3/15/05) [EOD Date: 3/16/05] (ct, Deputy Clerk) (Entered: 03/16/2005) |
| 03/15/2005 | [193](#) | ORDER denying as moot [169-1] motion to extend time to respond to motion to intervene ( Signed by Judge Patricia A. Seitz on 3/15/05) [EOD Date: 3/16/05] (ct, Deputy Clerk) (Entered: 03/16/2005) |
| 03/16/2005 | [194](#) | Notice of filing declaration of Georg Moshe Schwarz by All Plaintiffs Re: [189-1] settlement agreement (ct, Deputy Clerk) (Entered: 03/17/2005) |
| 03/22/2005 | [195](#) | Transcript filed re: Hearing on Settlement held 03/17/05 before Judge Patricia A. Seitz, J. Volume #: I Pages: 1-143 (vl, Deputy Clerk) (Entered: 03/23/2005) |
| 03/28/2005 | [196](#) | ORDER denying as moot [119-1] motion to dismiss 1st amended complaint ( Signed by Judge Patricia A. Seitz on 3/28/05) [EOD Date: 3/29/05] (ct, Deputy Clerk) (Entered: 03/29/2005) |
| 03/29/2005 | [197](#) | NOTICE of filing statements supporting settlement by All Plaintiffs (ct, Deputy Clerk) (Entered: 03/30/2005) |
| 03/29/2005 | [198](#) | JOINT MOTION by All Plaintiffs, United States for approval of amended notices submitted on March 24, 2005 (ct, Deputy Clerk) (Entered: 03/30/2005) |
| 03/31/2005 | [199](#) | ORDER granting [198-1] joint motion for approval of amended notices submitted on March 24, 2005 ( Signed by Judge Patricia A. Seitz on 3/31/05) [EOD Date: 4/1/05] (ct, Deputy Clerk) (Entered: 04/01/2005) |
| 04/01/2005 | [200](#) | ORDER of Magistrate Judge reassignment ( Signed by Magistrate Ted E. Bandstra on 4/01/05) [EOD Date: 4/4/05] (ct, Deputy Clerk) (Entered: 04/04/2005) |
| 04/01/2005 | | Magistrate identification: Magistrate Judge Chris M. McAliley (ct, Deputy Clerk) (Entered: 04/04/2005) |
| 04/07/2005 | [201](#) | JOINT NOTICE of filing by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 04/08/2005) |
| 04/07/2005 | [202](#) | NOTICE of filing by All Plaintiffs (ct, Deputy Clerk) (Entered: |

| | | 04/08/2005) |
|---|---|---|
| 04/07/2005 | 203 | NOTICE of filing attached letter by United States (ct, Deputy Clerk) (Entered: 04/08/2005) |
| 04/08/2005 | 204 | ORDER granting [186-1] motion for an order conditionally certifying settlement class; approving the notice plan; directing notice to the class; entering certain orders with respect to the plan of distribution; and scheduling a final approval hearing, granting [185-1] motion for an order preliminarily approving settlement, granting [184-1] motion for leave to file amendment to first amended complaint and other relief ( Signed by Judge Patricia A. Seitz on 4/8/05) [EOD Date: 4/11/05] (ct, Deputy Clerk) (Entered: 04/11/2005) |
| 04/14/2005 | 205 | NOTICE of filing statements regarding settlement by All Plaintiffs (ct, Deputy Clerk) (Entered: 04/15/2005) |
| 04/20/2005 | 206 | NOTICE of filing notices by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 04/21/2005) |
| 04/20/2005 | 207 | ORDER re: notice of filing notices. See Order for complete details. ( Signed by Judge Patricia A. Seitz on 4/20/05) [EOD Date: 4/21/05] (ct, Deputy Clerk) (Entered: 04/21/2005) |
| 04/29/2005 | 208 | NOTICE of filing settlement agreement by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 05/02/2005) |
| 04/29/2005 | 209 | Settlement agreement by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 05/02/2005) |
| 05/05/2005 | 210 | NOTICE of proposed changes to FAQs by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 05/06/2005) |
| 06/10/2005 | 211 | NOTICE of filing proposed detail plan of allocation by Conference on Jewish (ct, Deputy Clerk) (Entered: 06/13/2005) |
| 06/17/2005 | 212 | MOTION with memorandum in support by All Plaintiffs (Attorney ) for attorney fees and expenses , and for modest incentive payments to plaintiffs (ct, Deputy Clerk) (Entered: 06/20/2005) |
| 06/17/2005 | 213 | Declaration of Samuel J. Dubbin by All Plaintiffs Re: [212-1] motion for attorney fees and expenses, [212-2] motion for modest incentive payments to plaintiffs (ct, Deputy Clerk) (Entered: 06/20/2005) |
| 06/17/2005 | 214 | Declaration of Jonathan W. Cuneo by All Plaintiffs Re: [212-1] motion for attorney fees and expenses, [212-2] motion for modest incentive payments to plaintiffs (ct, Deputy Clerk) (Entered: 06/20/2005) |
| 06/17/2005 | 215 | Declaration of Jonathan W. Ceneo filed on behalf of Cuneo Waldman Gilbert & LaDuca, LLP by All Plaintiffs Re: [212-1] motion for attorney fees and expenses, [212-2] motion for modest incentive payments to plaintiffs (ct, Deputy Clerk) (Entered: 06/20/2005) |
| 06/17/2005 | 216 | Declaration of R. Brent Walton by All Plaintiffs Re: [212-1] motion for attorney fees and expenses, [212-2] motion for modest incentive |

| | | payments to plaintiffs (ct, Deputy Clerk) (Entered: 06/20/2005) |
|---|---|---|
| 07/26/2005 | 217 | MOTION by Hungarian Objectors (Attorney ) for Burt Neuborne to appear pro hac vice . No fee received. (ct, Deputy Clerk) (Entered: 07/27/2005) |
| 08/08/2005 | 218 | MOTION by All Plaintiffs (Attorney ) to premit class counsel to contact limited number of punative class members to ascertain their intention regarding exclusion from the proposed settlement (ct, Deputy Clerk) (Entered: 08/09/2005) |
| 08/08/2005 | 219 | ORDER granting [218-1] motion to premit class counsel to contact limited number of punative class members to ascertain their intention regarding exclusion from the proposed settlement ( Signed by Judge Patricia A. Seitz on 8/8/05) [EOD Date: 8/9/05] (ct, Deputy Clerk) (Entered: 08/09/2005) |
| 09/01/2005 | 220 | SEALED DOCUMENT placed in vault (wc, Deputy Clerk) (Entered: 09/02/2005) |
| 09/01/2005 | 221 | SEALED DOCUMENT placed in vault (wc, Deputy Clerk) (Entered: 09/02/2005) |
| 09/07/2005 | 222 | JOINT MOTION by All Plaintiffs, United States to extend time for defendant to exercise rights under section xi of settlement agreement (ct, Deputy Clerk) (Entered: 09/08/2005) |
| 09/07/2005 | 223 | JOINT MOTION by All Plaintiffs, United States for order addressing certain correspondence received by notice provider and memorandum of law (ct, Deputy Clerk) (Entered: 09/08/2005) |
| 09/09/2005 | 224 | NOTICE of filing original signature of defendant to joint motion for extension by All Plaintiffs, United States (ct, Deputy Clerk) (Entered: 09/12/2005) |
| 09/09/2005 | 225 | ORDER granting [222-1] joint motion to extend time for defendant to exercise rights under section xi of settlement agreement ( Signed by Judge Patricia A. Seitz on 9/9/05) [EOD Date: 9/12/05] (ct, Deputy Clerk) (Entered: 09/12/2005) |
| 09/12/2005 | 226 | ORDER granting [223-1] joint motion for order addressing certain correspondence received by notice provider ( Signed by Judge Patricia A. Seitz on 9/9/05) [EOD Date: 9/13/05] (ct, Deputy Clerk) (Entered: 09/13/2005) |
| 09/15/2005 | 227 | Notice of filing/Declaration of Gideon Taylor by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/16/2005) |
| 09/15/2005 | 228 | MOTION with memorandum in support by All Plaintiffs (Attorney ) for final approval of the class action settlement (ct, Deputy Clerk) (Entered: 09/16/2005) |
| 09/15/2005 | 229 | Declaration of Samuel J. Dubbin by All Plaintiffs Re: [228-1] motion for final approval of the class action settlement (ct, Deputy Clerk) (Entered: |

| | | 09/16/2005) |
|---|---|---|
| 09/16/2005 | 230 | NOTICE of filig the notice of submission of comments and objectiosn to and request to be excluded from the proposed settlement by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/19/2005) |
| 09/16/2005 | 231 | NOTICE of submission of comments and objections to and requests to be excluded from the proposed settlement by Conference on Jewish (ct, Deputy Clerk) (Entered: 09/19/2005) |
| 09/16/2005 | 232 | ORDER regarding 9/26/06 Final Fairness Hearing. See Order for complete details. ( Signed by Judge Patricia A. Seitz on 9/16/05) [EOD Date: 9/19/05] (ct, Deputy Clerk) (Entered: 09/19/2005) |
| 09/22/2005 | 233 | JOINT MOTION by All Plaintiffs, United States to extend time to file papers in response to Court's Order regarding 9/26/05 Fairness hearing (wc, Deputy Clerk) (Entered: 09/23/2005) |
| 09/22/2005 | 234 | Supplemental declaration of Samuel J. Dubbin by All Plaintiffs Re: [228-1] motion for final approval of the class action settlement (hd, Deputy Clerk) (Entered: 09/23/2005) |
| 09/22/2005 | 235 | Statement with respect to Court's jurisdiction to enter final judgment and to issue order approving settlement by All Plaintiffs re: [228-1] motion for final approval of the class action settlement (hd, Deputy Clerk) (Entered: 09/23/2005) |
| 09/23/2005 | 236 | NOTICE of filing declaration of David Stanley by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/26/2005) |
| 09/23/2005 | 237 | NOTICE of filing submission of claims conference comments on items to be considered at the final fairness hearing by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/26/2005) |
| 09/23/2005 | 238 | NOTICE of letter to Judge Seitz by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/26/2005) |
| 09/23/2005 | 239 | NOTICE of application of Georg Moshe Schwartz by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/26/2005) |
| 09/23/2005 | 240 | NOTICE of filing original letter form David Stanely by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/26/2005) |
| 09/26/2005 | 241 | NOTICE of filing report by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/27/2005) |
| 09/26/2005 | 242 | Report of the implementation of the Hungarian Gold Train Settlement notice plan by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/27/2005) |
| 09/26/2005 | 243 | EXHIBITS to: [242-1] report by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/27/2005) |
| 09/26/2005 | 244 | SUPPLEMENT to exhibit 1 by All Plaintiffs to: [243-1] exhibits (ct, Deputy Clerk) (Entered: 09/27/2005) |

| 09/29/2005 | | CASE CLOSED. Case and Motions no longer referred to Magistrate. (ct, Deputy Clerk) (Entered: 09/30/2005) |
|---|---|---|
| 09/29/2005 | 245 | NOTICE of filing supplemental declaration of Jonathan Petropoulos by All Plaintiffs (ct, Deputy Clerk) (Entered: 09/30/2005) |
| 09/30/2005 | 246 | FINAL ORDER and Judgment; granting [228-1] motion for final approval of the class action settlement granting [212-1] motion for fees and expenses. This case is closed for administrative purposes. ( Signed by Judge Patricia A. Seitz on 9/30/05) [EOD Date: 10/3/05] (ct, Deputy Clerk) Modified on 10/03/2005 (Entered: 10/03/2005) |
| 10/14/2005 | 247 | Transcript filed re: Fairness Hearing held 9/26/05 before Judge Patricia A. Seitz Volume #: I Pages: 1-167 (vl, Deputy Clerk) (Entered: 10/14/2005) |
| 10/14/2005 | 248 | LETTER from Mediator (bs, Deputy Clerk) (Entered: 10/17/2005) |
| 10/14/2005 | 249 | NOTICE of filing letter from Congressman Robert Wexler (bs, Deputy Clerk) (Entered: 10/17/2005) |
| 10/17/2005 | 250 | NOTICE of letter to mediator from the Court. (ct, Deputy Clerk) (Entered: 10/18/2005) |
| 12/21/2005 | 251 | JOINT MOTION by All Plaintiffs, United States for settlement inplementation (ct, Deputy Clerk) (Entered: 12/22/2005) |
| 12/22/2005 | 252 | ORDER granting [251-1] joint motion for settlement inplementation ( Signed by Judge Patricia A. Seitz on 12/22/05) [EOD Date: 12/27/05] (ct, Deputy Clerk) (Entered: 12/27/2005) |
| 01/17/2006 | 253 | Notice of filing SUPPLEMENT by All Plaintiffs to: [209-1] settlement agreement (sk, Deputy Clerk) (Entered: 01/18/2006) |
| 04/04/2006 | 254 | JOINT MOTION by All Plaintiffs, United States for an order for disbursement of funds in accordance of the settlement agreement (ct, Deputy Clerk) (Entered: 04/05/2006) |
| 04/06/2006 | 255 | ORDER granting [254-1] joint motion for an order for disbursement of funds in accordance of the settlement agreement ( Signed by Judge Patricia A. Seitz on 4/6/06) [EOD Date: 4/7/06] (ct, Deputy Clerk) (Entered: 04/07/2006) |
| 12/12/2006 | 256 | Letter to Judge Patricia Seitz re Social Security Benefits from Albert Rosenfeld (ls) (Entered: 12/14/2006) |
| 12/20/2006 | 257 | MOTION for Disbursement of Funds *Class Counsel's Status Report and Motion for Order Authorizing Disbursement From Special Fund for Social Services Funding and Administrative Expenses for Calendar Year 2007* by All Plaintiffs. (Dubbin, Samuel) (Entered: 12/20/2006) |
| 12/28/2006 | 258 | STATUS REPORT *Letter to Judge Seitz re Albert Rosenfeld* by All Plaintiffs. (Dubbin, Samuel) (Entered: 12/28/2006) |
| 01/04/2007 | 259 | ORDER Authorizing Disbursement from Special Fund for Social |

| | | Services Funding and Administrative Expenses for Calendar Year 2007 . Signed by Judge Patricia A. Seitz on 1/4/07. (lc2) (Entered: 01/04/2007) |
|---|---|---|
| 03/05/2007 | 260 | NOTICE by All Plaintiffs *Notice of Filing Claims Conference Report for 2006 and Amendments for 2007* (Dubbin, Samuel) (Entered: 03/05/2007) |
| 03/12/2007 | 261 | ORDER AMENDING DETAILED PLAN OF DISTRIBUTION FOR 2007. Signed by Judge Patricia A. Seitz on 3/12/07 (lc2) (Entered: 03/12/2007) |
| 03/15/2007 | | Notice of Undeliverable Mail re259 Order on Motion for Disbursement of Funds, 256 Letter US Mail returned for: forward time expired Email returned for: david stanley (ww) (Entered: 03/15/2007) |
| 03/19/2007 | 262 | ORDER REQURING THE FILING OF AMENDED DETALED PALN OF DISTRIBUTION FOR 2007: The class counsel shall file a copy of the amended detailed plan of allocation for the Special fund by 4/6/07. Signed by Judge Patricia A. Seitz on 3/19/07.(pa) (Entered: 03/19/2007) |
| 04/05/2007 | 263 | NOTICE by All Plaintiffs *Notice of Filing and Amended Detailed Plan of Allocation* (Dubbin, Samuel) (Entered: 04/05/2007) |
| 06/29/2007 | 264 | STATUS REPORT *Notice of Filing* by All Plaintiffs. (Dubbin, Samuel) (Entered: 06/29/2007) |
| 06/29/2007 | 265 | STATUS REPORT *Programmatic Report for 2006 Spending from Gold Train Settlement Special Fund* by All Plaintiffs. (Dubbin, Samuel) (Entered: 06/29/2007) |
| 12/28/2007 | 266 | NOTICE by All Plaintiffs *Class Counsel Status Report and Motion for Order Amending Detailed Plan of Allocation and Authorizing Disbursement for 2008 Programs* (Dubbin, Samuel) (Entered: 12/28/2007) |
| 01/23/2008 | 267 | ORDER AMENDING DETAILED PLAN OF ALLOCATION AND AUTHORIZING DISBURSEMENT FROM SPECIAL FUND FOR SOCIAL SERVICES FUNDING AND ADMINISTRATIVE EXPENSES FOR CALENDAR YEAR 2008 re 266 Notice (Other) Signed by Judge Patricia A. Seitz on 1/22/08.(lh) (Entered: 01/23/2008) |
| 02/15/2008 | 268 | NOTICE by All Plaintiffs *Notice of Filing Amended Detailed Plan of Allocation for 2008* (Dubbin, Samuel) (Entered: 02/15/2008) |
| 02/15/2008 | 269 | NOTICE by All Plaintiffs *Amended Detailed Plan of Allocation for 2008* (Dubbin, Samuel) (Entered: 02/15/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/17/2008 11:54:50 | | |
| **PACER Login:** cg0189 | **Client Code:** | 6667 |

| Description: | Docket Report | Search Criteria: | 1:01-cv-01859-PAS |
|---|---|---|---|
| Billable Pages: | 20 | Cost: | 1.60 |

# EXHIBIT E

LAW OFFICES

# STEIN, MITCHELL & MEZINES
### L.L.P.
1100 CONNECTICUT AVENUE, NORTHWEST
WASHINGTON, D. C. 20036

GLENN A. MITCHELL
JACOB A. STEIN
GERARD E. MITCHELL
ROBERT P. MUSE
DAVID U. FIERST
RICHARD A. BUSSEY
PATRICK A. MALONE
ROBERT L. BREDHOFF
CHRISTOPHER N. MITCHELL
ANDREW N. BEATO
LAURIE A. AMELL
DENIS C. MITCHELL
ARI S. CASPER

OF COUNSEL
GEORGE ANTHONY FISHER
RETIRED
BASIL J. MEZINES

TELEPHONE: (202) 737-7777
TELECOPIER: (202) 296-8312
www.SteinMitchell.com

January 19, 2006

Joel Joseph, Esquire
8022 Cypress Grove Lane
Cabin John, MD  20818

Dear Mr. Joseph:

Paragraph 6 of the Agreement of Release between you and Jonathan W. Cuneo and the Cuneo Law Group, P.C., dated March 15, 2002, provides that:

Joel Joseph shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants.  If he does he has breached the agreement and waives his percentages.

Your letters of January 10, 2006, to Messrs. Dubbin and Berman, Mr. Cuneo's co-counsel in the Hungarian Gold Train litigation, in which you sought from them a "referral fee" in that case constitute a material breach of the Agreement of Release.

I represent Jonathan, the law firm, and Messrs. Dubbin and Berman.

Sincerely yours,

LAW OFFICES

# STEIN, MITCHELL & MEZINES

L.L.P.

1100 CONNECTICUT AVENUE, NORTHWEST

WASHINGTON, D. C. 20036

GLENN A. MITCHELL
JACOB A. STEIN
GERARD E. MITCHELL
ROBERT F. MUSE
DAVID U. FIERST
RICHARD A. BUSSEY
PATRICK A. MALONE
ROBERT L. BREDHOFF
CHRISTOPHER H. MITCHELL
ANDREW M. BEATO
LAURIE A. AMELL
DENIS C. MITCHELL
ARI S. CASPER

OF COUNSEL
GEORGE ANTHONY FISHER
RETIRED
BASIL J. MEZINES

TELEPHONE: (202) 737-7777
TELECOPIER: (202) 296-8312
www.SteinMitchell.com

February 10, 2006

Joel Joseph, Esquire
8022 Cypress Grove Lane
Cabin John, MD  20818

Dear Mr. Joseph:

I am going to list the correspondence concerning the Gold Train.

January 5, 2006 letter from J. Joseph to D. Stanley and
    J. Cuneo with attached fee calculation
January 10, 2006 letter from J. Joseph to S. Berman, asserting a claim
January 10, 2006 letter from J. Joseph to S. Dubbin, asserting a claim
January 19, 2006 letter from J. Stein to J. Joseph, quoting March 15, 2002
    agreement identifying acts that breach the agreement
January 24, 2006 letter from J. Joseph to J. Stein with attached
    Jan. 10 2006 letter from J. Joseph to S. Dubbin
January 30, 2006 letter from J. Stein to J. Joseph, denying the claim
February 2, 2006 letter from J. Stein to J. Joseph, enclosing a copy of the
    January 19, 2006 letter

2.    I am sending you again copies of the letters to make sure you received them.

3    You have breached the March 15, 2002 agreement and the filing of the suit would be another breach.

Sincerely,

# EXHIBIT F

J 2006 10:04    DUBBIN & KRAVETZ, LLP    3053714701    P.5

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JOEL D. JOSEPH                          )
7272 Wisconsin Avenue, Suite 300        )
Bethesda, Maryland 20814                )
                                        )
            Plaintiff                   )
                                        )
        v.                              )       Civil Action No.
                                        )
SAMUEL J. DUBBIN                        )
701 Brickell Ave # 1650                 )
Miami, FL 33131                         )
                                        )
        and                             )
                                        )
SAMUEL J. DUBBIN, PA                    )
701 Brickell Ave # 1650                 )
Miami, FL 33131                         )
                                        )
                                        )
        and                             )
                                        )
DUBBIN AND KRAVETZ                      )
701 Brickell Ave # 1650                 )
Miami, FL 33131                         )
                                        )
        and                             )
                                        )
STEVE W. BERMAN                         )
1301 Fifth Avenue, Suite 2900           )
Seattle, WA 98101                       )
                                        )
        and                             )
                                        )
HAGENS BERMAN SOBOL SHAPIRO LLP)
1301 Fifth Avenue, Suite 2900           )
Seattle, WA 98101                       )
                                        )
            Defendants                   )

**06-20464**

**CIV-GRAHAM**

**MAGISTRATE JUDGE
O'SULLIVAN**

FILED BY _____ D.C.

2006 FEB 24   AM 10: 31

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA- MIA

## COMPLAINT

# I.

## Nature of the Case

1. This is an action for damages for quantum meruit and unjust enrichment for failure to pay a referral fee for a lawsuit created by plaintiff.

# II.

## Parties

2. Joel D. Joseph is a citizen of the State of Maryland.

3. Samuel J. Dubbin is a citizen of the State of Florida.

4. Samuel J. Dubbin PA is a Florida professional association

5. Dubbin and Kravetz is a Florida partnership.

6. Jeffrey W. Berman is a citizen of the State of Washington.

7. Hagens Berman Sobol Shapiro is a Washington State limited liability partnership.

# III.

## Jurisdiction

8. Jurisdiction is conferred on this court by 28 U.S.C. §1332 (diversity).

9. There is complete diversity between plaintiff and all defendants.

10. The amount in controversy exceeds the sum or value of $75,000.

IV.

Factual Allegations

11. In the fall of 1999 plaintiff began to research a case that later became known as the Hungarian Gold Train case, which was filed in this court as *Rosner v. United States*, Case No 01-1859 CIV—SEITZ, on May 7, 2001.

12. Plaintiff is of Hungarian-Jewish decent. When he learned from the interim report of the Presidential Advisory Commission on Holocaust Assets in the United States in the fall of 1999 that the United States Army took possession of the assets from the Hungarian Gold Train, and never gave the property back to its rightful owners or to the Hungarian government, he researched the facts and the law for more than one year.

13. Mr. Joseph researched relevant treaties, laws and cases.

14. Mr. Joseph spent many hours at the National Archives by researching documents concerning the Hungarian Gold Train.

15. Mr. Joseph drafted many memoranda and convinced the Cuneo Law Group that there was a viable lawsuit.

16. Mr. Joseph signed up a group of plaintiffs and drafted a complaint that served as the basis for the complaint filed in *Rosner v. United States*.

17. Mr. Joseph recommended that defendant Samuel J. Dubbin serve as local counsel in Florida and the case was referred to him and his firm as local counsel.

18. In the Spring of 2001, before *Rosner v. United States* was filed, Jeff Berman and his firm were prepared to drop out of the case. Mr. Berman wrote an email to Jon Cuneo of the Cuneo Law Group and told him that Mr. Joseph was "trying to make a pig fly" and statements to the effect that the Hungarian Gold Train case was not worth filing.

19. The Hungarian Gold Train case was settled in September of 2005, and attorneys fees and costs of $3.85 million were approved by the court and paid to defendants, as well as to the Cuneo Law Group, now Cuneo, Gilbert and LaDuca.

20. Approximately 40% of the legal fee was paid to Cuneo, Gilbert and LaDuca.

21. Approximately 60% of the legal fee was paid to defendants.

22. Mr. Joseph was paid a fee from Cuneo, Gilbert and LaDuca based on its recovery alone, with no compensation provided for the fees paid to defendants.

23. None of the defendants paid plaintiff any amount of money at any time for any reason for work performed or the referral that he made to them.

## V.

## First Cause of Action:  Quantum Meruit

24. Plaintiff incorporates by reference paragraphs one through 23, inclusive.

25. Plaintiff is entitled to a referral fee of one-third of the total amount received by defendants from the Hungarian Gold Train case settlement.

26. A referral fee of one-third is customary and typical in the industry.  This fee would have been $666,667 for the Hungarian Gold Train case.

27. But for the efforts of plaintiff there would have been no Hungarian Gold Train case and defendants would not have earned approximately $2 million from the case.

28. Plaintiff is entitled to a reasonable referral fee for his work in developing the Hungarian Gold Train case and referring it to defendants.

4

## V.

### Second Cause of Action: Unjust Enrichment

29. Plaintiff incorporates herein paragraphs one through 28, inclusive.

30. Defendants were unjustly enriched by not paying Mr. Joseph a fee for creating the Hungarian Gold Train case.

31. Plaintiff is entitled to one-third of the fees earned by defendants from the settlement of the Hungarian Gold Train case, or $666,667.

### VI.

### Request for Relief

WHEREFORE, plaintiff demands judgment against all defendants, jointly and severally, in the amount of $666,667 plus costs and attorneys' fees.

JOEL D. JOSEPH, Pro Se
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989

5

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20464 CIV-SEITZ/MCALILEY

JOEL D. JOSEPH                              )
7272 Wisconsin Avenue, Suite 300           )
Bethesda, Maryland 20814                   )
                                           )
            Plaintiff                      )
                                           )
        v.                                 )
                                           )
SAMUEL J. DUBBIN                           )
701 Brickell Ave # 1650                    )
Miami, FL 33131                            )
                                           )
        and                                )
                                           )
SAMUEL J. DUBBIN, PA                       )
701 Brickell Ave # 1650                    )
Miami, FL 33131                            )
                                           )
                                           )
        and                                )
                                           )
DUBBIN AND KRAVETZ                         )
701 Brickell Ave # 1650                    )
Miami, FL 33131                            )
                                           )
        and                                )
                                           )
STEVEN W. BERMAN                           )
1301 Fifth Avenue, Suite 2900              )
Seattle, WA 98101                          )
                                           )
        and                                )
                                           )
HAGENS BERMAN SOBOL SHAPIRO LLP)
1301 Fifth Avenue, Suite 2900              )
Seattle, WA 98101                          )
                                           )
            Defendants                     )

## FIRST AMENDED COMPLAINT

1

# I.

## Nature of the Case

1. This is an action for damages for quantum meruit, unjust enrichment and tortious interference with a contractual relationship.

# II.

## Parties

2. Joel D. Joseph is a citizen of the State of Maryland.

3. Samuel J. Dubbin is a citizen of the State of Florida.

4. Samuel J. Dubbin PA is a Florida professional association

5. Dubbin and Kravetz is a Florida partnership.

6. Steve W. Berman is a citizen of the State of Washington.

7. Hagens Berman Sobol Shapiro LLP is a Washington State limited liability partnership.

# III.

## Jurisdiction

8. Jurisdiction is conferred on this court by 28 U.S.C. §1332 (diversity).

9. There is complete diversity between plaintiff and all defendants.

10. The amount in controversy exceeds the sum or value of $75,000.

2

## IV.

## Factual Allegations

11.  In the fall of 1999 plaintiff began to research a case that later became known as the Hungarian Gold Train case, which was filed in this court as *Rosner v. United States*, Case No 01-1859 CIV—SEITZ, on May 7, 2001.

12.  Plaintiff is of Hungarian-Jewish decent.  When he learned from the interim report of the Presidential Advisory Commission on Holocaust Assets in the United States in the fall of 1999 that the United States Army took possession of the assets from the Hungarian Gold Train, and never gave the property back to its rightful owners or to the Hungarian government, he researched the facts and the law for more than one year.

13.  Mr. Joseph researched relevant treaties, laws and cases.

14.  Mr. Joseph spent many hours at the National Archives by researching documents concerning the Hungarian Gold Train.

15.  Mr. Joseph entered into a written contract with the Cuneo Law Group in November of 1999 on a part-time basis, coming into the Cuneo office approximately one day per week.

16. In January of 2000 Joseph and Cuneo entered into a new written contract where Joseph would be paid $7,000 per month, plus a percentage of cases that he brought into the firm.

17.  Under their contractual agreements, if Cuneo was not interested in bringing a case suggested by Mr. Joseph, Joseph was free to bring the case on his own.

18. Mr. Joseph drafted many memoranda and convinced the Cuneo Law Group that there was a viable lawsuit.

3

19. Mr. Joseph signed up a group of plaintiffs and drafted a complaint that served as the basis for the complaint filed in *Rosner v. United States*.



20. The plaintiffs signed by plaintiff include Marla Simon, Regina Baskin, Laslo Sokoly and Leopold Fettman.

21. Mr. Joseph recommended that defendant Samuel J. Dubbin serve as local counsel in Florida and the case was referred to him and his firm as local counsel.

22. The Cuneo Law Group brought Steve Berman and his law firm into the Hungarian Gold Train case as co-counsel.

23. Berman and his firm was aware that plaintiff had a written contract with The Cuneo Law Group.

24. In the Spring of 2001, before *Rosner v. United States* was filed, Steve Berman and his firm were prepared to drop out of the case. Mr. Berman wrote an email to Jon Cuneo of the Cuneo Law Group and told him that Mr. Joseph was "trying to make a pig fly" and statements to the effect that the Hungarian Gold Train case was not worth filing.

25. Based on the email from Mr. Berman, Mr. Joseph was prepared to file the Gold Train case with Mr. Dubbin, and no involvement from either Berman or Cuneo.

26. Mr. Berman and his law firm changed their minds and decided that the Hungarian Gold Train was worth bringing.

27. Mr. Berman and his law firm intentionally proceeded to get Mr. Joseph out of the case and terminated from working with Mr. Cuneo and his law firm.

4

28. As a direct and proximate result of Mr. Berman and his firm's efforts, Jon Cuneo breached the contract that his firm had with Mr. Joseph, forced him out of the firm and forced him off the Hungarian Gold Train case.

29. Joseph sued The Cuneo Law Group and Jon Cuneo on August 20, 2001 in the United States District Court for the District of Columbia in case number 01-01755.

30. The case against Cuneo was settled by a written settlement agreement in which Cuneo agreed to pay Joseph a fixed sum of money plus a percentage of the recovery in three cases, including the Hungarian Gold Train case.

31. Steve Berman and his law firm refused to allow plaintiff to participate in the settlement negotiations concerning the Hungarian Gold Train case despite the fact that plaintiff was the only attorney representing plaintiffs who was on Hungarian-Jewish origin and had other distinct skills that could have resulted in a better settlement.

32. The Hungarian Gold Train case was settled in September of 2005, and attorneys fees and costs of $3.85 million were approved by the court and paid to defendants, as well as to the Cuneo Law Group, now Cuneo, Gilbert and LaDuca.

33. Approximately 40% of the legal fee was paid to Cuneo, Gilbert and LaDuca.

34. Approximately 60% of the legal fee was paid to defendants.

35. Mr. Joseph was paid a fee from Cuneo, Gilbert and LaDuca based on its recovery alone (and based on the settlement referred to in paragraph 30,) with no compensation provided for the fees paid to defendants. This was a partial payment under the settlement agreement.

36. A balance of approximately $10,000 is due Joseph from Cuneo, Gilbert and LaDuca under the settlement agreement described in paragraph 30, and is being withheld because of pressure brought by defendants in this case.

37. None of the defendants paid plaintiff any amount of money at any time for any reason for work performed by plaintiff or for the referral that he made to them.

## V.

## First Cause of Action:  Quantum Meruit

38. Plaintiff incorporates by reference paragraphs one through 37, inclusive.

39. Plaintiff is entitled to a referral fee of one-third of the total amount received by defendants from the Hungarian Gold Train case settlement.

40.  A referral fee of one-third is customary and typical in the industry.  This fee would have been $666,667 for the Hungarian Gold Train case.

41. But for the efforts of plaintiff there would have been no Hungarian Gold Train case and defendants would not have earned approximately $2 million from the case.

42. Plaintiff is entitled to a reasonable referral fee for his work in developing the Hungarian Gold Train case and referring it to defendant Dubbin and his law firm.

43.  Plaintiff referred no less than four of the original clients in the Hungarian Gold Train case to defendants.

44. Each of the referred clients signed a written retainer agreement that provided that each attorney assumed joint legal responsibility for the representation and would be available for consultation with the client.

6

45. Plaintiff provided continuing representation to the clients that he brought into the case and consulted with them and with other members of the class while the case was pending.

46. The fee sought by plaintiff is in proportion to the work performed by plaintiff.

## V.

## Second Cause of Action:  Unjust Enrichment

47. Plaintiff incorporates herein paragraphs one through 46, inclusive.

48. Defendants were unjustly enriched by not paying Mr. Joseph a fee for creating the Hungarian Gold Train case and for the referral.

49. Plaintiff performed substantial services that were performed under circumstances in which the defendants understood and intended that compensation would be paid.

50. Defendants had actual knowledge of the benefit provided to them by plaintiff.

51. Defendants accepted and retained approximately $2 million in legal fees for work performed on the Hungarian Gold Train case.

52. Under the circumstances of the Hungarian Gold Train case it would be inequitable for defendants to retain the entire $2 million that they received from the Hungarian Gold Train case without paying plaintiff fair value for the work and services that he provided.

53. Plaintiff is entitled to one-third of the fees earned by defendants from the settlement of the Hungarian Gold Train case, or $666,667.

7

VI.

## Tortious Interference with Contractual Relations

54. Plaintiff incorporates by reference paragraphs one through 53, inclusive.

55. Plaintiff had a contractual relationship with the Cuneo Law Group from November of 1999 until the present.

56. Defendants Steve W. Berman and Hagens Berman Sobol Shapiro LLP intentionally interfered with the contractual relations between plaintiff and the Cuneo Law Group by asking Jon Cuneo to fire and/or demote plaintiff and otherwise to prevent Joseph from working on the Hungarian Gold Train case.

57. Defendants Steve W. Berman and Hagens Berman Sobol Shapiro LLP have continued to the present day to interfere with the contractual relationship between The Cuneo Law Group, and its successor law firm, and Jon Cuneo, by refusing to allow plaintiff to participate in settlement negotiations, and by convincing Jon Cuneo and Cuneo, Gilbert and LaDuca to withhold payments from Joseph and to threaten not to pay Joseph other moneys that are due to him under the settlement agreement described in paragraph 30.

58. Defendants Berman and Hagens Berman Sobol Shapiro LLP had actual knowledge of plaintiff's contractual relationship with The Cuneo Law Group, Jon Cuneo and Cuneo, Gilbert and LaDuca.

59. Defendants Berman and Hagens Berman Sobol Shapiro LLP intentionally and unjustifiably interfered with the relationship between plaintiff and the Cuneo Law Group, Jon Cuneo and Cuneo, Gilbert and LaDuca that induced The Cuneo Law Group, Jon Cuneo and Cuneo, Gilbert and LaDuca not to perform the contracts in question.

8

60. As a direct and proximate result of defendant Berman's and Hagens Berman Sobol Shapiro LLP's actions, plaintiff suffered a loss of income and a loss of future income and publicity concerning the Hungarian Gold Train case.

61. All the defendants received substantial favorable publicity from the Hungarian Gold Train case, but plaintiff was prevented by the actions of Berman and Hagens Berman Sobol Shapiro LLP from receiving similar favorable publicity and the income and additional clients that such publicity generates.

## VII.

## Request for Relief

WHEREFORE, plaintiff demands judgment against Samuel J. Dubbin, Samuel J. Dubbin, PA and Dubbin and Kravetz, jointly and severally, in the amount of $333,333, plus costs and attorneys' fees; and one million dollars in actual damages, and ten million as punitive damages, against Steve W. Berman and Hagens Berman Sobol Shapiro LLP, jointly and severally, plus court costs and attorneys' fees.

JOEL D. JOSEPH, Pro Se
7272 Wisconsin Avenue, Suite 300
Bethesda, MD 20814
(301) 941-1989

9

CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this first amended complaint this 27th day of July, 2006 to Brian F. Spector, Kenny Nachwalter, P.A., 201 South Biscayne Blvd., 1100 Miami Center, Miami, Florida, 33131.

JOEL D. JOSEPH

# EXHIBIT H

CASREF, CLOSED, CMM, MEDIATION, REF_PTRL

**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:06-cv-20464-PAS**

Joseph v. Dubbin, et al
Assigned to: Judge Patricia A. Seitz
Referred to: Magistrate Judge Chris M. McAliley
Demand: $0
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 02/24/2006
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Joel D. Joseph**                    represented by **Joel D. Joseph**
                                      Suite 300
                                      7272 Wisconsin Avenue
                                      Bethesda, MD 20814
                                      PRO SE

V.

**Defendant**

**Samuel J. Dubbin**                  represented by **Brian F. Spector**
                                      Kenny Nachwalter.P.A.
                                      201 South Biscayne Boulevard
                                      1100 Miami Center
                                      Miami, FL 33131-4327
                                      U.S.A
                                      305-373-1000
                                      Fax: 372-1861
                                      Email: bspector@kennynachwalter.com

                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

                                      **Ismael Diaz**
                                      Kenny Nachwalter, P.A.
                                      Miami Center
                                      201 S Biscayne Boulevard
                                      Suite 1100
                                      Miami, FL 33131-4327
                                      305-373-1000
                                      Fax: 372-1861
                                      Email: idiaz@kennynachwalter.com
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Samuel J. Dubbin, PA**                 represented by  **Brian F. Spector**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Ismael Diaz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Dubbin and Kravetz**                   represented by  **Brian F. Spector**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Ismael Diaz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Steve W. Berman**                      represented by  **Brian F. Spector**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Ismael Diaz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Hagens Berman Sobol Shapiro LLP**      represented by  **Brian F. Spector**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Ismael Diaz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/24/2006 | 1 | COMPLAINT filed; FILING FEE $250.00 RECEIPT # 935640 ; Magistrate Judge O'Sullivan (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 2 | SUMMONS(ES) issued for Samuel J. Dubbin (dg, Deputy Clerk) |

| | | (Entered: 02/28/2006) |
|---|---|---|
| 02/24/2006 | 3 | SUMMONS(ES) issued for Samuel J. Dubbin PA (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 4 | SUMMONS(ES) issued for Dubbin and Kravetz (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 5 | SUMMONS(ES) issued for Steve W. Berman (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 6 | SUMMONS(ES) issued for Hagens Berman Sobol (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 04/14/2006 | 7 | NOTICE of Pendency of Other Action. by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin (hd, Deputy Clerk) (Entered: 04/14/2006) |
| 04/14/2006 | 8 | MOTION by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin (Attorney Brian F. Spector, Ismeli Diaz) for ten minute Hearing /oral argument on Rule 3.9 notice (tb, Deputy Clerk) (Entered: 04/17/2006) |
| 04/14/2006 | 9 | MOTION with memorandum in support by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin to dismiss plaintiff's complaint (tb, Deputy Clerk) (Entered: 04/17/2006) |
| 04/14/2006 | 10 | MOTION by All Defendants for ten minute hearing on Rule 3.9.D notice (dg, Deputy Clerk) (Entered: 04/17/2006) |
| 04/20/2006 | 11 | ORDER transferring case to the calendar of the Honorable Patricia A. Seitz ( Signed by Judge Donald L. Graham on 5/19/06 and accepted by Judge Patricia A. Seitz on 4/20/06) [EOD Date: 4/21/06] (ct, Deputy Clerk) (Entered: 04/21/2006) |
| 04/20/2006 | | CASE reassigned to Judge Patricia A. Seitz (ct, Deputy Clerk) (Entered: 04/21/2006) |
| 04/21/2006 | 12 | Certification and ORDER of transfer to Magistrate Judge ( Signed by Magistrate Judge John J. O'Sullivan on 4/21/06) [EOD Date: 4/25/06] (ct, Deputy Clerk) (Entered: 04/25/2006) |
| 04/24/2006 | | Magistrate identification: Magistrate Judge Chris M. McAliley (ct, Deputy Clerk) (Entered: 04/25/2006) |
| 04/27/2006 | 13 | RESPONSE by Joel D. Joseph to [9-1] motion to dismiss plaintiff's complaint (dg, Deputy Clerk) (Entered: 04/28/2006) |
| 05/01/2006 | 14 | ORDER set Scheduling meeting report due for 7/17/06 ( Signed by Judge Patricia A. Seitz on 5/1/06) [EOD Date: 5/2/06] (ct, Deputy Clerk) (Entered: 05/02/2006) |
| 05/03/2006 | 15 | UNOPPOSED MOTION by All Defendants (Attorney ) to extend time to reply to motion to dismiss (ct, Deputy Clerk) (Entered: 05/03/2006) |

| 05/08/2006 | 16 | ORDER granting [15-1] motion to extend time to reply to motion to dismiss ( Signed by Judge Patricia A. Seitz on 5/8/06) [EOD Date: 5/9/06] (ct, Deputy Clerk) (Entered: 05/09/2006) |
| 05/15/2006 | 17 | REPLY by Samuel J. Dubbin PA, Samuel J. Dubbin to response to [9-1] motion to dismiss plaintiff's complaint (ct, Deputy Clerk) (Entered: 05/16/2006) |
| 07/11/2006 | 18 | UNOPPOSED MOTION by All Defendants (Attorney ) to stay discovery and objection to discovery and objection to discovery obligations imposed by order requiring schedling report with supporting memeorandum of law (dj, Deputy Clerk) (Entered: 07/12/2006) |
| 07/13/2006 | 19 | ORDER granting [9-1] motion to dismiss plaintiff's complaint; plaintiff shall have until and including August 2, 2006 to file amended complaint (Signed by Judge Patricia A. Seitz on 7/13/06) [EOD Date: 7/14/06] (mh, Deputy Clerk) (Entered: 07/14/2006) |
| 07/13/2006 | 20 | ORDER granting [18-1] motion to stay discovery and objection to discovery and objection to discovery obligations imposed by order requiring schedling report with supporting memeorandum of law ( Signed by Judge Patricia A. Seitz on 7/13/06) [EOD Date: 7/14/06] (mh, Deputy Clerk) (Entered: 07/14/2006) |
| 07/17/2006 | 21 | Joint Planning And Scheduling Report by Joel D. Joseph, All Defendants 7/17/06 (mh, Deputy Clerk) (Entered: 07/18/2006) |
| 07/19/2006 | 22 | ORDER referring case to mediation. 15 days to appoint mediator (Signed by Judge Patricia A. Seitz on 7/18/06) [EOD Date: 7/20/06] (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | 23 | ORDER REFERRING CASE (PRE-TRIAL) to Magistrate Judge Chris M. McAiley (Signed by Judge Patricia A. Seitz on 7/18/06) CCAP [EOD Date: 7/20/06] (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | 23 | ORDER Setting Trial Date, Pretrial Deadlines And Referral to Magistrate Judge; Calendar call set for 1:15 p.m. on 10/24/07; Jury trial set for 10/29/07; Pretrial conference for 9:00 a.m. on 9/20/07; (Signed by Judge Patricia A. Seitz on 7/18/06) [EOD Date: 7/20/06] CCAP (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | | CASE REFERRED to Magistrate Judge Chris M. McAliley. (ch) (Entered: 10/26/2006) |
| 07/27/2006 | 24 | FIRST AMENDED COMPLAINT by Joel D. Joseph, (Answer due 8/6/06 for Samuel J. Dubbin, for Samuel J. Dubbin PA, for Dubbin and Kravetz, for Steve W. Berman, for Hagens Berman Sobol ) amending [1-1] complaint (bb, Deputy Clerk) (Entered: 07/31/2006) |
| 07/31/2006 | 25 | NOTICE of selection of Gerald T. Wetherington as Mediator by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin, Joel D. Joseph (rb, Deputy Clerk) (Entered: 08/02/2006) |
| | | |

| 08/02/2006 | 26 | UNOPPOSED MOTION by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin, Joel D. Joseph to extend time to file a response to plaintiffs first amended complaint (rb, Deputy Clerk) (Entered: 08/03/2006) |
|---|---|---|
| 08/03/2006 | 27 | ORDER granting [26-1] motion to extend time to file a response to plaintiffs first amended complaint; amended complaint due 8/24/06 (Signed by Judge Patricia A. Seitz on 8/3/06) [EOD Date: 8/4/06] (mh, Deputy Clerk) (Entered: 08/04/2006) |
| 08/24/2006 | 28 | MOTION with memorandum in support by All Defendants to dismiss first amended complaint (bs, Deputy Clerk) (Entered: 08/25/2006) |
| 08/24/2006 | 29 | SEALED DOCUMENT placed in vault (dg, Deputy Clerk) (Entered: 08/25/2006) |
| 08/30/2006 | 30 | ORDER Re; Sealed Filing (DE 29) (Signed by Judge Patricia A. Seitz on 8/30/06) [EOD Date: 8/31/06] (mh, Deputy Clerk) (Entered: 08/31/2006) |
| 09/14/2006 | 31 | UNOPPOSED MOTION by Joel D. Joseph to extend time to respond to motion to dismiss the first amended complaint (mh, Deputy Clerk) (Entered: 09/15/2006) |
| 09/15/2006 | 32 | NOTICE of Filing Order Scheduling Mediation by All Defendants (mh, Deputy Clerk) (Entered: 09/18/2006) |
| 09/18/2006 | 33 | ORDER granting [31-1] motion to extend time to respond to motion to dismiss the first amended complaint Response to motion reset to 10/16/06 for [28-1] motion to dismiss first amended complaint ( Signed by Judge Patricia A. Seitz on 9/18/06) [EOD Date: 9/19/06] (mh, Deputy Clerk) (Entered: 09/19/2006) |
| 09/21/2006 | 34 | ORDER SCHEDULING MEDIATION before Mediator: Gerald T. Wetherington for April 16, 2007 at 10:00 a.m. (Signed by Judge Patricia A. Seitz on 9/21/06) [EOD Date: 9/21/06] (mh, Deputy Clerk) (Entered: 09/21/2006) |
| 10/16/2006 | 35 | RESPONSE in Opposition re 28 Motion to Dismiss filed by Joel D. Joseph. (hd) (Entered: 10/18/2006) |
| 10/16/2006 | 36 | AFFIDAVIT signed by Joel D. Joseph. re 35 Response in Opposition to 28 Motion to Dismiss by Joel D. Joseph. (hd) (Entered: 10/18/2006) |
| 10/23/2006 | 37 | REPLY to Response to Motion re 28 Motion to Dismiss *the First Amended Complaint* filed by Samuel J. Dubbin. (Diaz, Ismeli) (Entered: 10/23/2006) |
| 11/28/2006 | 38 | MOTION to partially lift stay by Joel D. Joseph. (dg) (Entered: 12/01/2006) |
| 11/28/2006 | 39 | Statement of points and authorities in support of 38 MOTION to partially lift stay by Joel D. Joseph (dg) (Entered: 12/01/2006) |
| 12/01/2006 | 40 | RESPONSE in Opposition re 38 MOTION to partially lift stay filed by All Defendants. (Attachments: # 1 Exhibit A)(Diaz, Ismael) (Entered: |

| | | 12/01/2006) |
|---|---|---|
| 12/01/2006 | 41 | AMENDED DOCUMENT by All Defendants. Amendment to 40 Response in Opposition to Motion *to Partially Lift Stay (Corrected)*. (Attachments: # 1 Exhibit A)(Diaz, Ismael) (Entered: 12/01/2006) |
| 12/13/2006 | 42 | ORDER denying 38 Motion to PARTIALLY LIFT STAY . Signed by Judge Patricia A. Seitz on 12/13/06. (lk) (Entered: 12/14/2006) |
| 12/22/2006 | 43 | ORDER denying as moot 8 Motion for Hearing, denying as moot 10 Motion for Hearing, granting 28 Motion to Dismiss first amended complaint. This case is CLOSED. Signed by Judge Patricia A. Seitz on 12/22/06. (lk) (Entered: 12/28/2006) |
| 01/29/2007 | 44 | NOTICE OF APPEAL by Joel D. Joseph as to 43 Order on Motion for Hearing,, Order on Motion to Dismiss Filing fee $ 455.00, receipt number 954028. Copies sent to USCA and Counsel of Record. (nc) (Entered: 02/02/2007) |
| 02/02/2007 | | Certified copies of Notice of Appeal, Docket Sheet and Order under appeal to US Court of Appeals re 44 Notice of Appeal (nc) (Entered: 02/02/2007) |
| 02/21/2007 | 45 | NOTICE of Receipt of Notice of Appeal Transmittal Letter from USCA on 2/12/07 as to Joel D. Joseph re 44 appeal USCA number 07-10615-BB (hh) (Entered: 02/22/2007) |
| 02/21/2007 | 46 | TRANSCRIPT INFORMATION FORM by Joel D. Joseph re 44 Notice of Appeal. No Transcript Requested. (nc) (Entered: 03/06/2007) |
| 03/15/2007 | 47 | ORDER of DISMISSAL from USCA pursuant to Appellant's motion to dismiss appeal with prejudice is GRANTED as to 44 Notice of Appeal filed by Joel D. Joseph, Re: USCA# 07-10615-BB. Copy to Judge. (nc) (Entered: 03/16/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/19/2008 17:14:28 | | |
| **PACER Login:** cg0189 | **Client Code:** | 6667 |
| **Description:** Docket Report | **Search Criteria:** | 1:06-cv-20464-PAS |
| **Billable Pages:** 4 | **Cost:** | 0.32 |

CLOSED
CIVIL
CASE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 06-20464-CIV-SEITZ/MCALILEY

JOEL D. JOSEPH,

        Plaintiff,

v.

SAMUEL J. DUBBIN, SAMUEL J. DUBBIN,
PA, DUBBIN AND KRAVETZ, STEVE W.
BERMAN, and HAGENS BERMAN SOBOL
SHAPIRO LLP,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendants' Motion to Dismiss the First Amended

Complaint [DE-28]. On July 13, 2006, this Court issued an Order [DE-19] granting Defendants' motion

to dismiss Plaintiff's original Complaint. The Order made clear the deficiencies in the Complaint, and

described the allegations Plaintiff needed to include in order to state a proper claim for a referral fee,

unjust enrichment and quantum meruit. The Court allowed Plaintiff to file an Amended Complaint, but

only "if additional facts exist[ed] to support his causes of action."

Plaintiff's Amended Complaint largely mirrors his original Complaint. It again seeks a referral

fee and contains claims for unjust enrichment and quantum meruit. The main difference is that it adds a

claim for tortious interference with contractual relations against Defendants Steve Berman and his law

firm, Hagens Berman Sobol Shapiro, LLP. The Court has reviewed the parties' papers and the relevant

portions of the record. Upon due consideration, the Court shall grant the motion and dismiss this case

with prejudice.

## I.    FACTUAL BACKGROUND

The Court included a recitation of the initial Complaint's factual allegations in its July 13th

-1-

Order, and does not repeat that discussion here. The new allegations in the Amended Complaint largely pertain to Plaintiff's new claim for tortious interference with contractual relations. Plaintiff alleges that, despite at first suggesting that the Gold Train case was not worth pursuing, Defendant Berman eventually changed his mind and "intentionally proceeded to get [Plaintiff] out of the case and terminated from working with Mr. Cuneo and his law firm." (Am Compl. ¶¶ 24-25.) As a result, Mr. Cuneo breached the contract that his law firm had with the Plaintiff and forced Plaintiff out of the firm and off the Gold Train case. (*Id.* ¶ 28.) Plaintiff further alleges that Defendant Berman and his law firm refused to allow Plaintiff to participate in the settlement of the Gold Train case. (*Id.* ¶ 31.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal of a claim is appropriate when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackstone v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994). At this stage of the proceedings, the Court must accept Plaintiff's allegations in the Complaint as true, and view those allegations in a favorable light to determine whether the Complaint states claims for which relief can be granted. *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir. 2000). Thus, a court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

However, "[t]o survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir. 2004). Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [for failure to state a claim]." *Davila v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003). Therefore, in considering Defendants' Motion to Dismiss, the Court is "not

-2-

bound by the legal conclusions in the complaint," and must look instead at the pleaded facts to determine whether the Plaintiffs' claims can proceed through discovery. *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). It is with these principles in mind that the Court addresses the Amended Complaint.

## III.     DISCUSSION

### A.     Choice of Law

Plaintiff re-asserts his argument that federal common law applies to this action, rather than Florida substantive law. In its July 13th Order, this Court determined that Florida law governs whether or not Plaintiff may recover a referral fee in connection with the Gold Train case. Plaintiff has not set forth any new arguments as to why this Court should depart from its prior ruling.

### B.     Referral Fee

In its July 13th Order, this Court noted that Plaintiff's original Complaint "d[id] not allege any of the facts necessary to recover a referral fee in Florida, including, *inter alia*, that (1) Plaintiff referred Defendants any clients; (2) a written agreement existed; and (3) the fee is in proportion to the work performed by Plaintiff." Plaintiff's Amended Complaint still does not contain these allegations.

First, with respect to the referral of clients to Defendants, Plaintiff simply re-states his allegation that he "recommended that defendant Samuel J. Dubbin serve as local counsel in Florida and the case was referred to him and his firm as local counsel." (Am. Compl. ¶ 21) (emphasis added). Plaintiff also emphasizes that he was the designated "attorney in charge" on the Gold Train case, and as such, he "would have been the attorney with authority to refer the case to Samuel Dubbin." (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5.) However, the documents that note Plaintiff was the "attorney in charge" (four retainer agreements submitted by Defendants under seal)[1] make clear that the Gold Train plaintiffs

---

[1]     Both Plaintiff's initial Complaint and Amended Complaint reference the fact that Plaintiff "signed up" four plaintiffs for the Gold Train case. A defendant may attach to a motion to dismiss documents to which a plaintiff has referred in the complaint and which are central to a plaintiff's claim, without converting the motion into a motion for summary judgment motion. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

entered into an attorney-client relationship with the Cuneo Law Group, and Plaintiff was the "attorney in charge" only by virtue of his employment with that law firm.

Second, Plaintiff still has not alleged the existence of a written fee sharing agreement with Defendants. Even though the retainer agreements noted that the Cuneo Law Group "may decide to work with other attorneys or law firms in connection with the [Gold Train case]" and that the Gold Train plaintiffs would not be charged a fee in excess of that stated in the retainer, the Gold Train plaintiffs would still have had to approve in writing the specific fee-splitting arrangement. *See* R. Regulating Fla. Bar 4-1.5(g). Plaintiff has not alleged that any such document exists.

Finally, Plaintiff still has not alleged any facts showing that the referral fee he seeks is in proportion to the work he performed. This is the alternative method allowed by The Florida Bar under which attorneys not in the same firm may divide legal fees, in the absence of a written fee-splitting agreement signed by the client. Plaintiff's conclusory assertion, in paragraph 46 of the Amended Complaint, that "[t]he fee sought by me is in proportion to the work performed by me" is insufficient to withstand a motion to dismiss.

Plaintiff seeks one-third of the fees earned by Defendants in the Gold Train case – $666,667. (*Id.* ¶ 53.) In his opposition to the instant motion, he admits that he has already received $240,000 from the Cuneo Law Group, which represents approximately 8% of the total fee recovered by class counsel. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 8.) In his Amended Complaint, Plaintiff repeats his allegations from his initial Complaint that he did some preliminary work in researching treaties and case law and drafting the complaint in the Gold Train case. (Am. Compl. ¶¶ 11-14, 18-21.) He then admits that, shortly after the case got filed, his relationship with the Cuneo Law Group ended and he was no longer part of the case. (*Id.* ¶ 28.) He offers no additional facts to support his claim that he should receive an additional $420,000 in fees for any further work performed on the case. Indeed, in his opposition, Plaintiff even appears to concede that his fee request is not in proportion to the work he performed, when

-4-

he asks this Court to allocate fees "without reference to the amount of work actually performed by each of the lawyers." (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9) (emphasis added). This Court can do no such thing. Plaintiff's claim for a referral fee must be dismissed.

### C.    Quantum Meruit

Plaintiff's quantum meruit claim likewise fails. In its July 13th Order, this Court advised Plaintiff that, to state a claim for quantum meruit, he must show that "services were performed under the circumstances in which the parties understood and intended that compensation would be paid." The factual allegations in Plaintiff's Amended Complaint still do not support the notion that Defendants had any understanding that Plaintiff would be paid for his work on the Gold Train case, or that they intended to pay Plaintiff for such work. Rather, the Amended Complaint alleges that, at the time Plaintiff was working on the Gold Train case, he was employed by the Cuneo Law Group and was entitled to a percentage of any fees generated from cases he brought to that firm. (Am. Compl. ¶¶ 15-16.) These allegations contradict the idea that Defendants had any intention of paying Plaintiff for work for which he was already being compensated. Plaintiff's quantum meruit claim cannot withstand a motion to dismiss.

### D.    Unjust Enrichment

Plaintiff's unjust enrichment claim is similarly deficient. In its July 13th Order, this Court advised Plaintiff that, to state a claim for unjust enrichment, he must allege that "(1) he conferred a benefit on the defendant; (2) defendant has knowledge of the benefit; (3) defendant has accepted or retained the benefit; and (4) circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." The allegations in the Amended Complaint do not demonstrate that Plaintiff personally conferred a benefit on the Defendants. Indeed, they show that he performed work on the Gold Train case while the Cuneo Law Group was paying him as one of their employed attorneys. (*Id.*) The Cuneo Law Group had a right of first refusal over any case he brought

-5-

into the firm, which the firm exercised over the Gold Train case. (*Id.* ¶¶ 11-17.) Thus, the Amended Complaint's own allegations demonstrate that, if any benefit were conferred on Defendants, it was at the hands of the Cuneo Law Group – not Plaintiff.

Moreover, Plaintiff has not alleged facts showing that it would be inequitable for Defendants to retain the "benefit" they received from their participation in the Gold Train case, without paying Plaintiff a portion of the fees they recovered. The Amended Complaint alleges that the Cuneo Law Group paid Plaintiff a salary while he was working on the Gold Train case, and that it gave him a portion of the fees it recovered through settlement of the case – which amounted to $240,000. (*Id.* ¶¶ 15-16, 30, 35.) Thus, the Amended Complaint shows that Plaintiff was compensated for his work on the case, and contains no facts demonstrating alleged inequity.

**E.     Tortious Interference With Contractual Relations**

Plaintiff's new claim for tortious interference with contractual relations alleges that Defendant Berman and his law firm knew "that [P]laintiff had a written contract with [t]he Cuneo Law Group," and "interfered with the contractual relations between [P]laintiff and the Cuneo Law Group." (*Id.* ¶¶ 23, 56.) Further, Plaintiff alleges that Defendant Berman "continued to the present day to interfere with the contractual relationship with the [t]he Cuneo Law Group . . . by refusing to allow [P]laintiff to participate in settlement negotiations [in the Gold Train case]." (*Id.* ¶ 57.) It appears that Plaintiff is alleging that Defendant Berman and his law firm interfered with two separate contracts: (1) the January 2000 employment contract, in which the Cuneo Law Group agreed to pay Plaintiff $7,000 per month plus a percentage of the fees from cases he brought into the firm; and (2) the 2002 settlement agreement with the Cuneo Law Group, resolving Plaintiff's lawsuit against the Cuneo Law Group filed in the District of Columbia (Case No. 01-01755).

Defendants argue that any claim for tortious interference with contractual relations is time-barred pursuant to the District of Columbia's three year statute of limitations for bringing such lawsuits.

-6-

Because this Court's jurisdiction rests on the basis of diversity of citizenship, it must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Coral Gables Imported Motorcars, Inc. v. Fiat Motors*, 673 F.2d 1234, 1238 (11th Cir. 1982). Accordingly, Florida's choice-of-law rules apply here. Florida has adopted the "most significant relationship" test, set forth in section 145 of the Restatement (Second) Conflict of Laws. *Garcia v. Public Health Trust*, 841 F.2d 1062, 1064 (11th Cir. 1988). Under the Restatement standard, the laws of the state with "the most significant relationship to the occurrence and the parties under the principles stated in [section] 6 [of the Restatement]" determine the rights and liabilities of the parties in a tort case. Restatement (Second) of Conflict of Laws § 145(1) (1971).

Plaintiff does not dispute Defendants' contention that District of Columbia law controls his tortious interference claim. Rather, he contends that the District of Columbia's three-year statute of limitations does not bar his tort claim, because Defendants are committing a "continuing tort." (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 12.) Plaintiff is mistaken.

With respect to a breach of Plaintiff's January 2000 employment agreement with the Cuneo Law Group, the Amended Complaint alleges that this breach occurred sometime in the first half of 2001, over which Plaintiff sued the Cuneo Law Group and Jonathan Cuneo later that same year. (Am. Compl. ¶¶ 28-29.) The complaint in that case (which Plaintiff references in his Amended Complaint and which Defendants attached as an exhibit to the instant motion)[2] alleged that Defendant Berman had interfered with the January 2000 employment agreement by seeking "to have Mr. Joseph removed from this case [the Gold Train case] and from Mr. Cuneo's firm." (Ex. B to Defs.' Mot. to Dismiss ¶ 19.) Thus, it is clear that Plaintiff was on notice of any claim he might have had against Defendant Berman and his law firm as of the fall of 2001 – more than five years prior to the filing of this case. Because the January 2000 employment agreement was terminated in 2001 and replaced with a settlement agreement (as

---

[2]    *See* footnote 1 of this Order.

-7-

Plaintiff admits in his Amended Complaint), Plaintiff's continuing tort theory with respect to the January 2000 contract is without merit.

With respect to the 2002 settlement agreement with the Cuneo Law Group, Plaintiff could only have a valid tortious interference claim if this agreement had allowed him to participate in the Gold Train settlement discussions. The settlement agreement did not provide Plaintiff this contractual right, and thus, he could not have had any expectation to participate in settlement discussions. (Ex. C. to Defs.' Mot. to Dismiss ¶ 6.)[3] Rather, the settlement agreement prohibited Plaintiff from participating in the Gold Train case altogether. (*Id.*) Accordingly, Defendants could not have interfered with a contractual right Plaintiff did not even have. Plaintiff's tortious interference claim as to the 2002 settlement agreement is legally insufficient.

## IV.     CONCLUSION

Based on the foregoing, it is hereby

ORDERED that:

(1) Defendants' Motion to Dismiss the First Amended Complaint [DE-28] is GRANTED;

(2) Plaintiff's First Amended Complaint [DE-24] is DISMISSED WITH PREJUDICE;

(3) All pending motions not otherwise ruled upon in this Order are DENIED AS MOOT; and

(4) This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 22nd day of December, 2006.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

---

[3]     *See* footnote 1 of this Order.

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOEL D. JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-1755 (RBW) |
| | ) | |
| THE CUNEO LAW GROUP, P.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

On March 15, 2002, the plaintiff and the defendants submitted a joint Praecipe of Dismissal indicating that a settlement agreement had been reached in this case and requesting that the plaintiff's action be dismissed with prejudice. Praecipe of Dismissal with Prejudice [D.E. #16]. Upon receipt of the parties' Praecipe, the Court issued an order dismissing this case with prejudice on April 3, 2002, pursuant to Federal Rule of Civil Procedure 41(a)(1). Order [D.E. #17]; see also Fed. R. Civ. P. 41(a)(1) (stating that "an action may be dismissed by the plaintiff without order of court . . . by filing a stipulation of dismissal signed by all parties who have appeared in the action").

On March 27, 2006, the plaintiff moved to enforce the March 2002 settlement agreement, alleging that (1) in January 2006, the defendants withheld $10,000 from the agreed-upon settlement amount, and (2) on March 8, 2006, the defendants "informed [the] plaintiff that this amount would not be paid." Verified Motion to Enforce Settlement Agreement at 1. In response, the defendants claim, inter alia, that this Court lacks jurisdiction to entertain the

plaintiff's enforcement motion.  Defendants' Opposition to Motion to Enforce Settlement

Agreement at 1.  The Court agrees with the defendants and therefore must deny the plaintiff's

motion.

      The Supreme Court has held that when a case is dismissed by stipulation of the parties

pursuant to a settlement agreement, the trial court that entered the order of dismissal cannot

ordinarily exercise ancillary jurisdiction over "disputes arising out of an agreement that

produce[d] the stipulation."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378

(1994) (holding that "[e]nforcement of the settlement agreement . . . is more than just a

continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction");

see also Shaffer v. Veneman, 325 F.3d 370, 373 (D.C. Cir. 2003) (following Kokkonen); Bd. of

Tr. of the Hotel and Rest. Employees Local 25 v. Madison Hotel, Inc., 896 F. Supp. 14, 14

(D.D.C. 1995) (stating that "[w]hen a federal action is settled and dismissed, . . . the fact that the

original action was a federal-question case would not confer federal jurisdiction to enforce the

settlement agreement") (internal quotation marks and citation omitted).  The Kokkonen Court

further held that ancillary jurisdiction to enforce a settlement agreement in such circumstances

would exist "if the parties' obligation to comply with the terms of the settlement agreement had

been made part of the order of dismissal," whether by an express provision wherein the trial court

retained jurisdiction over the settlement agreement "or by [the trial court's having] incorporat[ed]

the terms of the settlement agreement in the order."  Kokkonen, 511 U.S. at 381.  Here, this

Court neither retained jurisdiction over the settlement agreement at issue, nor did it incorporate

the terms of the settlement agreement in its order.  See Order at 1 (stating "[a]s it appears the

parties have been able to resolve their dispute, it is . . . hereby ordered that this matter shall be

dismissed with prejudice").

Accordingly, it is hereby

**ORDERED** that the plaintiff's motion is DENIED.

**SO ORDERED** this 16th day of October, 2006.


_____
REGGIE B. WALTON
United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

THE CUNEO LAW GROUP, P.C., *et al.*,    )
                    )
             Plaintiffs,   )
                    )
          v.         )      Case No. 08-00253 (RBW)
                    )
JOEL D. JOSEPH,           )
                    )
            Defendant.   )
                    )

## AFFIDAVIT OF SAMUEL J. DUBBIN

I, SAMUEL J. DUBBIN, make the following statement under penalty of perjury:

1.    I am a lawyer licensed to practice in the State of Florida, and I am admitted to practice in several courts including the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Second Circuit Court of Appeals.   I am President of Samuel J. Dubbin, P.A., which is a partner in the Miami law firm of Dubbin & Kravetz, LLP.   I am over the age of 21, have personal knowledge of the facts and events recited below and could, if called to testify, attest to the same.

2.    I served as counsel for the plaintiffs in the case known as the *Gold Train* case (*Rosner v. United States*, Case No. 01-1859 (S.D.FL.)), along with Jonathan W. Cuneo and Steve W. Berman, and our respective law firms.  The *Gold Train* case was filed on May 7, 2001.

3.    The *Gold Train* case was settled on April 7, 2005, after nearly four years of hard-fought litigation.  On September 30, 2005, the U.S. District Court for the Southern District of Florida issued its Final Order and Judgment ending the adversary litigation phase of the case.  The *Gold Train* settlement agreement, which was approved

1

by the Court, provided that the settlement funds would be disbursed on behalf of the class over a period of five years to provide social welfare benefits to Hungarian Jewish Holocaust survivors in need throughout the world. The Court maintained continuing jurisdiction over the case to oversee the implementation of the settlement agreement. My co-counsel and I also had continuing obligations over the five year implementation period to supervise the escrow agent and its management and disbursement of the settlement fund, to provide oversight of program administration and the application of settlement proceeds for survivors in the class, to respond to inquiries from class members, as well as other aspects of settlement implementation.    Subsequent to the final approval of the settlement, and notwithstanding that the District Court's docket reflects that the case was "CLOSED" on September 29, 2005, class counsel have had numerous continuing obligations. The District Court, my co-counsel, and I have continued to exert substantial efforts on behalf of the class and will continue to do so without further compensation, until the settlement implementation is complete.

4.    Pursuant to the Court's final order, Mr. Cuneo was authorized to receive $3.85 million as payment for all attorneys' fees and expenses of the three firms involved. The Court authorized him to make an equitable allocation among the three law firms involved. Mr. Cuneo received a wire transfer of that amount on January 3, 2006 from the Defendant. After deduction of expenses (including a $50,000 reserve held for future expenses during the implementation of the settlement), Mr. Cuneo's firm received a 40% share amounting to $1,204,478.00 and Hagens Berman and my firm each received 30% shares. Mr. Cuneo and I mutually agreed upon this allocation, even though Mr. Cuneo's firm's contribution to the prosecution of the case up to that point was somewhat more

2

than 40% and my firm's was somewhat less.[1]  We did so because it was contemplated

that there would be considerable future work involved in supervising implementation of

the settlement over the next five years for which we would receive no further

compensation, and it was agreed between us that I would take the leading role among

class counsel with respect to such supervision.   It made sense for me to play that role

because of my proximity to the Court, my close and continuing relationship with several

of the most active class representatives who reside in South Florida, my particular

experience representing Holocaust survivors in general and dealing with the problems of

social service delivery to survivors, and my knowledge of the entity charged by the

Court with disbursing the settlement funds, an organization known as the Conference on

Jewish Material Claims Against Germany, Inc.

     5.     Shortly after receiving our share of the attorneys' fees I received a

communication from Joel D. Joseph on January 10, 2006, demanding a "finders fee"

amounting to 20% of the fees we had received based on his purported role in "creating"

the *Gold Train* case.   After Mr. Joseph's unwarranted demands were refused he sued me

and Mr. Berman and our firms in the Miami district court, claiming one third of the fees

we had received.  This meritless action by a former employee of Mr. Cuneo's had the

potential to seriously disrupt my relations with my co-counsel to the detriment of our

ongoing responsibilities in the *Gold Train* case.  Had I had to expend time and money

defending Mr. Joseph's frivolous suit it would have imposed an unfair and unwarranted

---

[1]     It is worth noting that our firms' fee request sought, and the court awarded, a sum
representing approximately 60 percent of our investments of time and labor in the case.
As noted in our fee request, we chose to seek this reduced amount in order to preserve a
larger amount of the settlement corpus to provide basic social services for the thousands
of impoverished Hungarian Holocaust survivors who would receive benefits from the
settlement.

burden on me and my firm and potentially required a reallocation of responsibilities that had been agreed to by Mr. Cuneo and me as most beneficial to the class. To avoid such disruption, Mr. Cuneo agreed to indemnify me and Mr. Berman and our firms and retained counsel in Miami to defend the action.

6.    As it was, despite Mr. Cuneo's indemnification agreement, I was still forced to spend substantial time and resources working with counsel to defend the action. Counsel moved to dismiss the complaint on April 14, 2006. The District Court issued an order on July 13, 2006, dismissing the complaint with the right to replead if additional facts were available. Mr. Joseph then filed an amended complaint. Counsel again moved to dismiss and the District Court issued an order on December 22, 2006, dismissing the case with prejudice. After the District Court's dismissal Mr. Joseph appealed to the Eleventh Circuit. To avoid wasting further time and resources, Mr. Berman and I agreed to settle the case for a nominal sum, which was provided by Mr. Cuneo pursuant to his indemnification agreement. The terms of that settlement were confidential, although I understand Mr. Joseph breached the confidentiality provision by publicly revealing the amount of the settlement in a recent filing in this Court.

I make the foregoing statement under the penalty of perjury.

March 27, 2008

SAMUEL J. DUBBIN

4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

THE CUNEO LAW GROUP, P.C., *et al.*,    )
                                        )
                        Plaintiffs,     )
                                        )
            v.                          )    Case No. 08-00253 (RBW)
                                        )
JOEL D. JOSEPH,                         )
                                        )
                        Defendant.      )
_____    )

## DECLARATION OF DAVID W. STANLEY

I, DAVID W. STANLEY, make the following statement under penalty of perjury:

1.    I am a lawyer licensed to practice in the District of Columbia and elsewhere and am of counsel to the firm Cuneo Gilbert & LaDuca, LLP.  I am over the age of 21, have personal knowledge of the facts and events recited below and could, if called to testify, attest to the same.

2.    Attached hereto as Exhibit A is a true and correct copy of Defendants' S.D. Fla. Local General Rule 3.9D Notice of Similar Action, filed in the case of *Joseph v. Dubbin et al.*, No. 06-20464 (S.D. Fla.).

3.    Attached hereto as Exhibit B is a true and correct copy of Order Transferring Case in the case of *Joseph v. Dubbin et al.*, No. 06-20464 (S.D. Fla.).

4.    Attached hereto as Exhibit C is a true and correct copy of the docket in *Joseph v. Dubbin et al.*, No. 06-20464 (S.D. Fla.).

5.    Attached hereto as Exhibit D is a true and correct copy of Joel Joseph's Motion for an Award of Attorney's Fees and/or a Representative Plaintiff Fee filed in *In re: MCI Non-Subscriber Telephone Rates Litigation*, No. MDL 1275 (S.D. Ill.).

1

6.     Attached hereto as Exhibit E is a true and correct copy of a Memorandum and Order in *In re: MCI Non-Subscriber Telephone Rates Litigation*, No. MDL 1275 (S.D. Ill.).

7.     Attached hereto as Exhibit F is a true and correct copy of a Memorandum and Order in *In re: MCI Non-Subscriber Telephone Rates Litigation*, No. MDL 1275 (S.D. Ill.).

I make the foregoing statement under the penalty of perjury.

April 21, 2008

DAVID W. STANLEY

2

# EXHIBIT A

Case 1:08-cv-00253-RBW    Document 21-5    Filed 04/24/2008    Page 4 of 69

Case 1:06-cv-20464-PAS    Document 7    Entered on FLSD Docket 04/14/2006    Page 1 of 42    D.C.

FILED by
ELECTRONIC

**Apr 14 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-20464-Civ-Graham/O'Sullivan

JOEL D. JOSEPH,

      Plaintiff,

vs.

SAMUEL J. DUBBIN, et al.,

      Defendants.

_____/

### DEFENDANTS' S.D. FLA. LOCAL
### GENERAL RULE 3.9.D NOTICE OF SIMILAR ACTION

Defendants Samuel J. Dubbin, Samuel J. Dubbin, P.A., Dubbin & Kravetz, LLP, Steve W.

Berman and Hagens Berman Sobol Shapiro, LLP ("Defendants") respectfully notify the Court of the

pendency of a similar action as required by S.D. Fla. Local General Rule 3.9.D and hereby request

the Court transfer this action to the docket of The Honorable Patricia A. Seitz, who has reserved

jurisdiction over the case of *Rosner v. United States*, Case No. 01-1859-Civ-Seitz, out of which this

case arises.

Local General Rule 3.9.C provides that :

> [w]henever an action or proceeding is filed in the Court which
> involves subject matter which is a material part of the subject matter
> of another action or proceeding then pending before this Court, or for
> other reasons the disposition thereof would appear to entail the
> unnecessary duplication of judicial labor if heard by a different Judge,
> the Judges involved shall determine whether the newly filed action or
> proceeding shall be transferred to the Judge to whom the earlier filed
> action or proceeding is assigned.

Case No. 06-20464-Civ-Graham/O'Sullivan

As set forth in paragraph 1 of his Complaint, Plaintiff alleges that this case is "an action for damages for quantum meruit and unjust enrichment for failure to pay a referral fee for a lawsuit [allegedly] created by plaintiff." The lawsuit to which Plaintiff refers in paragraph 1 of his Complaint is identified in paragraph 11 and, in fact, is *Rosner v. United States*, Case No. 01-1859-Civ-Seitz.

Judge Seitz has presided over the *Rosner* case from its inception in May 2001 until final approval of its settlement in September 2005, and is intimately familiar with the details of all aspects of the litigation, including the role and contributions of the various counsel involved. Indeed, as part of the final settlement approval, Judge Seitz reviewed the attorneys' fee request and approved the requested fee award pursuant to Fed.R.Civ.P. 23(h). *See* Final Order and Judgment, *Rosner v. United States*, Case No. 01-1859, entered September 30, 2005, at 20-22 (attached hereto as Exhibit A).

Although the *Rosner* case is closed for administrative purposes, Judge Seitz "retain[ed] exclusive and continuing jurisdiction over the Action, all Parties, the Claims Conference and Settlement Class Members, to interpret and enforce the terms, conditions and obligations of this Final Order and Judgment, including all matters relating to the consummation, performance and enforcement of the Settlement Agreement." *Id.* at 22. Thus, the *Rosner* case, despite its administrative closure, remains "pending" before Judge Seitz. Indeed, Judge Seitz continues to preside over the case and issue orders, including orders regarding the allocation and distribution of attorneys fees. *See* Order Granting Joint Motion for Order on Settlement Implementation, *Rosner*

- 2 -

Case No. 06-20464-Civ-Graham/O'Sullivan

*v. United States*, Case No. 01-1859, entered on December 22, 2005, at 2 (attached hereto as

Exhibit B).

Even if the *Rosner* case were not considered "pending" for purposes of Local Rule 3.9.C,

there is no question that Judge Seitz's familiarity with that case, including the role and contributions

of the various counsel involved and the attorneys' fee award, would result in the avoidance of

unnecessary duplication of judicial labor if this case were to be transferred to Judge Seitz's docket.

Consequently, Defendants respectfully request this case be transferred to Judge Seitz's

docket. A proposed order is attached as Exhibit C for the Court's consideration and convenience.

Dated: April 14, 2006          Respectfully submitted,
        Miami, Florida

                                    s/    Brian F. Spector
                               Brian F. Spector (Florida Bar No. 261254)
                               E-mail: bspector@kennynachwalter.com
                               Ismael Diaz (Florida Bar No. 575771)
                               E-mail: id@kennynachwalter.com
                               **KENNY NACHWALTER, P.A.**
                               201 South Biscayne Boulevard
                               1100 Miami Center
                               Miami, Florida 33131-4327
                               Telephone: (305) 373-1000
                               Facsimile: (305) 372-1861
                               **Attorneys for Defendants Samuel J. Dubbin,
                               Samuel J. Dubbin, P.A., Dubbin & Kravetz, LLP,
                               Steve W. Berman and Hagens Berman Sobol
                               Shapiro, LLP**

<u>**Certificate of Service**</u>

**I hereby certify** that a true and correct copy of the foregoing was served by United States
mail on April 14, 2006 on all counsel or parties of record on the attached Service List.

                                    s/    Brian F. Spector
249352.1                       Brian F. Spector

- 3 -

# SERVICE LIST

**Joseph v. Dubbin, et al.**
**Case No. 06-20464-Civ-Graham/O'Sullivan**
**U.S. District Court, Southern District of Florida**

Plaintiff Joel D. Joseph
7272 Wisconsin Avenue
Suite 300
Bethesda, Maryland 20814
Telephone: (301) 941-1989

Brian F. Spector, Esq.
E-mail: bspector@kennynachwalter.com
Ismael Diaz (Florida Bar No. 575771)
E-mail: id@kennynachwalter.com
Kenny Nachwalter, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
**Attorneys for Defendants Samuel J. Dubbin, Samuel J. Dubbin, P.A., Dubbin & Kravetz, LLP, Steve W. Berman and Hagens Berman Sobol Shapiro, LLP**

- 4 -



# EXHIBIT A

**CLOSED
CIVIL
CASE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 01-1859-CIV-SEITZ



IRVING ROSNER; EDITH KLEIN AMSTER;       )
FRANCISC BASCH; VERONIKA BAUM; ALICE     )
BESSENYEY; ELIZABETH BLEIER; ERWIN       )
DEUTSCH; DR. JOSEPH A. DEVENYI; PETER    )
DREXLER; BARUCH EPSTEIN; MAGDA FEIG;     )
MICHAEL FRIED; PAUL GOTTLIEB; JUDITH     )
KARMI; ETHEL KLEIN; MILDRED KLEIN;       )
TAMÁS MAY; DAVID and IRENE               )
MERMELSTEIN; EDITH MORE; JOHN J.         )
RAKOS; GEORGE RASKO; ANA ROSNER;         )
GEORG MOSHE SCHWARZ, ESTATE OF           )
GEORGE SEBOK; DR. LASZLO SOKOLY and      )
EDITH REINER; AGNES V. SOMJEN; OLGA      )
STEINER; JONAS K. STERN; IRENE and       )
ANDREW TIBOR; AGNES VADASZ; and          )
ZOLTAN S. WEISS, on behalf of themselves and all  )
others similarly situated,               )
                                         )
                        Plaintiffs,      )
                                         )
        v.                               )
                                         )
UNITED STATES OF AMERICA,                )
                                         )
                        Defendant.       )
                                         )
                                         )

### FINAL ORDER AND JUDGMENT

This matter is before the Court on the Motion for Final Approval of the Class Action Settlement (the "Motion for Final Approval") [DE 228] and the Verified Joint Petition for an Award of Attorneys' Fees and Expenses and Motion for Modest Incentive Payments to Plaintiffs (the "Fee Petition") [DE 212]. On April 8, 2005, the Court issued an order preliminarily approving the Settlement Agreement[1] and scheduling a Final Fairness Hearing for September 26, 2005, to determine whether the Settlement Agreement with the United States ("Defendant") is fair, reasonable, and adequate and to determine an award of attorneys' fees and

---

[1] The Settlement Agreement's provisions are incorporated herein by reference.

expenses and incentive payments to Plaintiffs.[2]

At the Final Fairness Hearing, the Court heard argument and/or comments from Class Counsel, Defendant, the Notice Provider, interested parties, and several Class Members, either personally or through counsel. Furthermore, the Court has read and considered the Settlement Agreement, the Notice Plan, the Plan of Distribution and Proposed Detailed Plan of Allocation (the "Plan of Distribution" and "Plan of Allocation"), the Fee Petition, the Motion for Final Approval, the Declaration of Gideon Taylor, on behalf of the Notice Provider, and the objections and comments to the Settlement filed by various Class Members. Thus, upon review of these documents and all other relevant portions of the record, and for the reasons stated at the Final Fairness Hearing and as set forth below, the Court grants the Motion for Final Approval and the Fee Petition.

## I.    BRIEF PROCEDURAL BACKGROUND OF THE CASE

Plaintiffs filed their initial Complaint in this Court on May 7, 2001. The Court sustained the Complaint, in part, on August 28, 2002. After conducting extensive jurisdictional discovery, Plaintiffs then filed their First Amended Complaint on October 31, 2003. After Defendant moved to dismiss the First Amended Complaint and after Plaintiffs moved for class certification, on December 20, 2004, the parties announced that they had reached an agreement in principle to settle the case. Thereafter, on April 8, 2005, the Court preliminarily approved the Settlement, certified a settlement class, and directed notice of the settlement to the class worldwide.

## II.    BRIEF FACTUAL BACKGROUND OF THE CASE[3]

Beginning in April 1944, valuable personal property belonging to the Jewish population of Hungary was confiscated by the Hungarian government. In late 1944, a portion of the confiscated property was loaded

---

[2] Capitalized terms used in this Order have the meaning assigned to them in the Settlement Agreement, Preliminary Approval Order, and Class Notice.

[3] The Brief Factual Background is based generally upon the allegations in the First Amended Complaint.

2

on a train and taken to Austria where it ultimately fell into the hands of the U.S. Army on May 11, 1945. Before arriving in Austria, however, a significant portion of the valuable property from the train was off-loaded to trucks and taken to French-occupied Austria. This portion of the Gold Train Property never came into U.S. custody. The property on the train that did come under U.S. custody was placed in a warehouse under U.S. Army control in Salzburg, Austria, where some of it was "requisitioned" by senior U.S. Army officers and stolen by U.S. Army enlisted personnel and others. Subsequently, the U.S. Government claimed that the property could not be identified as to ownership or national origin, and thereafter turned the bulk of the remaining property over to the Inter-Governmental Committee on Refugees which auctioned some of the property in New York City in 1948-1949. Despite the efforts of the Hungarian Jewish community to secure the return of the Gold Train Property, none of the property was ever returned by the United States to its rightful owners. On October 7, 1999, the Presidential Advisory Commission on Holocaust Assets in the United States published its Progress Report On: The Mystery of the Hungarian "Gold Train," in which the United States, for the first time, publicly revealed its role in the receipt, handling, and disposition of the Gold Train Property.

## III.    JURISDICTION AND CLASS CERTIFICATION

This Court has subject matter and personal jurisdiction over this case and the Parties. The Court finds, and holds, that one or more of the Class Representatives has Article III standing. Thus, based on the foregoing, the Court has jurisdiction to enter a final order and judgment adjudicating the claims of the entire Class. See Newberg on Class Actions, § 2:5. at 75 (4th ed. 2002).

In addition, pursuant to Fed. R. Civ. P. 23, the following Settlement Class is certified for purposes of final settlement:

> all Persons who have claimed or at any time could claim any interest in the Gold Train Property, as defined in the Settlement Agreement, including without limitation, all Persons whose personal property was taken, seized, confiscated, or stolen by the Hungarian government and/or its officers, employees, or agents pursuant to Decree 1600 of 1944, Decree 8306 of 1944, or any

3

similar law, policy, or practice, and all heirs, estates, assigns, and survivors of such Persons.

Moreover, for the reasons stated in the Court's April 8, 2005, Order, which are incorporated herein by reference, the Court finds that, for the purpose of the Settlement Agreement, the requirements of Fed. R. Civ. P. 23 are satisfied, and that a Class Action is an appropriate method for resolving the disputes in this litigation.

## IV.    THE SETTLEMENT AGREEMENT

Plaintiffs have presented to the Court a global settlement on behalf of all people who have claimed or in the future do claim any interest in the Gold Train Property, including all Hungarian Holocaust survivors and their heirs. The terms of the Settlement Agreement are set forth below.

### A.    The Settlement Fund

The Settlement creates a Settlement Fund of $25.5 million which shall be deposited by Defendant into an interest bearing escrow account within 30 days of Final Approval of the Settlement, including resolution of all appeals of the Final Order and Judgment. Of this amount, approximately $21 million will be disbursed as described in the Plan of Allocation, under the Court's supervision and control. The Settlement does not call for individual distributions to all Class Members as compensation. Rather, the funds will be used for the direct provision of social services and humanitarian relief to eligible Victims of Nazi Persecution who are in need as defined in the Settlement Agreement. The Special Fund will be allocated to countries pro rata based on Professor Randolph Braham's estimate of the numbers of Hungarian Holocaust survivors residing in each particular country today.[4]

### B.    Non-Monetary Benefits

In addition to the monetary distributions through humanitarian and welfare agencies, the Settlement contains substantial non-monetary relief which will benefit all Class Members. For example, $500,000 from the Settlement Fund shall be designated for an entity chosen by a panel of experts to collect papers and

---

[4] In addition to the creation of the Settlement Fund, the Defendant also agreed to bear all costs of notice to the Class up to $1 million.

4

materials related to the receipt, handling, and disposition of the Gold Train Property. Moreover, the Settlement also calls for an acknowledgment from the United States relating to its role in the handling of the Gold Train Property.

## V.     CLASS NOTICE AND SETTLEMENT ADMINISTRATION

On April 8, 2005, the Court approved the Notice Plan. That plan, as the Court has found. See April 8 Order at 14-15, comports with all the requirements of applicable law. Rule 23, and due process. See Declaration of the Notice Provider, filed on or about September 15, 2005; Submission of Claims Conference Comments on Items to be Considered at the Final Fairness Hearing on September 26, 2005. filed on or about September 23, 2005.

Specifically, on or about May 2, 2005, the Notice Provider sent by direct mail to over 49,600 individual addresses a copy of the Long-Form Notice. These 49,600 individuals reflect all members of the Settlement Class for whom the Notice Provider and Class Counsel possessed addresses (or whose addresses were reasonably obtainable). Additionally, there were approximately 825 re-mails of notices returned by reason of an incorrect address. Notice was also be given by publication in 25 countries in 125 different publications. According to Professor Braham, the countries where notice was published are the countries where eligible victims and other Class Members are reasonably believed to reside. See Braham Report, attached to Plan of Distribution, Exhibit B to Settlement Agreement. Additionally, a multi-language website provided Class Members with notice of the Settlement, the Settlement Fund, the Special Fund, the Plan of Allocation, the Non-Monetary Relief, the date of the Fairness Hearing, the requested attorney fees and incentive awards, and other essential information that would enable a Class Member to make an informed decision regarding his or her rights. Moreover, the Notice Provider manned specified 1-800 numbers (or the international equivalent thereof) to answer questions and provided additional written materials (including the

5

Court-approved FAQ) to an additional 3,500 individuals.[5]

Thus, the Court finds that the published notice, direct mailing of notice, and Internet posting constituted the best notice practicable under the circumstances regarding the Settlement, Class Counsel's Fee Petition, the Plan of Distribution and Plan of Allocation, the date of the Fairness Hearing, and other matters set forth in the Class Notice and the Summary Notice. The notice constituted valid, due, and sufficient notice to all members of the Settlement Class, and complied fully with the requirements of Fed. R. Civ. P. 23(c)(2)(B), the Constitution of the United States, and other applicable laws.

**VI.    OPT-OUTS AND OBJECTORS**

Under the Settlement Agreement, any persons who wished to be excluded from this Settlement were provided a 90-day opportunity to "opt out" pursuant to the Notice, which was executed in accordance with the Court's direction and Order. The Court finds that those individuals whose names (a total of 100 Nazi Victims and 62 Heirs ) are listed in Exhibit A to this Final Order and Judgment have validly excluded themselves from this Action, and accordingly, they have no rights under the Settlement Agreement, and shall not be bound by either the Settlement Agreement or the final judgment herein.  Despite the number of Nazi Victims who excluded themselves from the Settlement, Defendant has chosen not to exercise its rights to withdraw from or reduce its cash payment to the Settlement Fund under Paragraph XI of the Settlement Agreement.[6]

In addition, the Court received a total of 356 objections to the Settlement. Any Class Member who did not timely file and serve an objection in writing to the Settlement Agreement, or to Class Counsels' Fee

---

[5] In addition, the Court notes that the Notice Provider generated additional notice through earned media, organizational outreach, and e-mail bulletins, and that Class Counsel and the Plaintiffs provided further notice through their efforts to meet and speak with the media and other potential Class Members.

[6] The Court has reviewed the Request to Reject the Joint Motion for Order of the Plaintiffs and the Defendant and to Confirm the Rejection of Settlement by the Members of the Organization for the Assertion of Rights of Hungarian Jews filed by Mr. Barak Ben-Amos, Chairman of the Organization for the Assertion of Rights of Hungarian Jews. For the reasons stated in the parties' Joint Motion for Order Addressing Certain Correspondence Received by Notice Provider and the Court's September 12, 2005, Order, Mr. Barak Ben-Amos *only* is excluded from the Settlement.

6

Petition, in accordance with the procedure set forth in the Class Notice and mandated in the Preliminary Approval Order, is deemed to have waived any such objections by appeal, collateral attack, or otherwise.

**VII.    STANDARD OF REVIEW**

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e).  The Federal Rules of Civil Procedure contemplate a multi-step process for approving a class settlement.  The Court is now at the second stage in that process, as the Court already made a preliminary fairness determination, found that the settlement class satisfies the requirements of Rule 23 and certified the class, and approved the dissemination of notice, which has occurred.  In this step, the Court must determine whether the interests of the Class will be better served by the proposed resolution or by continuation of the litigation.

There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.  Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977);[7] Ass'n for Disabled Ams., Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002).  A class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties."  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).  Moreover, where the settlement previously has been preliminarily approved, the settlement is "presumptively reasonable," and an objector must overcome a "heavy burden" to prove the settlement is unreasonable. Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir.1983) (citations omitted).  In determining whether the settlement is fair, adequate, and reasonable, the Court must consider all relevant factors, including (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved.  Bennett, 737 F.2d at 986; Cotton, 559 F.2d at 1330-31.

---

[7] The Eleventh Circuit, in the en banc decision of Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent all decisions of the Fifth Circuit rendered before October 1, 1981.

7

In evaluating these considerations, the Court must not try the case on the merits. Cotton, 559 F.2d at 1330. Rather, the Court must rely upon the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Id. (citation omitted). In evaluating a settlement's fairness, "it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" Id. (quotation omitted). Moreover, a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness. See id. at 1331. "Above all, the court must be mindful that 'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" Ruiz v. McKaskle, 724 F.2d 1149, 1152 (5th Cir. 1984) (quoting Cotton, 559 F.2d at 1330).

## VIII.   ANALYSIS

As discussed below and at the Final Fairness Hearing, a review of the relevant factors leads to the conclusion that this Settlement is fair, reasonable, and adequate and is not the product of overreaching by, or collusion between, the negotiating parties. Therefore, the Court grants the Motion for Final Approval.

### A.   All Relevant Factors Weigh In Favor Of Approval

1.   The likelihood of success at trial: The strength of the case and the risk, expense, complexity and likely duration of further litigation militate in favor of final approval

The parties vigorously disputed the factual and legal merits of the instant case, and thus the uncertainties and litigation risks weigh strongly in favor of a finding that the Settlement is fair, adequate, and reasonable. Indeed, Plaintiffs faced considerable risks with respect to Defendant's 12(b)(6) arguments in their Motion to Dismiss as well as with class certification for litigation purposes. Thus, the uncertainties of litigation and the risk of not certifying a litigation class weigh in favor of a compromise settlement. See West Virginia v. Chas. Pfizer & Co., Inc., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), aff'd, 440 F.2d 1079 (2d Cir. 1971).

8

Additionally, avoiding the delay and risk of protracted litigation is itself a legitimate reason for counsel to recommend, and the courts to approve, a settlement. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). This is especially true in this case, as many Class Members are elderly and infirm and in need of the benefits offered by the Settlement now. After already four years of pre-trial motion practice and jurisdictional discovery, it is difficult to imagine that the Class Members would have obtained a significantly greater recovery at trial, and to the extent one might be obtained, the expense of doing so would be great. Further, the voluminous record and the papers and pleadings already developed in this case speak loudly to the likelihood of added layers of complexity and the concomitant time required to press the case all the way to trial.

Lastly, had the matter gone to trial, additional post-trial appeals likely would have delayed recovery and thereby reduced the benefits of an ultimate victory for the Class, many of whom are elderly and in need of money, closure, and a historical reckoning now. Thus, in the end, the value of the Settlement is enhanced greatly by the fact that the relief will be provided to Class Members now, without the delay, burden, and risks of further litigation. This factor weighs heavily in favor of final approval.

> 2.   **$25.5 million is a reasonable recovery for the value of the property on the Gold Train when the United States accepted custody**

With respect to the second factor, the Court finds that the Settlement provides substantial monetary benefits and is therefore a reasonable recovery. Although there have been many widely-varying estimates of the value of the property on the Gold Train, both contemporaneous and recent, the fact is that no inventory was ever made of the property, much less a detailed appraisal, and therefore any estimate of value is somewhat speculative. According to Plaintiff's expert, Gábor Kádár, the value of the train at the time the U.S. obtained custody was approximately $4.5 to $9 million dollars, or approximately $45 to $90 million today. Taking the mid-point of his range, or $67.5 million, the Settlement represents a return of more than 37% of the total value

9

of the property on the train at the time the U.S. obtained custody.[8]  Such a settlement is fair and reasonable.

See Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 543 (S.D. Fla. 1988) (approving settlement of 5.7%

desired recovery); Strube v. Am. Equity Investment Life Ins. Co., 226 F.R.D. 688, 698 (M.D. Fla. 2005)

(approving settlement equal to 2% of estimated potential recovery).[9]  Accordingly, given the substantial

factual and legal hurdles that Class Members needed to overcome before any recovery, the discounted

compromise figure of $25.5 million represents a fair and reasonable, indeed outstanding, result.

        3.     The reaction of Class Members indicates overwhelming approval for the Settlement

A vast majority of Class Members have expressed a willingness to approve the Settlement, which

weighs heavily toward this Court's decision to approve the settlement.  Cotton, 559 F.2d at 1331 (holding

that a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's

fairness and reasonableness).  In a class numbering approximately 60,000 Victims of Nazi Persecution (as

defined in the Agreement) and tens if not hundreds of thousand additional heirs, approximately 100 victims

of Nazi persecution and 62 heirs timely requested exclusion and only 356 separate objections were received

by the Notice Provider.  Accordingly, this factor also weighs heavily in favor of final approval.

        4.     The stage at which Settlement was obtained:  The extensive independent and formal
              discovery conducted by Class Counsel indicate that Counsel was well-versed and
              sufficiently informed to enter into this Settlement

Class Counsel negotiated the instant Settlement with wide knowledge of the relevant facts and law.

See generally Decl. of Jonathan W. Cuneo in Support of Fee Petition.  Indeed, the Settlement was only

reached after four years of litigation, including extensive jurisdictional discovery.  The fact that Class Counsel

was well acquainted with the facts and law, the strengths and weaknesses of the case, and had undertaken

---

[8]  Moreover, according to Defendant, the recovery here might come close to 100%.  See e.g., Letter from Daniel Meron to Moshe Sanbar, July 11, 2005 (noting that most of the property the U.S. obtained was auctioned for approximately $2.17 million (1948 dollars), or $21.7 million in today's dollars).

[9]  For the same reasons, the Court rejects the arguments of certain objectors that contend that the settlement amount was insufficient.  See e.g. Objectors/Commentators Nos. 10, 11, 20, 48, 132, 154, 179, 255, 297, and 298.

substantial discovery, strongly supports the conclusion that the Settlement is fair and reasonable.

> 5.    Good faith, arms-length negotiations between experienced counsel and the absence of collusion also support final approval of the Settlement

As noted above, courts also examine the process by which a class action settlement was reached in order to determine that it was not the product of fraud or overreaching by, or collusion between, the negotiating parties. Cotton, 559 F.2d at 1330. Here, the absence of evidence that the Settlement is the product of anything other than arm's-length negotiations among counsel for the parties, and was not the product of collusion or any improper influences, clearly supports approval of the Settlement as final. See September 23, 2005, Letter from Mediator Fred F. Fielding. In point of fact, the Settlement was reached only after intensive negotiations conducted over the course of several months, extensive document discovery, and expert consultations that refined the parties' respective assessments of the risks of the litigation. See Preliminary Approval Memorandum at 8; Decl. of Jonathan W. Cuneo in Support of Fee Petition ¶¶ 77-90. Until the settlement papers were finally signed, counsel for both parties zealously represented their clients' interests every step of the way. Accordingly, the non-collusive negotiation and advantageous Settlement obtained also strongly militate in favor of final approval.

**B.    No Objection Establishes That The Settlement Is Anything But Fair And Reasonable**

Although the Court preliminarily approved the Settlement, and though the Settlement is presumptively reasonable, under Rule 23 class members have a right to object and/or comment on the settlement and try to convince the Court otherwise, if they are so inclined. After reviewing the approximately 356 objections, however, the Court finds that the Settlement is fair and reasonable.

> 1.    The lack of direct payments to all Class Members does not render the Settlement unfair as a cy pres remedy is proper

The most prevalent objection made by Class Members is that individuals should receive direct payments, rather than have the funds distributed for the benefit of Hungarian Nazi victims in need through

11

designated social service agencies. This objection is mentioned by more than 300 of the 356 objections,[10] and is by far the principal objection asserted. Some of the objectors urged that they be compensated for all of the specific property that they lost, while most recommended that the funds be divided equally and distributed pro rata to each Hungarian survivor. Though this objection has strong emotional and logical attraction, the failure to include individual payments as part of the Settlement does not render it legally unfair or unreasonable.

> a.    *Compensation for Specific Property*

The question of which Class Members might receive a direct payment is a complex question without an easy answer. Some of the objections urged direct compensation "for those who possess official documents." See e.g. Objections/Comments Nos. 125, 140, 189, 307. The shortcoming to this process is that it penalizes those who after 60 years lack documentation. Given the horrific hardship and dislocation suffered by those who survived the Holocaust, requiring such documentation to share in the proceeds of the Settlement justifiably would invite a large degree of fair criticism. Furthermore, to complicate the issue, Decree 1600 receipts and other forms of official documentation do not necessarily evidence that the property was on the Gold Train when the U.S. obtained custody. Thus, possession today of such documentation does not, by itself, differentiate those who had property on the Gold Train when the U.S. accepted custody from those who did not.

Finally, the last, and perhaps most glaring problem with this process is that according to Plaintiffs' experts, most if not all of the Decree 1600 receipts issued are still retained in the Hungarian archives; an archive that has severely restricted access. See Affidavit of Gábor Kádár ¶66. Therefore, giving priority (either in order of payment or amount) to victims who could produce receipts today, or who had other

_____

[10] See e.g. Objections/Comments 1, 2, 4-8, 11-19, 21-25, 27-30, 32-47, 49-60, 62-68, 72-73, 75-108, 111, 113-124, 126-133, 135-138, 140-143, 146-150, 152-161, 166, 168, 172-182, 184-201, 203-213, 215-228, 230-240, 243-248, 250-268, 270-300, 302-306, 308-315, 318-327, 329-330, 333-335, 337-340, 342-344, 346-348, 350, 354-356.

12

contemporaneous evidence of their families' belongings in Hungary, would make recovery under the

Settlement too dependent on the happenstance of record availability, and under the circumstances would be

unjust.

### b. *Equal Payments To All Class Members*

Perhaps recognizing the shortcomings of relying on documentation, other objectors – indeed most

objectors – argued for a process of equal payment to each Class Member. While this option has the

appearance of simplicity and ease of administration, upon closer scrutiny this approach in a case based upon

a bailment theory is problematic. For example, Class Members include heirs who are theoretically entitled

under the law to share in any restitution given for property unlawfully taken from their fathers and mothers.

Unfortunately, however, the cost of ascertaining who is entitled to payment under the laws of inheritance

might well deplete the Settlement Fund or result in mere token payments to Class Members, and/or take years

to accomplish. See In re Holocaust Victim Assets Litig. ("Swiss Bank"), 2005 WL 2175955 (2d Cir. Sept.

9, 2005) (citation omitted) (noting that a cy pres allocation was proper because a case-by-case valuation of

claims to the looted assets "would have resulted in an unwieldy and enormously expensive apparatus," and

"[a] pro rata distribution would have resulted in the payment of literally pennies to each of the millions of

individuals who would fall into' the Looted Assets Class.").[11]

Indeed, the overwhelming proportion of the Class supported the choice made and the Settlement.

The rationale was eloquently expressed by Mr. Rosner, Mr. Moskovic, Mr. Schwarz, Mr. Rubin, and Mr.

Mermelstein who addressed this Court at the Preliminary Approval Hearing. The prevailing view of Plaintiffs

and other members of the Settlement Class, including heirs, was that this cy pres distribution would provide

more meaningful benefits than one that delivered a truly token and trivial amount to all. As Irving Rosner

---

[11] In addition, this objection assumes that $25.5 million is available to distribute. However, the United
States has made clear that it was not necessarily prepared to offer such amount of money if the parties utilized a
different allocation method. *See* Tr. from September 26, 2005, Final Fairness Hearing ("Final Fairness Hearing Tr.")
at 79 (stating, "there is no basis for an assumption that the amount would have been 25 million had this been a pro
rata distribution as opposed to one that is for the benefit of the needy survivors").

13

explained:

> We are satisfied that this settlement with the United States is the kind of result that
> many of us needed. I hope that the funds from this settlement will be distributed as
> fast and efficiently as possible. There are too many Holocaust survivors alive today
> who cannot take care of themselves with their own resources. That is why I support
> the settlement so Hungarian survivors can get much-needed help before it is too late.
> Many of us do not need the help, Your Honor, and are glad to see that the funds will
> be used for those who are truly in need today or will slip into this condition. Given
> the difficulties of the case and the time it would take to continue, we believe this
> outcome does the most good for the class.

See Tr. from March 17, 2005, Preliminary Approval Hearing ("Preliminary Approval Hearing Tr.") at 19.

In sum, considering all of the practical problems and proof problems associated with direct payments,

as well as the indignity associated with token payments, the Plan of Allocation is a fair and reasonable method

of achieving a meaningful payment with the Settlement Funds. Indeed, the Settlement and the negotiated Plan

of Allocation is fair, and in the best interests of the class as a whole.

    2.    <u>Objections to $500,000 for archival purposes do not indicate that the Settlement is
unfair</u>

A small number of Class Members objected to use of any funds for the creation of an archive to

document the Gold Train episode. As Plaintiffs explained at length in their Preliminary Approval

Memorandum, the archive to be created from this case advances in a vital way the Plaintiffs' goals of

obtaining a historic reckoning of the United States' conduct in regard to the Gold Train. The Class Members

who spoke at the Hearing on Preliminary Approval also mentioned the significance of this archive.[12] See

Preliminary Approval Hearing Tr. at 17, 24. Moreover, there is no evidence or precedent to suggest that

---

[12] As Mr. Schwarz stated:
I support this settlement to honor my family's memory and the memory of the Hungarian Jews who
suffered so much, to assist those who survived but find themselves in need, and to benefit those
who were not there but should not forget. The archiving and dissemination of information about
the Hungarian Holocaust is vitally important. . . . I do not wish to receive any monetary gains. All
I want is that the proceeds of this settlement will assure the historical truth about the participation
of various nations in my people's tragedy, so when we say NEVER AGAIN, those words will bear
their full meaning, weight and warning, and will resonate around the world to people of all races
creed and color.
See Declaration of Georg Moshe Schwarz, March 16, 2005, at 5.

14

attributing $500,000 of this Settlement toward an archival endeavor is unfair or unreasonable. To the contrary, the Swiss, Austrian, and German Holocaust settlements all devoted settlement funds to the enhancement of the historical record or creation of lasting memorials for the victims of the dead, or for education of future generations about the Holocaust.[13] Here, the $500,000 set aside for such a purpose is reasonable.

>    3.    Objections to any Claims Conference involvement in the administration of the
>           Settlement do not illustrate any unfairness

There are approximately four objections to the Claims Conference's playing any role in the administration of the Settlement Fund. These objections state that the Claims Conference is irresponsive to the needs of victims and that the Settlement Fund will be used to pay administrative expenses. See e.g. Objection No. 3. The Plan of Allocation, however, identifies the specific agencies through which the settlement benefits will be distributed; specifies the exact amounts that each agency will have at its disposal; explains that a local Advisory Committee will determine which humanitarian and/or emergency needs grants submitted by eligible victims will be honored; provides for annual reports of expenditures; allows Class Counsel to seek an audit of the Special Fund's administration; and places the organization under the jurisdiction of this Court, which is empowered to address any problems that may arise. Thus, these objections do not demonstrate that the Settlement is either unfair or unreasonable.

---

[13] In the Swiss Bank case, for example, the court approved an allocation of $10 million for the creation of a "victim list" through Yad Vashem to augment the existing database of Jews who perished in the Holocaust. See 2005 WL 2175955, at *5 n.11. The German Foundation Agreement provided DM 700 million for a "Future Fund" for education and remembrance projects to be determined by the German Foundation Trustees. See In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. 429, 434 (D.N.J. 2000). The Austrian Bank settlement provided for $2 million for an archive. In re Austrian and German Bank Litig., 80 F. Supp.2d 164, 170 (S.D.N.Y. 2000).

4.    Objections to percentage distributions contained in the Plan of Allocation

Two objectors ask the Court to reallocate a portion of the Special Fund so that Nazi victims in Hungary receive a greater share than was agreed to by the parties. See Objections Nos. 242 & 252.[14] Both contend in general terms, and without any supporting evidence or documentation, that the population of Nazi victims in Hungary are "needier" than those living in the United States and Israel. These objections will hereafter be referred to as "Reallocation Proposals."

Initially it must be noted that the Reallocation Proposals do not call into question the underlying fairness of the settlement, but rather suggest an alternate method for distributing the Settlement Fund among the relevant countries.[15]  First, Moshe Sanbar proposes re-allocating 10% of the Settlement Fund, or approximately $2.1 million, to Hungary. See Objection No. 242. This number, however, is not based upon any evidence, but rather was negotiated between the Confederation of Holocaust Survivors in Hungary, the Federation of Jewish Communities in Hungary, and the Association of Former Hungarian Jews in Israel under Mr. Sanbar's skilled leadership and guidance. See Final Fairness Hearing Tr. at 20. Similarly, Burt Neubone, on behalf of eleven class members residing in Budapest, objected to the "flawed allocation formula" that "should be modified to account for the disproportionately high concentration of needy class members in Hungary." See Objection No. 252. Mr. Neuborne initially suggested that the Court order the Notice Provider to conduct an investigation into the economic circumstances of the Class Members, as such information is not currently available, in order to determine the appropriate redistribution. However, as he did not know with any degree of certainty the time or costs associated with his proposed investigation, and because he did not want to delay the settlement, Mr. Neuborne later supported the proposal of Mr. Sanbar. See Final Fairness Hearing Tr. at 37.

---

[14]  Additionally, objections 171 and 323 argue that the Settlement should all go to Hungary, but do so for reasons that seem to misapprehend that the case is on behalf of the owners of the property who reside world-wide.

[15]  As stated by Moshe Sanbar at the Final Fairness Hearing, "I cannot challenge the fairness of the agreement because I was an initiator here." Final Fairness Hearing Tr. at 14.

16

There are multiple problems with both Mr. Neuborne's initial proposal and the 10% re-allocation plan suggested by Mr. Sanbar. First, as to Mr. Neuborne's initial proposal, Mr. Neuborne himself conceded that, "this is not a case where you want to spend scarce funds doing a person-by-person survey and census of every poor Hungarian victim around the world. That would be . . . an inefficient use of scarce funds." See id. at 38. Indeed, the Court finds that the time and costs associated with requiring an investigation into the economic status of the Class Members would outweigh any benefits to be gained by the Class Members living in Hungary.[16]

There are similar problems with Mr. Sanbar's 10% re-allocation plan. First, although Mr. Sanbar urges the Court to adopt his proposal, the Court cannot re-write the terms of the Settlement Agreement negotiated between the parties; rather, the Court's only option would be to condition its approval of the Settlement upon the parties' adoption of the 10% re-allocation plan. Thus, Mr. Sanbar's objection fails to consider the real possibility that the parties would not agree to such amendment. See Statement of Daniel Meron, Final Fairness Hearing Tr. at 83 (stating, "Now, I don't know what we would have done as a government if this would have been presented to us before we had an agreement, as we were negotiating the agreement."). Second, the Court hesitates to adopt a proposal not based on an evaluation of need, but on a percentage that was negotiated without the input of Class Counsel or Defendant, as such a plan would be vulnerable to intense criticism from the adversely affected members of the Class.

Finally, and perhaps most significantly, if the Court were to adopt Mr. Sanbar's plan, it would be required to provide re-notice to those Class Members adversely affected by the change, which is approximately 77% of the Class. See Nilsen v. York County, 382 F. Supp. 2d 206, 221 n.9 (D. Me. 2005) (stating, "[i]f the parties decide to amend the settlement to remove the cause for my disapproval, I would

---

[16] In addition, as discussed in the Final Approval Motion, any study designed to determine the "relative neediest" among the needy would be difficult, if not impossible, and fraught with subjectivity. At a minimum, such a study would have to take into account the cost of the specific services that would be subsidized by the Special Fund in each country, the kind, quality, and universal availability and utilization of social safety nets in the various countries, the general cost of living, currency exchange rates, and the like.

17

require a new opportunity for female class members who have filed claims to opt out. . . . I would require notice of the amendment and the opt-out right only to female class members who have already filed claims, because they are the only class members who would be negatively affected by such an amendment."); White v. Nat'l Football League, 836 F. Supp. 1458, 1468-69 (D. Minn. 1993) (requiring re-notice to those class members adversely affected by an amendment to the settlement agreement). Thus, in order to provide approximately $2.1 million dollars of additional social services to Class Members living in Hungary, the Court would first have to provide for re-notice and a second opt-out period, which would not only be costly and delay the ultimate distribution of the Settlement Fund to the Class, but could also potentially defeat the entire Settlement. As expressed by Class Counsel, "[n]ow, any rejection of the settlement could . . . make the process go backwards. We could lose, to the extent we have a consensus, that which we have. . . . And, of course, the consensus that we have been able to build so far has been very difficult, it has been fragile."[17] Final Fairness Hearing Tr. at 107-08. Thus, although Mr. Sanbar's proposal has appeal, the Court finds that it would be unfair and unreasonable to require the parties to adopt it at this stage of the proceedings.

In addition to the costly problems associated with the Reallocation Proposals, the Court finds that the current allocation system, based upon population, is fair and reasonable, as it is consistent with Plaintiffs' theory of the case.[18] As the gravamen of the First Amended Complaint is essentially a property claim, the parties chose to allocate the Settlement Fund equally among all living Class Members today. Notably, other courts have adopted cy pres allocations based on population proxies designed to benefit class members when individual damage determinations are too difficult or too costly. See West Va. v. Chas. Pfizer & Co., 314

_____

[17] Indeed, it is not even clear whether all of the named Plaintiffs would approve of an amended Settlement, as a number of them spoke eloquently at the Final Fairness Hearing in favor of the Settlement in its current form.

[18] That the Second Circuit approved the trial court's discretionary use of a different formula proposed by a Special Master in the Swiss Banks case does not compel a different result than the one agreed to by the Parties and preliminarily approved by this Court on April 8, 2005. While the Second Circuit did express dissatisfaction with an allocation system based upon population, the factual and procedural posture of that case varies greatly from the issues pertinent here.

18

F.Supp. 179, 185 (S.D.N.Y. 1970), aff'd. 440 F.2d 1079(2d Cir. 1970) (allocating an anti-trust settlement pro rata among the states); In re Toys "r" Us Antitrust Litig., 191 F.R.D. 347 (E.D.N.Y. 2000) (distributing settlement funds uniformly throughout the country for toys and educational programs). Moreover, none of the allocated money will go to waste under the Plan of Allocation, as there is tremendous need all over the world. In fact, the Court has before it proof that the funds allocated from the Settlement will, at best, address only a portion of the needs of eligible Hungarian Nazi Victims in the United States, Hungary, Israel and the rest of the world.[19]

    In addition, the Plan of Allocation itself provides for an internal process for annual reconsideration of the allocations made to the various agencies in specific locales. Funds are allocated to agencies on an annual basis. If any funds remain after the annual allocation period, they are canceled. "In such an event, recommended allocations will be reviewed and may be adjusted; should that be necessary, a supplemental Detailed Plan of Allocation will be presented" to the Court for its review and approval. See Plan of Allocation, at 5. Thus, should the facts bear out that some of the money cannot be used in one locale because there is not sufficient need among eligible victims, those monies will be reallocated but done so with Court approval and proof that the money is not in fact needed in the particular locale. Thus, the Settlement and Plan of Allocation contemplated and provided for a method of addressing the concerns raised by the Reallocation Proposals.

    Finally, to the extent that it is even applicable, the Court finds that the Settlement does not violate Amchem Prods. v. Windsor, 521 U.S. 591 (1997), as there is no evidence to suggest that Class Counsel subordinated the needs of Class Members living in Hungary to the interests of Class Members living in other countries. First, the Confederation of Holocaust Survivors in Hungary, the Federation of Jewish Communities

---

[19] See e.g. Letter from Stuart E. Eizenstat to the Honorable Edward R. Korman, December 30, 2003, attached as Exhibit A to Declaration of Samuel J. Dubbin in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Supporting Memorandum of Law ("Dubbin Declaration"); Declaration of David Saltman, Jewish Community Services of South Florida (Miami-Dade County programs) and Ken Moskowitz, Jewish Family Services, Inc. of Broward County, Florida, Exhibits B and C to Dubbin Declaration; Submission of United Jewish Appeal/Federation of New York City to Swiss Bank Special Master, Exhibit F to Dubbin Declaration; and Brodsky and Della Pergola study, Exhibit E to Dubbin Declaration.

19

in Hungary, and the Association of Former Hungarian Jews in Israel all participated in the mediation through counsel. Furthermore, no objector has suggested that the 10% allocation plan was suggested during the mediation process. See Objections 242, 252; Final Fairness Hearing Tr. at 111. Third, although the parties did not select an allocation method that will favor Hungary over the other countries, Class Members living in Hungary will receive approximately $900,000 a year in financial assistance under the Settlement, which is a greater amount than that achieved under any other Holocaust restitution case. See Final Fairness Hearing Tr. at 114. Accordingly, upon careful consideration of the objections and the oral argument of the Objectors, the Court finds that the current Plan of Allocation is fair, reasonable, and not the product of collusion.

IX      FEE REQUEST

Class Counsel seeks an award for fees and reimbursable expenses of $3.85 million. When expenses are deducted, the fees requested represent less than 12% of the total monetary value of the Settlement, which is far below the Eleventh and Federal Circuits' standards for awarding attorneys fees in common fund class actions. Class Counsel litigated this case against a highly sophisticated and extremely powerful adversary with vast resources and an impressive arsenal of legal defenses not available to all defendants. It took five years of determined and creative lawyering before a settlement could be reached. Considering the extraordinary time and effort expended by Class Counsel, the difficulty of the case and the risks undertaken, the fact that not a single lawyer stepped forward to assist Class Counsel on a pro bono basis or at reduced-fee rates, as well as the quality and historical importance of the results, the fees requested are amply supported.[20] Accordingly, the Court confirms the appointment of Class Counsel and finds that Class Counsel have fairly and adequately represented the interests of the Class. In addition, for the reasons set forth herein and articulated at the Fairness Hearing, the Court finds that attorneys' fees and expenses in the amount of $3.85

---

[20] For the same reasons, and given that there is extremely minimal opposition to Counsel's fee request among the over 60,000 class members, the Court finds that this objection does not render the Settlement either unfair or unreasonable. See Objections Nos. 16, 34, 96, 211, 230, 246, 294, and 347 (suggesting that the attorneys' fees are too high). But see Objections/Comments Nos. 25, 67 & 138 (commenting on the high quality of legal work).

20

million is fair and reasonable.

Turning to the request for modest incentive awards, the Court finds that such request is also fair and reasonable. Incentive or service awards, such as those sought here, are readily approved by courts within the Eleventh Circuit. As one district court recently noted, "Courts routinely give incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted) (approving incentive award payments of $300,000 per representative, and $3,000 per non-representative class member who provided affidavit). Here, based upon the information submitted by Class Counsel, and noting that no objections were filed, the Court finds that the modest incentive awards requested for certain Plaintiffs are fair, reasonable, and appropriate.

**X.    CONCLUSION**

Based upon the foregoing reasons, as well as the oral findings of fact and conclusions of law reflected in the transcript of the Final Fairness Hearing on September 26, 2005, as well as the arguments made in Plaintiff's Final Approval Motion and Class Counsel's Fee Petition, it is hereby

ORDERED that

1.    The Final Approval Motion [DE 228] is GRANTED. The Settlement Agreement, including the Plan of Distribution and Plan of Allocation, is a fair, reasonable and adequate compromise of the claims against the Defendant in the Action, pursuant to Fed. R. Civ. P. 23.   Judgment is entered dismissing the claims except to the extent of the relief provided in the Settlement Agreement, which is incorporated herein by reference.

2.    Defendant and Settlement Class Members are bound by the Settlement Agreement, including all releases contained therein, and this Final Order and Judgment, and Settlement Class Members do not have any further opportunity to exclude themselves from the Action.

3.    All Class members who have not timely filed a Request for Exclusion are permanently barred

21

and enjoined from commencing and/or prosecuting any Settled Claim against the Defendant in any forum.

4.    Class Counsel's Petition for attorney's fees [DE 212] is GRANTED.  The fees and expenses requested by Class Counsel are approved in the total amount of $3.85 million and the Escrow Agent is directed hereby to pay such fees and expenses from the Settlement Fund to Cuneo Gilbert & LaDuca, LLP, which shall allocate such fees and expenses to other Class Counsel in a fair and equitable manner.

5.    The Plaintiffs are awarded incentive payments totaling $150,000, as set forth on the Schedule of Plaintiff Incentive Payments, attached hereto as Exhibit B, in recognition of the efforts they have undertaken and the risk they have incurred in connection with this Action.  The Escrow Agent is hereby directed to make such payments to the said Plaintiffs from the Settlement Fund.

6.    Without affecting the finality of this Final Order and Judgment, this Court shall retain exclusive and continuing jurisdiction over the Action, all Parties, the Claims Conference and Settlement Class Members, to interpret and enforce the terms, conditions and obligations of this Final Order and Judgment, including all matters relating to the consummation, performance, and enforcement of the Settlement Agreement.

7.    Class Counsel may move this Court for any Order necessary to implement this Judgment or the Settlement Agreement or to assist in the administration of the Settlement Agreement.

8.    Pursuant to the Settlement Agreement, the Settlement Fund and Special Fund shall be maintained by the Escrow Agent under the continuing jurisdiction and supervision of the Court and shall earn interest, which shall become part of the Special Fund.

9.    For administrative purposes, this case is CLOSED.

DONE AND ORDERED in Miami, Florida this 30ᵗʰ day of September, 2005.

Patricia A. Seitz
United States District Court

cc:
Counsel of Record

22

## Exhibit A

### List of Individuals Excluded from the Settlement

| | |
|---|---|
| 1 | MOSHKOVICH, LENI |
| 2 | MOSHKOVICH, SAMUEL |
| 3 | NELSON, ALAN |
| 4 | FULOP, GEORGE |
| 5 | NEUMAN, VIOLA |
| 6 | PERL, JENE |
| 7 | KOVACS, ILONA |
| 8 | KOVACS, JOHN |
| 9 | LUKACS, CHARLES |
| 10 | SAMET, PIROSKA PEARL |
| 11 | KALLUS, ELSA |
| 12 | RUDAS, IREN |
| 13 | SAND, RONNIE |
| 14 | SCHOSSBERGER, ANDREW |
| 15 | MEISELS, SAMUEL |
| 16 | NEHEZ, VERA |
| 17 | YASKIL, RACHEL |
| 18 | GLASNER, JUDITH |
| 19 | BRUSZT, IVAN |
| 20 | SZEKELY, IREN |
| 21 | VIG, GYORGY |
| 22 | BAR-NIR, MOSHE |
| 23 | SALAMON ROZENCWEIG, OLGA |
| 24 | GOMBOS, GEORGE |
| 25 | BALASZ, ENDRE |
| 26 | WEISS, LILLIAN |
| 27 | EINHORN, ETA |
| 28 | FEUER, JUDITH |
| 29 | WINTER, PAUL |
| 30 | TESSLER, BUROCH |
| 31 | MOLNAR, PETERNE |
| 32 | LUNGER, ALEXANDER |
| 33 | REICH, ELIZABETH |
| 34 | GEZA, TIMAR |
| 35 | SCHWARTZ, SANDOR |
| 36 | BASCH, ESTHER |
| 37 | SIMON, FRANCES |
| 38 | ANGYALOSI, ENDRE |
| 39 | RASMUSEN, EVA |
| 40 | ANGYALOSI, LASZLO |
| 41 | BLUMENTHAL, PETER |
| 42 | WEINBERGER, JOSE GABRIEL |
| 43 | JENEI, SANDORNE |
| 44 | SZIRT, MARTA |
| 45 | GRUNWALD, ANNA |
| 46 | MELLINGER, FRANCISCO |
| 47 | FRISCH, ILONA |
| 48 | LAZAR-FRANCK, SARA |
| 49 | KATZ, GIZELLA |
| 50 | KAISER, JUDIT |

23

| | |
|---|---|
| 51 | VASVARI, JANOS |
| 52 | FOX, PETER A. |
| 53 | BREUER, ZIGMOND |
| 54 | SHARON, HAIM |
| 55 | HELLER, STEVEN |
| 56 | DE FERENCZI, ANA ROSENTHAL |
| 57 | KLEIN, ELLA |
| 58 | KLEIN, ALEXANDER |
| 59 | MECHLOVITZ, RIFKA |
| 60 | MARKUS, MARGARET |
| 61 | PATAKI-MARC, STEPHAN |
| 62 | HARRISON, EDITH |
| 63 | GREEN, ISRAEL |
| 64 | WEISS, SHARON |
| 65 | LOEWY, GEORGE |
| 66 | LOEWY, VERONICA |
| 67 | BODNAR, ZOLTAN |
| 68 | BODNAR, PIROSKA |
| 69 | BENJAMIN, JUDITH |
| 70 | RETI, ISTVANNE |
| 71 | LAWSON, SHARON J. |
| 72 | DE FIDELHOC, RIVKA DASKAL |
| 73 | HIRSCH, PERI |
| 74 | FRIEDMAN, ASHER |
| 75 | RADOS, ARTURNE |
| 76 | BASHAN, ITZHAK |
| 77 | BASHAN, MIRIAM |
| 78 | GUGI, SANDORNE |
| 79 | VAJDA, DEZSOE |
| 80 | FEHER, TIBORNE |
| 81 | JAKUBOVIC, JIRI |
| 82 | AGOSTON, PAL |
| 83 | RETI, ILONA |
| 84 | HAUER, ARIE |
| 85 | ENGEL, SHMUEL |
| 86 | ENGEL, ZAHAVA |
| 87 | PREIS, MARGARETA |
| 88 | FNICKEL, YAKOV |
| 89 | FNICKEL, EKATERINA |
| 90 | JONAS, JONA |
| 91 | ENGELMAN, MIRIAM |
| 92 | WEINBERGER, CHANA |
| 93 | WEINBERGER, BINYOMIN |
| 94 | HIRSCHLER, RITA |
| 95 | MEISNER, JOZSEFNE |
| 96 | RADNAI, ISTVANNE |
| 97 | KELETI, PETER |
| 98 | FEKETE, SZUNSIZ |
| 99 | FEKETE, JANOS |
| 100 | BARAK BEN-AMOS |
| 101 | FULOP, GEORGE (heir) |
| 102 | HEVESI, DR. EVA (heir) |
| 103 | RADO, JANOS (heir) |
| 104 | KOSA-BANKI, AGNES (heir) |
| 105 | RADONE-LOFFLER, MARIA (heir) |

24

| 106 | GLASNER, JUDITH (heir) |
| 107 | WADLER, CHAYA DEBLINGER (heir) |
| 108 | BLISKO, CECELIA DEBLINGER (heir) |
| 109 | ALTMAN, DAVID (heir) |
| 110 | TORMASI, DAVID (heir) |
| 111 | WESTWOOD, JUDITH (heir) |
| 112 | ROSENBERG, SOL (heir) |
| 113 | WEINGARTEN, SARA (heir) |
| 114 | GROSS, JEFFREY (heir) |
| 115 | BASCH, PAUL (heir) |
| 116 | BASCH-RUSSO, FRAN (heir) |
| 117 | BASCH, M. (heir) |
| 118 | TURET, RACHEL (heir) |
| 119 | GABORNE, BARNA (heir) |
| 120 | BLUMENTHAL, SUSAN (heir) |
| 121 | WEISZ, ALEXANDER (heir) |
| 122 | LITTMAN, AUREL (heir) |
| 123 | ILLES, LASZLONE (heir) |
| 124 | VIDA, IMRENE (heir) |
| 125 | GONDOR, MAGDA (heir) |
| 126 | VALYI, GYORGY (heir) |
| 127 | FELDMAN, ELIHU (heir) |
| 128 | KOVACS, TIBOR (heir) |
| 129 | GRUNWALD, LADISLAU (heir) |
| 130 | GROSS, BRIAN (heir) |
| 131 | FOX, PETER (heir) |
| 132 | PORGES, LEO (heir) |
| 133 | SHIMONY, DAVID (heir) |
| 134 | KNAPP, OSZKARNE (heir) |
| 135 | VALYI, GYORGY(heir) |
| 136 | TOLNAI, JUDIT (heir) |
| 137 | MOSKOVITZ, GABRIEL (heir) |
| 138 | LANDESMAN, SLOMO (heir) |
| 139 | MARKUS, MAGGIE (heir) |
| 140 | PAILAS, EVELYN (heir) |
| 141 | GORELICK, BETTY GLUCK (heir) |
| 142 | HOLLANDER, FAYE (heir) |
| 143 | RICKARD, PATRICIA |
| 144 | GILAD, FAYE (heir) |
| 145 | JUHASZ, OTTONE (heir) |
| 146 | RADOS, PETER (heir) |
| 147 | AGOSTON, PAL (heir) |
| 148 | BASHAN, ITZHAK (heir) |
| 149 | BASHAN, MIRIAM (heir) |
| 150 | STERN, ELISABET (heir) |
| 151 | VAJDA, DEZSOENE (heir) |
| 152 | RETI, DAVID (heir) |
| 153 | ZADOR, JULIA (heir) |
| 154 | MEISEL, AGNES (heir) |
| 155 | DERI, GYORGYNE (heir) |
| 156 | FEHER, PETER (heir) |
| 157 | LEVAI, VILMOS (heir) |
| 158 | LOWI, IMRE (heir) |
| 159 | RADNAI, ANDREA FORRAINE (heir) |
| 160 | RADNAI, ISTVANNE (heir) |

25

161          SCHMIDT, TIBOR (heir)
162          KELETI, PETER (heir)

26

## Exhibit B

### Schedule of Plaintiff Incentive Payments

| | | |
|---|---|---|
| 1 | Edith Klein Amster | $5,000 |
| 2 | Francis Bash | $5,000 |
| 3 | Veronika Baum | $5,000 |
| 4 | Alice Besseney | $2,000 |
| 5 | Elisabeth Bleier | $5,000 |
| 6 | Erwin Deutsch | $5,000 |
| 7 | Dr. Joseph Devenyi | $5,000 |
| 8 | Peter Drexler | $5,000 |
| 9 | Barunch Bernhard Epstein | $5,000 |
| 10 | Magda Feig | $2,000 |
| 11 | Michael Fried | $5,000 |
| 12 | Paul Gottlieb | $5,000 |
| 13 | Judith Karmi | $5,000 |
| 14 | Ethel Klein | $5,000 |
| 15 | Mildred Klein | $2,000 |
| 16 | Tamas May | $5,000 |
| 17 | David Mermelstein | $5,000 |
| 18 | Irene Mermelstein | $5,000 |
| 19 | Edith Moore | $5,000 |
| 20 | John J. Rakos | $5,000 |
| 21 | Goerge Rasko | $5,000 |
| 22 | Ana Rosner | $3,000 |
| 23 | Irving Rosner | $5,000 |
| 24 | Georg Moshe Schwarz | $5,000 |
| 25 | Estate of Beorge Sebok | $5,000 |

27

| 26 | Dr. Laszlo Sokoly | $2,000 |
| 27 | Agnes V. Somjen | $5,000 |
| 28 | Olga Steiner | $2,000 |
| 29 | Jonas Stern | $5,000 |
| 30 | Irene Tibor | $5,000 |
| 31 | Andrew Tibor | $5,000 |
| 32 | Agnes Vadasz | $5,000 |
| 33 | Zoltan S. Weiss | $5,000 |
| 34. | Ms. Edith Reiner | $2,000 |

28

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 01-1859-CIV-SEITZ

FILED by _____ D.C.

DEC 2 2 2005

LLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

IRVING ROSNER, *et al.*, on behalf of          )
themselves and all others similarly situated, )
                                               )
                          Plaintiffs,          )
                                               )
        v.                                     )
                                               )
UNITED STATES OF AMERICA,                      )
                                               )
                          Defendant.           )
                                               )

**ORDER GRANTING JOINT MOTION
FOR ORDER ON SETTLEMENT IMPLEMENTATION**

THIS CAUSE came on before the Court on the parties' Joint Motion for Order On

Settlement Implementation. Based on the good cause shown in the Motion, it is hereupon

ORDERED AND ADJUDGED that the Motion be, and the same is, hereby GRANTED, as

follows.

1.    Paragraph VI.A. of the Settlement Agreement (second paragraph) is hereby

amended in part to provide that the panel "shall select the Recipient Institution by March 31,

2006."

2.    The Escrow Agent selected by Class Counsel, which shall act as the escrow agent for

the Settlement Fund and Special Funds is Wachovia Bank, National Association, 123 South

Broad Street, Philadelphia, Pennsylvania, 19109, which is pursuant to Section V.B. of the

Settlement Agreement and Paragraph X.8 of the Final Order and Judgment subject to the

continuing jurisdiction and supervision of this Court.

3.    The Escrow Agent shall disburse from the Settlement Fund or the Special Fund the

following amounts upon the written direction of Class Counsel:



a.    $3.85 million for attorneys' fees and expenses, payable to the Cunco Gilbert & LaDuca LLP Escrow Account, and Cunco Gilbert & LaDuca LLP shall act as collection and disbursement agent and distribute such funds to the three firms appointed as Class Counsel: Cunco Gilbert & LaDuca, LLP, Hagens Berman Sobol Shapiro, LLP, and Dubbin & Kravetz, LLP in accordance with the firms' agreement.

b.    A total of $150,000 for plaintiffs' incentive fees, payable to the named plaintiffs in the amounts specified in Exhibit A.

c.    $500,000, as provided for in Section VI.A. of the Settlement Agreement, shall be disbursed at a future date after a Court Order upon Motion by the Parties in accordance with the recommendation of the panel of historical experts, but shall remain in the Settlement Fund and accumulate interest until such future date.

d.    In light of the foregoing distributions provisions, the funds to be allocated for social service programs (from the Special Fund) in the first year is $4.2 million. In accordance with the Detailed Plan of Allocation filed by the Claims Conference on June 10, 2005 and approved by the Court in its Final Order and Judgment, the escrow agent shall initially disburse a total of $4,093,202.40 to the Claims Conference to be used for social service programs for Hungarian Nazi Victims in need.

c.    The difference between the $4.2 million for programs (plus 1% of the first years' allocation for the Claims Conference's 1% cost reimbursement, i.e. $42,000) and the $4,093,202.40, i.e. $148,797.60, represents approved administrative expenses which may only be paid from interest on the Special Fund. Accordingly, the

2

escrow agent shall, as soon as practicable on a monthly basis after the initial deposit of the Settlement Fund, transfer accumulated interest (except the interest allocable to the $500,000 earmarked for the archive project) to the Claims Conference until it has transferred the sum of $148,797.60 for the first year's administrative expenses.

f.   The escrow agent may also deduct its fees from accumulated interest in the first year according to its agreement with Class Counsel, entered into as of December 21, 2005.

4.   The panel of experts designated in Paragraph VI.A of the Settlement Agreement shall be known as the "Committee on the Hungarian Gold Train Archives Fund."

5.   Up to a maximum of $5,000, interest earned on the sum of $500,000 earmarked in Section VI.A. of the Settlement Agreement for the archive, between the time Defendant deposits the Cash Payment until the disbursement to the recipient institution, shall be available for payment of modest expenses of the panel members.   Class Counsel shall review each such request and, provided the request has been authorized by a majority of the panel and does not breach the $5,000 maximum on total expenses, shall submit them to the escrow agent for prompt payment.

DONE AND ORDERED in chambers at the United States Courthouse, Miami, Florida, this 2ʳᵈ day of _December_, 2005.

_signature_

UNITED STATES DISTRICT JUDGE

3

## Exhibit A

### Schedule of Plaintiff Incentive Payments

| | | |
|---|---|---|
| 1 | Edith Klein Amster | $5,000 |
| 2 | Francis Bash | $5,000 |
| 3 | Veronika Baum | $5,000 |
| 4 | Alice Bossaney | $2,000 |
| 5 | Elisabeth Bleier | $5,000 |
| 6 | Erwin Deutsch | $5,000 |
| 7 | Dr. Joseph Devenyi | $5,000 |
| 8 | Peter Drexler | $5,000 |
| 9 | Barunch Bernhard Epstein | $5,000 |
| 10 | Magda Feig | $2,000 |
| 11 | Michael Fried | $5,000 |
| 12 | Paul Gottlieb | $5,000 |
| 13 | Judith Karmi | $5,000 |
| 14 | Ethel Klein | $5,000 |
| 15 | Mildred Klein | $2,000 |
| 16 | Tamas May | $5,000 |
| 17 | David Mermelstein | $5,000 |
| 18 | Irene Mermelstein | $5,000 |
| 19 | Edith Moore | $5,000 |
| 20 | John J. Rakos | $5,000 |
| 21 | George Rasko | $5,000 |
| 22 | Ana Rosner | $3,000 |
| 23 | Irving Rosner | $5,000 |
| 24 | Georg Moshe Schwarz | $5,000 |
| 25 | Estate of Beorge Sebok | $5,000 |

| 26 | Dr. Laszlo Sokoly | $2,000 |
| 27 | Agnes V. Somjen | $5,000 |
| 28 | Olga Steiner | $2,000 |
| 29 | Jonas Stern | $5,000 |
| 30 | Irene Tibor | $5,000 |
| 31 | Andrew Tibor | $5,000 |
| 32 | Agnes Vadasz | $5,000 |
| 33 | Zoltan S. Weiss | $5,000 |
| 34. | Ms. Edith Reiner | $2,000 |

# EXHIBIT C

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

---

### Case No. 06-20464-Civ-Graham/O'Sullivan

**JOEL D. JOSEPH,**

      **Plaintiff,**

**vs.**

**SAMUEL J. DUBBIN, et al.,**

      **Defendants.**

_____/

### ORDER TRANSFERRING CASE

    **UPON CONSIDERATION** of Defendants' S.D. Fla. Local General Rule 3.9.D Notice of

Similar Action and the entire record in this action, it is hereby

    **ORDERED** that the Clerk transfer this action to the docket of the Honorable Patricia A.

Seitz for all further proceedings.

    **DONE AND ORDERED** in Chambers at Miami, Miami-Dade County, Florida this _____

day of _____, 2006.


                              _____

                              **DONALD M. GRAHAM**
                              **UNITED STATES DISTRICT JUDGE**


Copies furnished to all
counsel or parties on the
attached Service List.
249353.1

# SERVICE LIST

**Joseph v. Dubbin, et al.**
**Case No. 06-20464-Civ-Graham/O'Sullivan**
**U.S. District Court, Southern District of Florida**

Plaintiff Joel D. Joseph
7272 Wisconsin Avenue
Suite 300
Bethesda, Maryland 20814
Telephone: (301) 941-1989

Brian F. Spector, Esq.
E-mail: bspector@kennynachwalter.com
Ismael Diaz (Florida Bar No. 575771)
E-mail: id@kennynachwalter.com
Kenny Nachwalter, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
**Attorneys for Defendants Samuel J.
Dubbin, Samuel J. Dubbin, P.A., Dubbin &
Kravetz, LLP, Steve W. Berman and
Hagens Berman Sobol Shapiro, LLP**

# EXHIBIT C

CASREF, CLOSED, CMM, MEDIATION, REF_PTRL

**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:06-cv-20464-PAS**

Joseph v. Dubbin, et al
Assigned to: Judge Patricia A. Seitz
Referred to: Magistrate Judge Chris M. McAliley
Demand: $0
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 02/24/2006
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Joel D. Joseph**
represented by **Joel D. Joseph**
Suite 300
7272 Wisconsin Avenue
Bethesda, MD 20814
PRO SE

V.

**Defendant**

**Samuel J. Dubbin**
represented by **Brian F. Spector**
Kenny Nachwalter.P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL 33131-4327
U.S.A
305-373-1000
Fax: 372-1861
Email: bspector@kennynachwalter.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ismael Diaz**
Kenny Nachwalter, P.A.
Miami Center
201 S Biscayne Boulevard
Suite 1100
Miami, FL 33131-4327
305-373-1000
Fax: 372-1861
Email: idiaz@kennynachwalter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Samuel J. Dubbin, PA** | represented by | **Brian F. Spector** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Ismael Diaz** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Dubbin and Kravetz** | represented by | **Brian F. Spector** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Ismael Diaz** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Steve W. Berman** | represented by | **Brian F. Spector** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Ismael Diaz** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | represented by | **Brian F. Spector** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Ismael Diaz** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/24/2006 | 1 | COMPLAINT filed; FILING FEE $250.00 RECEIPT # 935640 ; Magistrate Judge O'Sullivan (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 2 | SUMMONS(ES) issued for Samuel J. Dubbin (dg, Deputy Clerk) |

| | | (Entered: 02/28/2006) |
|---|---|---|
| 02/24/2006 | 3 | SUMMONS(ES) issued for Samuel J. Dubbin PA (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 4 | SUMMONS(ES) issued for Dubbin and Kravetz (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 5 | SUMMONS(ES) issued for Steve W. Berman (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 02/24/2006 | 6 | SUMMONS(ES) issued for Hagens Berman Sobol (dg, Deputy Clerk) (Entered: 02/28/2006) |
| 04/14/2006 | 7 | NOTICE of Pendency of Other Action. by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin (hd, Deputy Clerk) (Entered: 04/14/2006) |
| 04/14/2006 | 8 | MOTION by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin (Attorney Brian F. Spector, Ismeli Diaz) for ten minute Hearing /oral argument on Rule 3.9 notice (tb, Deputy Clerk) (Entered: 04/17/2006) |
| 04/14/2006 | 9 | MOTION with memorandum in support by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin to dismiss plaintiff's complaint (tb, Deputy Clerk) (Entered: 04/17/2006) |
| 04/14/2006 | 10 | MOTION by All Defendants for ten minute hearing on Rule 3.9.D notice (dg, Deputy Clerk) (Entered: 04/17/2006) |
| 04/20/2006 | 11 | ORDER transferring case to the calendar of the Honorable Patricia A. Seitz ( Signed by Judge Donald L. Graham on 5/19/06 and accepted by Judge Patricia A. Seitz on 4/20/06) [EOD Date: 4/21/06] (ct, Deputy Clerk) (Entered: 04/21/2006) |
| 04/20/2006 | | CASE reassigned to Judge Patricia A. Seitz (ct, Deputy Clerk) (Entered: 04/21/2006) |
| 04/21/2006 | 12 | Certification and ORDER of transfer to Magistrate Judge ( Signed by Magistrate Judge John J. O'Sullivan on 4/21/06) [EOD Date: 4/25/06] (ct, Deputy Clerk) (Entered: 04/25/2006) |
| 04/24/2006 | | Magistrate identification: Magistrate Judge Chris M. McAliley (ct, Deputy Clerk) (Entered: 04/25/2006) |
| 04/27/2006 | 13 | RESPONSE by Joel D. Joseph to [9-1] motion to dismiss plaintiff's complaint (dg, Deputy Clerk) (Entered: 04/28/2006) |
| 05/01/2006 | 14 | ORDER set Scheduling meeting report due for 7/17/06 ( Signed by Judge Patricia A. Seitz on 5/1/06) [EOD Date: 5/2/06] (ct, Deputy Clerk) (Entered: 05/02/2006) |
| 05/03/2006 | 15 | UNOPPOSED MOTION by All Defendants (Attorney ) to extend time to reply to motion to dismiss (ct, Deputy Clerk) (Entered: 05/03/2006) |

| 05/08/2006 | 16 | ORDER granting [15-1] motion to extend time to reply to motion to dismiss ( Signed by Judge Patricia A. Seitz on 5/8/06) [EOD Date: 5/9/06] (ct, Deputy Clerk) (Entered: 05/09/2006) |
|---|---|---|
| 05/15/2006 | 17 | REPLY by Samuel J. Dubbin PA, Samuel J. Dubbin to response to [9-1] motion to dismiss plaintiff's complaint (ct, Deputy Clerk) (Entered: 05/16/2006) |
| 07/11/2006 | 18 | UNOPPOSED MOTION by All Defendants (Attorney ) to stay discovery and objection to discovery and objection to discovery obligations imposed by order requiring schedling report with supporting memeorandum of law (dj, Deputy Clerk) (Entered: 07/12/2006) |
| 07/13/2006 | 19 | ORDER granting [9-1] motion to dismiss plaintiff's complaint; plaintiff shall have until and including August 2, 2006 to file amended complaint (Signed by Judge Patricia A. Seitz on 7/13/06) [EOD Date: 7/14/06] (mh, Deputy Clerk) (Entered: 07/14/2006) |
| 07/13/2006 | 20 | ORDER granting [18-1] motion to stay discovery and objection to discovery and objection to discovery obligations imposed by order requiring schedling report with supporting memeorandum of law ( Signed by Judge Patricia A. Seitz on 7/13/06) [EOD Date: 7/14/06] (mh, Deputy Clerk) (Entered: 07/14/2006) |
| 07/17/2006 | 21 | Joint Planning And Scheduling Report by Joel D. Joseph, All Defendants 7/17/06 (mh, Deputy Clerk) (Entered: 07/18/2006) |
| 07/19/2006 | 22 | ORDER referring case to mediation. 15 days to appoint mediator (Signed by Judge Patricia A. Seitz on 7/18/06) [EOD Date: 7/20/06] (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | 23 | ORDER REFERRING CASE (PRE-TRIAL) to Magistrate Judge Chris M. McAiley (Signed by Judge Patricia A. Seitz on 7/18/06) CCAP [EOD Date: 7/20/06] (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | 23 | ORDER Setting Trial Date, Pretrial Deadlines And Referral to Magistrate Judge; Calendar call set for 1:15 p.m. on 10/24/07; Jury trial set for 10/29/07; Pretrial conference for 9:00 a.m. on 9/20/07; (Signed by Judge Patricia A. Seitz on 7/18/06) [EOD Date: 7/20/06] CCAP (mh, Deputy Clerk) (Entered: 07/20/2006) |
| 07/19/2006 | | CASE REFERRED to Magistrate Judge Chris M. McAliley. (ch) (Entered: 10/26/2006) |
| 07/27/2006 | 24 | FIRST AMENDED COMPLAINT by Joel D. Joseph , (Answer due 8/6/06 for Samuel J. Dubbin, for Samuel J. Dubbin PA, for Dubbin and Kravetz, for Steve W. Berman, for Hagens Berman Sobol ) amending [1-1] complaint (bb, Deputy Clerk) (Entered: 07/31/2006) |
| 07/31/2006 | 25 | NOTICE of selection of Gerald T. Wetherington as Mediator by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin, Joel D. Joseph (rb, Deputy Clerk) (Entered: 08/02/2006) |

| 08/02/2006 | 26 | UNOPPOSED MOTION by Hagens Berman Sobol, Steve W. Berman, Dubbin and Kravetz, Samuel J. Dubbin PA, Samuel J. Dubbin, Joel D. Joseph to extend time to file a response to plaintiffs first amended complaint (rb, Deputy Clerk) (Entered: 08/03/2006) |
| --- | --- | --- |
| 08/03/2006 | 27 | ORDER granting [26-1] motion to extend time to file a response to plaintiffs first amended complaint; amended complaint due 8/24/06 (Signed by Judge Patricia A. Seitz on 8/3/06) [EOD Date: 8/4/06] (mh, Deputy Clerk) (Entered: 08/04/2006) |
| 08/24/2006 | 28 | MOTION with memorandum in support by All Defendants to dismiss first amended complaint (bs, Deputy Clerk) (Entered: 08/25/2006) |
| 08/24/2006 | 29 | SEALED DOCUMENT placed in vault (dg, Deputy Clerk) (Entered: 08/25/2006) |
| 08/30/2006 | 30 | ORDER Re; Sealed Filing (DE 29) (Signed by Judge Patricia A. Seitz on 8/30/06) [EOD Date: 8/31/06] (mh, Deputy Clerk) (Entered: 08/31/2006) |
| 09/14/2006 | 31 | UNOPPOSED MOTION by Joel D. Joseph to extend time to respond to motion to dismiss the first amended complaint (mh, Deputy Clerk) (Entered: 09/15/2006) |
| 09/15/2006 | 32 | NOTICE of Filing Order Scheduling Mediation by All Defendants (mh, Deputy Clerk) (Entered: 09/18/2006) |
| 09/18/2006 | 33 | ORDER granting [31-1] motion to extend time to respond to motion to dismiss the first amended complaint Response to motion reset to 10/16/06 for [28-1] motion to dismiss first amended complaint ( Signed by Judge Patricia A. Seitz on 9/18/06) [EOD Date: 9/19/06] (mh, Deputy Clerk) (Entered: 09/19/2006) |
| 09/21/2006 | 34 | ORDER SCHEDULING MEDIATION before Mediator: Gerald T. Wetherington for April 16, 2007 at 10:00 a.m. (Signed by Judge Patricia A. Seitz on 9/21/06) [EOD Date: 9/21/06] (mh, Deputy Clerk) (Entered: 09/21/2006) |
| 10/16/2006 | 35 | RESPONSE in Opposition re 28 Motion to Dismiss filed by Joel D. Joseph. (hd) (Entered: 10/18/2006) |
| 10/16/2006 | 36 | AFFIDAVIT signed by Joel D. Joseph. re 35 Response in Opposition to 28 Motion to Dismiss by Joel D. Joseph. (hd) (Entered: 10/18/2006) |
| 10/23/2006 | 37 | REPLY to Response to Motion re 28 Motion to Dismiss *the First Amended Complaint* filed by Samuel J. Dubbin. (Diaz, Ismeli) (Entered: 10/23/2006) |
| 11/28/2006 | 38 | MOTION to partially lift stay by Joel D. Joseph. (dg) (Entered: 12/01/2006) |
| 11/28/2006 | 39 | Statement of points and authorities in support of 38 MOTION to partially lift stay by Joel D. Joseph (dg) (Entered: 12/01/2006) |
| 12/01/2006 | 40 | RESPONSE in Opposition re 38 MOTION to partially lift stay filed by All Defendants. (Attachments: # 1 Exhibit A)(Diaz, Ismael) (Entered: |

| | | 12/01/2006) |
|---|---|---|
| 12/01/2006 | 41 | AMENDED DOCUMENT by All Defendants. Amendment to 40 Response in Opposition to Motion *to Partially Lift Stay (Corrected)*. (Attachments: # 1 Exhibit A)(Diaz, Ismael) (Entered: 12/01/2006) |
| 12/13/2006 | 42 | ORDER denying 38 Motion to PARTIALLY LIFT STAY . Signed by Judge Patricia A. Seitz on 12/13/06. (lk) (Entered: 12/14/2006) |
| 12/22/2006 | 43 | ORDER denying as moot 8 Motion for Hearing, denying as moot 10 Motion for Hearing, granting 28 Motion to Dismiss first amended complaint. This case is CLOSED. Signed by Judge Patricia A. Seitz on 12/22/06. (lk) (Entered: 12/28/2006) |
| 01/29/2007 | 44 | NOTICE OF APPEAL by Joel D. Joseph as to 43 Order on Motion for Hearing,, Order on Motion to Dismiss Filing fee $ 455.00, receipt number 954028. Copies sent to USCA and Counsel of Record. (nc) (Entered: 02/02/2007) |
| 02/02/2007 | | Certified copies of Notice of Appeal, Docket Sheet and Order under appeal to US Court of Appeals re 44 Notice of Appeal (nc) (Entered: 02/02/2007) |
| 02/21/2007 | 45 | NOTICE of Receipt of Notice of Appeal Transmittal Letter from USCA on 2/12/07 as to Joel D. Joseph re 44 appeal USCA number 07-10615-BB (hh) (Entered: 02/22/2007) |
| 02/21/2007 | 46 | TRANSCRIPT INFORMATION FORM by Joel D. Joseph re 44 Notice of Appeal. No Transcript Requested. (nc) (Entered: 03/06/2007) |
| 03/15/2007 | 47 | ORDER of DISMISSAL from USCA pursuant to Appellant's motion to dismiss appeal with prejudice is GRANTED as to 44 Notice of Appeal filed by Joel D. Joseph, Re: USCA# 07-10615-BB. Copy to Judge. (nc) (Entered: 03/16/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/16/2008 11:01:36 | | |
| **PACER Login:** cg0189 | **Client Code:** 6666 | |
| **Description:** Docket Report | **Search Criteria:** 1:06-cv-20464-PAS | |
| **Billable Pages:** 4 | **Cost:** 0.32 | |

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re MCI Non-Subscriber | ) | Case No. MDL 1275 |
| Telephone Rates Litigation | ) | |
| | ) | (Judge David R. Herndon) |

## MOTION FOR AN AWARD OF ATTORNEY'S FEE AND/OR A REPRESENTATIVE PLAINTIFF FEE

Joel D. Joseph moves this court for an award of attorney's fee and/or a representative plaintiff fee. Mr. Joseph is an attorney and his affidavit is attached to this motion.

Joseph filed one of the original several cases in the District of Columbia that was consolidated into this case.

Twenty-five million was set aside for attorneys' fees, a substantial amount considering to factors:

1. Not much attorneys' time was spent litigating this case; and

2. The settlement is meagre. MCI overcharged customers approximately $300 million and only has to pay $88 million to plaintiffs. This allows MCI to keep more than two-thirds of its ill-gotten gains.

Mr. Joseph was nominally represented by the Cuneo Group and Milberg Weiss. Mr. Joseph seeks compensation as quantum meruit for the work he performed in bringing his case and, since he was the only plaintiff represented by these two firms, for a reasonable proportion of their legal fees.

1

If the court deems it improper for Mr. Joseph to receive a attorney's fee, he

respectfully requests a payment for being a representative plaintiff.

JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, Maryland 20814
(301) 941-1989

## CERTIFICATE OF SERVICE

I certify that I have mailed a copy of this motion, statement of points and
authorities in support, a proposed order and the affidavit of Joel D. Joseph this 30th day
of September, 2002  to Stephen Katz, Carr, Korin and Tillery, 701 Market Street, Suite
300, St. Louis, MO 63101, Jonathan Cuneo, 317 Massachusetts Avenue, N.E.,
Washington, D.C. 20002, William Lerach, Milberg, Weiss, 401 B St Suite 1600 San
Diego CA 92101, Daniel Girard, Girard & Green, 160 Sansome St., Suite 300, San
Francisco, CA 94104, Cary & Danis, 8182 Maryland Avenue, Suite 1400, St. Louis, MO
63105 and to Levin Middlebrooks, PO Box 12308, Pensacola, FL 32581.

JOEL D. JOSEPH

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re MCI Non-Subscriber | ) | Case No. MDL 1275 |
| Telephone Rates Litigation | ) | |
| | ) | (Judge David R. Herndon) |

## <u>AFFIDAVIT OF JOEL D. JOSEPH</u>

Joel D. Joseph, affirms under the penalty for perjury, that the following facts are accurate and truthful:

1.  I am an attorney licensed to practice in the State of Maryland. I am admitted to practice in several federal district courts, and the United States Courts of Appeals for the District of Columbia, Second, Fourth and Eleventh Circuits.

2.  I was the only named plaintiff in Civil Action No. 1:98-2919 filed in the United States District Court for the District of Columbia in *Joel D. Joseph v. MCI Telecommunications Corp.* This was one of the seven cases consolidated into the above-captioned case.

3.  I spend some forty hours researching this case and at the Federal Communications Commission in Washington, D.C. I prepared legal memoranda and drafted a complaint.

4.  I retained the Cuneo Group in Washington, D.C. to represent me in this matter and the Cuneo Group in turn brought Milberg Weiss Bershad Hines and Lerach into the case.

5.  I understand that representative plaintiffs have been paid a fee of $5,000. and that the attorneys have been paid millions of dollars in fees.

6. I have not been paid a representative plaintiff fee or any fee for the legal work that I performed.

7. I performed more work on this case than either the Cuneo Group or Milberg Weiss, and contributed to the result in this case.

Subscribed and sworn to this 30th day of September, 2002.

JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, Maryland 20814
(301) 941-1989

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re MCI Non-Subscriber | ) | Case No. MDL 1275 |
| Telephone Rates Litigation | ) | |
| | ) | (Judge David R. Herndon) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF THE
MOTION FOR AN AWARD OF ATTORNEY'S FEE AND/OR
A REPRESENTATIVE PLAINTIFF FEE**

The court has wide discretion to determine how attorneys' fees are divided

amongst counsel. See e.g. *Janny v. Cleveland Tankers*, 209 F. Supp. 91 (N.D. Ind. 1962).

As one of seven original plaintiffs, an attorney's fee of one-seventh of the total

fee award would not be unreasonable. This amounts to $3,571,428, a rather large fee.

But the fee of $25 million is also large and could be considered excessive in light of the

poor result achieved and the minimal amount of time invested by counsel.

As an alternative, Mr. Joseph should be entitled to receive an amount equal to

what his attorneys received for their minimal labor. Mr. Joseph researched the matter at

the Federal Communications Commission—neither the Cuneo Group nor Milberg Weiss

spent the effort that Mr. Joseph did in determining that the rates charged were not

approved by the FCC. Neither the Cuneo Group nor Milberg Weiss participated in any

substantial fashion and both owe their entire fees to the efforts of Mr. Joseph.

As another alternative, Mr. Joseph worked approximately 40 hours on the

research and drafting of this case. His hourly rate is $500. His lodestar is therefore

$20,000.00. His lodestar should be multiplied by the same factor as that used to compute

the fees paid to the other attorneys.

As a final alternative, Mr. Joseph should at a minimum receive the $5,000

representative plaintiff award that the other representative plaintiffs have received.

1

For all of these reasons, the court should order that Mr. Joseph be paid a reasonable fee for the work and service that he performed.

JOEL D. JOSEPH
7272 Wisconsin Avenue, Suite 300
Bethesda, Maryland 20814
(301) 941-1989

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

In Re MCI Non-Subscriber                    )       Case No. MDL 1275
Telephone Rates Litigation                  )
                                            )       (Judge David R. Herndon)

### ORDER

Upon consideration of the motion of Joel D. Joseph for an attorney's fee,

IT IS ORDERED THAT THE MOTION IS GRANTED.

The court has wide discretion to determine how attorneys' fees are divided

amongst counsel.

I award Mr. Joseph an attorney's fee of $_____.

This fee shall be paid out of

_____

_____.


_____

UNITED STATES DISTRICT JUDGE

1

# EXHIBIT E

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OCT 2 8 2002

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST LOUIS OFFICE

In re: MCI NON-SUBSCRIBER
TELEPHONE RATES
LITIGATION

MDL DOCKET NO. 1275
ALL CASES

(Judge David R. Herndon)

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

On March 29, 2001, this Court held a hearing on Plaintiffs' motion for final approval of the proposed class action settlement in this case; Plaintiffs' proposed plan of allocation; and the application of Plaintiffs' counsel for an award of attorneys' fees and costs and incentive payments to the Class representatives. The Court approved the class action settlement and entered an order regarding disbursement of attorney's fees and cost award.

After being advised that all of the law firms that appeared on behalf of the Class had agreed among themselves on the allocation of the attorneys' fees awarded, the Court entered an Order that authorized and directed Class Counsel to distribute the Fee Award in accordance with the agreement among them (Doc. 211). The Court also authorized the payment of incentive awards of $5,000 to each of the Class representatives, to be paid from the amount awarded to Class counsel for fees and costs (Doc. 130).

Before the Court is Joel Joseph's motion for an award of attorney's fee

1

225

and/or a representative plaintiff fee (Doc. 221). Joseph asks the Court to award him a portion of the legal fees his attorneys recovered in this case or, alternatively, a representative plaintiff award. The Class responded to Joseph's motion, arguing that Joseph was neither an attorney of record during the time this case was pending, nor a named plaintiff in the consolidated proceedings. The Court agrees with the Class.

First, Joseph is not entitled to any portion of the attorneys' fees his attorneys received as a result of this litigation. Although Joseph is an attorney himself, he was not an attorney of record at any time during this consolidated case. Joseph claims that he researched the case at the Federal Communications Commission, and therefore, he is entitled to compensation for his efforts. However, many plaintiffs independently research their cases both before and after a complaint is filed. The simple fact that Joseph invested some of his own time in researching the case does not entitle him to a portion of attorneys' fees awarded in this case.

Joseph's main argument in support of his motion for attorneys' fees appears to be that his attorneys' work was sub-par. Joseph argues that his attorneys, as well as other attorneys representing the Class, invested a "minimal amount of time" in this case and engaged in "minimal labor." However, as the Class points out, a review of the docket sheet substantiates the amount of time Class Counsel spent litigating this case. Additionally, Joseph attacks the settlement recovery that Class Counsel obtained on behalf of the Class. This is hardly a basis for claiming entitlement to share in attorneys' fees.

Further, Joseph takes issue with the fact that Class Counsel did not

2

move for summary judgment. This is not the proper forum to address such an issue. If Joseph is dissatisfied with his attorneys' representation during this case, perhaps Joseph should take that up in a malpractice action. However, the fact remains that Joseph was never an attorney of record in the consolidated action, and therefore, he is not entitled to any portion of attorneys' fees recovered by his attorneys.

Likewise, Joseph is not entitled to a representative plaintiff award. Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. *Cook v. Niedert*, **142 F.3d 1004, 1016 (7th Cir. 1998)**. When deciding whether a representative plaintiff award is warranted, courts should consider several relevant factors, including the actions the plaintiff has taken to protect the interests of the Class, the degree to which the Class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Id*.

The Court finds that a representative plaintiff award in favor of Joseph is not warranted. The Judicial Panel on Multidistrict Litigation ("MDL") transferred seven individual cases from various districts to this Court to proceed on the MDL docket. Joseph filed one of these original seven actions. However, when the seven cases were consolidated on the MDL as one single cause of action, Joseph was not one of the plaintiffs named in the consolidated complaint (Doc. 7).[1] Therefore, he did

---

[1] The named Plaintiffs are Bryan Sklar, Ted Beckwith, John Gilley d/b/a John Gilley Movers, Laurence Sass, Jay Copeland, Dorothy Howard White, Convention Rentals, Inc. d/b/a Tidewater Computer Rentals, and CJH, d/b/a Tidewater Computer Rentals.

3

not assume the responsibilities of the Class in this case, such as participating in discovery, cooperating with counsel in the prosecution of the case, or playing an important role in achieving the settlement. After the Class was consolidated, Joseph took no actions to protect the interests of the Class and participated very little, if any, in the actual ongoing litigation.

Therefore, the Court finds that Joseph is not entitled to any portion of attorneys' fees his attorneys recovered in this action. Likewise, Joseph is not entitled to a representative plaintiff award. Accordingly, the Court **DENIES** Joseph's motion for an award of attorney's fees and/or a representative plaintiff fee (Doc. 221).

**IT IS SO ORDERED.**

Signed this 28th day of ___ Our ___, 2002.

**DAVID R. HERNDON**
**United States District Judge**

4

# EXHIBIT F

**FILED**

JUL 1 8 2003

CLERK, U S DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

In re: MCI NON-SUBSCRIBER
    TELEPHONE RATES
    LITIGATION

MDL DOCKET NO. 1275
ALL CASES

(Judge David R. Herndon)

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

    Before the Court is Joel D. Joseph's motion to require disclosure of attorneys' fee allocation (Doc. 243).  On October 28, 2002, the Court entered an Order denying Joseph's request to share in the attorneys' fees awarded Class Counsel in this case (Doc. 225).  Joseph now requests that this Court order Class Counsel to disclose how the attorneys' fees were allocated among Class Counsel.

    Joseph cites *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002) for the proposition that class action settlements and their attendant attorneys' fees should be a matter of public record.  However, *Reynolds* only stated that the Seventh Circuit disapproved of the practice of permitting and encouraging the submission of attorneys' fee applications in camera.  *Id.* at 286.  In this case, however, the Court accepted briefs and heard argument on the issue of awarding attorneys' fees to Class Counsel.  The Court also considered motions to intervene by purported class members objecting to the settlement and to Class Counsel's motion for attorneys' fees.  The Court entered an order on April 19, 2001, awarding Class

1

245

Counsel 29% of the $88 million recovered on behalf of the class. Thus, unlike *Reynolds*, the attorneys' fee application, argument, and the total amount of attorneys' fees awarded are a matter of public record in this case. Thus, *Reynolds* is clearly inapplicable to this case.

What Joseph requests in this case goes beyond what *Reynolds* requires. Joseph seeks disclosure of the actual allocation of fees among Class Counsel. On March 22, 2002, the Court entered an order acknowledging that all law firms that had appeared on behalf of the class ("Class Counsel") had agreed among themselves on an allocation of the attorneys' fees awarded on April 19, 2001. MCI took no position on the allocation of the fee award among Class Counsel. Accordingly, the Court authorized and directed Class Counsel to distribute the fee award to Class Counsel in accordance with the agreement among them. The actual allocation of the fees among Class Counsel was never made a matter of public record, nor was it required to be so under *Reynolds*. This Court will not require it now.

Accordingly, the Court **DENIES** Joseph's motion to require disclosure of attorneys' fee allocation (Doc. 243).

**IT IS SO ORDERED.**

Signed this 17th day of _____ July _____, 2003.

**DAVID R. HERNDON**
**United States District Judge**

2