UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C. ) | |
| ) | |
| and ) | |
| ) | |
| JONATHAN W. CUNEO ) | |
| ) | |
| v. ) | Case No. 08-00253 (RBW) |
| ) | |
| JOEL D. JOSEPH, ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT AND/OR MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIMS AND IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant incorporates by reference his earlier memoranda in opposition to plaintiffs' first motion for summary judgment. The only additional issue addressed is the issue of conversion.

Plaintiff cites the two leading cases on whether a contract claim breach can constitute conversion. *Curaflex Health Services, Inc. v. Bruni*, 877 F. Supp. 30 (D.D.C. 1995) and *Government of Rwanda v. Rwanda Working Group*, 227 F.Supp 2d (D.D.C. 2002).

The current case clearly is closer to the facts of the *Rwanda* case. In fact, defendant contends that the facts of the current case are even stronger than those in *Rwanda*. The government of Rwanda paid Robert W. Johnson II, a Washington, D.C. attorney, two payments totaling $83,000. Mr. Johnson performed none of the work required by the contract, but retained all of the funds. Those funds were deposited into

1

Mr. Johnson's account. The court held that by keeping those funds and not paying them to Rwanda, Johnson converted the funds to his own use.

Similarly, Jonathan Cuneo and the plaintiffs, received $2.3 million as a payment for the *Leatherman* case on February 12, 2008. It is undisputed that under a contract settling an earlier case, Cuneo et al. agreed to pay Joseph 20% of the proceeds received in settlement of the *Leatherman* case. Cuneo failed to pay Joseph as agreed. The share due Joseph, or $460,000 is clearly identifiable, like the *Rwanda* case. It is even more identifiable than in *Rwanda* because the precise funds were identified on receipt. It is those identified funds that defendant sought to have deposited into this court via a motion for a preliminary injunction. In *Rwanda* only a partial refund was ordered, as there were various credits and debits applied.

The *Curaflex* case is distinguishable. Dr. Bruni agreed to pay Curaflex 70% "of the amount billed for Curaflex services, regardless of whether the patients paid Bruni P.C. for the services." 877 F. Supp at 31. Curaflex was not owed, and did not have an ownership interest in 70% of the funds deposited into a bank account, it was owed 70% of the total amount billed for services. This obligation may have been 70% of the total deposited in Bruni's account, or it could have been 80% or 90% or 82%. In any event it was not a specific identifiable amount as it was in the *Rwanda* case and in the case at bar.

A party is be liable for conversion if the he or she participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto. *Furash & Co. v. McClave,* 130 F. Supp. 2d 48, 58 (D.D.C. 2001); *Equity Group, Ltd. v. Painewebber Inc.,* 839 F. Supp. 930, 933 (D.D.C. 1993); *O'Callaghan v. District of Columbia,* 741 F. Supp.

273, 279-80 (D.D.C. 1990); *Flocco v. State Farm Mut. Auto. Ins. Co.,* 752 A.2d 147, 158 (D.C. 2000).

Cuneo and the other plaintiff exercised control, and continued to exercise control, even after this court noted at oral argument that defendant did not appear to materially breach the agreement in question.  The court stated, "**I MIGHT AGREE THAT IT MAY BE DIFFICULT FOR THE PLAINTIFF  TO PROVE THAT THERE WAS A MATERIAL  BREACH OF THE EARLIER AGREEMENT.**" Transcript of hearing on March 20, 2008 at page 10.  The exercise of dominion and control was unlawful because Cuneo agreed to pay 20% to Joseph, and Cuneo had no lawful right to retain it.  Cuneo does not dispute that he and his firm has exercised dominion and control over the property in question.  The property in question was clearly "of another" as it belonged and belongs to Joseph.   The property in question is clearly kept in denial and repudiation of Mr. Joseph's rights to it.

Cuneo's slim reed of a defense, that defendant breached the agreement by communicating with the parties is an extremely weak attempt to deprive Joseph of the proceeds that he is due under the settlement agreement.

### SETTLEMENT AGREEMENTS MUST BE ENFORCED

There is a strong public policy in favor of the enforcement of settlement agreements.   The "public policy favors voluntary settlement of employment discrimination claims. . . ."  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). Defendant's first case, that was settled via the settlement agreement, was a case for age discrimination, inter alia.

With a strong public policy in favor of enforcing settlement agreements, parties breaching these agreements must do so at their peril. The peril defendant is advocating is the availability of punitive damages. The court in the *Rwanda* case allowed the jury to award punitive damages for the attorney's "theft" or conversion of property. This court should do the same. This was not an ordinary settlement agreement for the payment of an amount of money. The settlement agreement in question provided for a percentage recovery from three clearly identified cases. Cuneo paid the first. Now he and his firm are wrongfully withholding defendant's property for unjustifiable reasons.

For all of these reasons, defendant's motion for partial summary judgment should be granted and plaintiffs' motion for summary judgment and/or dismissal should be denied.

                      Respectfully submitted,

                      /joel d. joseph/
                      _____
                      Joel D. Joseph, Pro Se