UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

THE CUNEO LAW GROUP, P.C., *et al.*,    )
                                         )
              Plaintiffs,    )
                                         )
           v.    )    Case No. 08-00253 (RBW)
                                         )
JOEL D. JOSEPH,    )
                                         )
             Defendant.    )
                                         )
_____    )

**REPLY MEMORANDUM
IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND/OR TO DISMISS
DEFENDANT JOSEPH'S FIRST AMENDED COUNTERCLAIMS**

Plaintiffs Jonathan W. Cuneo and The Cuneo Law Group, P.C., (collectively "Cuneo") submit this reply memorandum in further support of Plaintiffs' Motion for Summary Judgment and/or to Dismiss Defendant Joseph's First Amended Counterclaims.

Defendant Joel D. Joseph ("Joseph") relies on two cases -- *Government of Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45 (D.D.C. 2002) and *Curaflex Health Services, Inc. v. Bruni, M.D., P.C.*, 877 F. Supp. 30 (D.D.C. 1995) -- in opposing Cuneo's motion to dismiss Joseph's new claim for conversion for failure to state a claim. Joseph misconstrues those cases, however.

The distinction between *Government of Rwanda*, in which a conversion claim was upheld, and *Curaflex*, in which a conversion claim was dismissed on summary judgment, was not, as Joseph claims, that a specific, identifiable sum of money was involved in the former, but not in the latter. Joseph Opp. at 2. To the contrary, both cases involved a specific, identifiable sum of money. *See Curaflex*, 877 F. Supp. at 33 ("the monies in the lock box were a specific, identifiable fund").

1

The actual distinction between the two cases which led to the disparate results was the <u>origin</u> of the money. In *Government of Rwanda* the money originally came <u>from</u> the Government of Rwanda. It was advanced by the Government of Rwanda to the defendant to be used for specified purposes. When the new Government of Rwanda demanded the money back, the defendant refused and indeed used some of the money for purposes contrary to the interests of the Government of Rwanda. In doing so, the defendant converted the money of the Government of Rwanda which was in his possession.

In *Curaflex*, on the other hand, the money in question did not come from Curaflex. To the contrary, it came from third parties, albeit for services performed by Curaflex. But the court held that Curaflex did not have an immediate right to possession of a percentage of the money at issue. Rather, its only right to any of the money derived from its contract with Bruni P.C., and was dependent on Bruni P.C.'s meeting its obligation under the contract. "[W]hen Bruni P.C. failed to transfer the funds from the lock box to a Curaflex account, or to instruct the bank to do so, it did not convert Curaflex's property. Rather, it breached its contractual obligation under the PSSA to order a transfer of funds." *Curaflex*, 877 F. Supp. 2d at 33.

The *Curaflex* and *Government of Rwanda* holdings are consistent with District of Columbia law, which defines the tort of conversion as "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) <u>over the personal property of another,</u> (4) in denial or repudiation of that person's rights thereto." *Government of Rwanda*, 227 F. Supp. 2d at 62, citing *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001) (emphasis added). The money in *Government of Rwanda* remained the personal property of the

Government of Rwanda. It had merely been advanced to the defendant. The money in *Curaflex* was not the personal property of Curaflex and never had been. Curaflex simply had a contractual right to be paid a percentage of the money.

Likewise, the money at issue here - 20% of the net fees received by Cuneo in the *Leatherman* case[1] – although a specific, identifiable sum, is not, and never has been, the personal property of Joseph. Nor did it originate from him. Rather, it was paid to Cuneo by a third party, the defendant in *Leatherman*, as part of the settlement of that case, and not on behalf of Joseph. Joseph's only interest in that money, if any,[2] derives from his separate contractual arrangement with Cuneo. "A cause of action for conversion, however, may not be maintained to enforce a <u>mere obligation to pay money</u>." *Curaflex*, 877 F. Supp. at 32 (emphasis added).

The situation here presents an even weaker case for a conversion claim than in *Curaflex*. In that case 100% of the money that was paid to Bruni P.C. was for services rendered by Curaflex, yet the court still dismissed Curaflex's conversion claim. Here, even Joseph does not claim that he did 20% of the work or earned 20% of the fee in the *Leatherman* case. Rather, his only right to any percentage of the fee derives from a contract settling other, unrelated litigation between him and Cuneo. The law is clear, however, that an obligation to pay money cannot be the basis for a conversion claim.

Because a contractual claim cannot be the basis for a conversion claim, it is irrelevant for purposes of deciding Cuneo's motion to dismiss that claim whether

---

[1] Joseph has repeatedly asserted that the 20% at issue amounts to $460,000. This is incorrect. Cuneo was paid $2,190,982, after deduction of expenses (including a $10,000 reserve for unpaid bills). According to the Settlement Agreement Joseph would be entitled a payment equal to 20% of that amount, or approximately $438,196, absent his material breach.

[2] Cuneo, of course, maintains that Joseph, by his material breach of the Settlement Agreement, has forfeited his right to receive any percentage from the *Leatherman* fee. Indeed, that is what this case is all about.

3

Cuneo's refusal to pay Joseph is justified or wrongful. That question will be decided in the context of Cuneo's declaratory judgment action and Joseph's breach of contract claim. Nevertheless, because Joseph cites the Court's statement at the preliminary injunction hearing to suggest that the Court has already decided that question, Cuneo is constrained to point out the conditional nature of the quoted statement: "I might agree that it may be difficult...." (emphasis added). The statement was, at most, an off-the-cuff statement by the Court uttered while denying Joseph's motion on different grounds. Moreover, it focused on only one aspect of the material breach by Joseph, that of contacting litigants. And Joseph ignores the Court's following statement: "Be that as it may, I don't know enough, obviously, about the case at this point on that point, but if that was the only contact that took place, it may not, in fact, amount to a material breach." Tr. at 10-11 (emphasis added). Since the preliminary injunction hearing the Court has been apprised through the affidavits of Jonathan W. Cuneo and Samuel J. Dubbin that Joseph's conduct consisted of a great deal more than mere correspondence with litigants in the *Gold Train* case. Rather, his suit against Cuneo's co-counsel constituted substantial interference with the still-pending *Gold Train* case, a material breach separate and apart from the contacting of litigants which the Court was addressing.

Wherefore, for the foregoing reasons, Cuneo submits that the Court should (1) enter summary judgment granting Cuneo's Declaratory Judgment action and dismissing Joseph's Second Cause of Action; and (2) dismiss Joseph's First, Third, Fourth, Fifth, Sixth and Seventh Causes of Action for failure to state a claim.

June 30, 2008                          Respectfully submitted,


                                       STEIN, MITCHELL & MEZINES, L.L.P.


                                       __/s/_____
                                       JACOB A. STEIN (D.C. Bar  No. 052233
                                       1100 Connecticut Avenue, N.W., Suite 1100
                                       Washington, DC 20036
                                       (202) 737-7777 * Fax (202) 296-8312
                                       E-Mail: jstein@steinmitchell.com



                                       CUNEO GILBERT & LaDUCA, LLP


                                       __/s/_____
                                       JONATHAN W. CUNEO (D.C. Bar No. 39389)
                                       David W. Stanley (D.C. Bar No.174318)
                                       Michael G. Lenett (D.C. Bar No. 425592)
                                       507 C Street, N.E.
                                       Washington, DC 20002
                                       (202) 789-3960 * Fax (202) 789-1813
                                       E-Mail: jonc@cuneolaw.com


5