UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CUNEO LAW GROUP, P.C., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-00253 (RBW) |
| ) | |
| JOEL D. JOSEPH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFFS' OPOSITION TO DEFENDANT JOSEPH'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO HIS FIRST AMENDED COUNTERCLAIMS**

Plaintiffs Jonathan W. Cuneo and The Cuneo Law Group, P.C., (collectively "Cuneo") submit this opposition to Defendant Joel D. Joseph' ("Joseph") Motion for Partial Summary Judgment (Dkt. # 32). Plaintiffs incorporate by reference their previously-filed Memorandum of Points and Authorities in Opposition to Defendant's Motion for a Partial Summary Judgment (Dkt. # 21), with the attached statement of Material Facts and the affidavits of Jonathan W. Cuneo, Samuel J. Dubbin and David W. Stanley.

The only new issue raised in Joseph's latest filing is his new claim for conversion contained in his First Amended Counterclaim. Joseph relies on two cases -- *Government of Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45 (D.D.C. 2002) and *Curaflex Health Services, Inc. v. Bruni, M.D., P.C.*, 877 F. Supp. 30 (D.D.C. 1995) -- in support of his motion for partial summary judgment as to the conversion claim. Joseph misconstrues those cases, however. Neither supports his position. To the contrary, they show that his conversion claim is legally deficient and should be dismissed.

1

The distinction between *Government of Rwanda*, in which a conversion claim was upheld, and *Curaflex*, in which a conversion claim was dismissed on summary judgment, was not, as Joseph claims, that a specific, identifiable sum of money was involved in the former, but not in the latter. Joseph Opp. at 2. To the contrary, both cases involved a specific, identifiable sum of money. *See Curaflex*, 877 F. Supp. at 33 ("the monies in the lock box were a specific, identifiable fund").

The actual distinction between the two cases which led to the disparate results was the <u>origin</u> of the money. In *Government of Rwanda* the money originally came <u>from</u> the Government of Rwanda. It was advanced by the Government of Rwanda to the defendant to be used for specified purposes. When the new Government of Rwanda demanded the money back, the defendant refused and indeed used some of the money for purposes contrary to the interests of the Government of Rwanda. In doing so, the defendant converted the money of the Government of Rwanda which was in his possession.

In *Curaflex*, on the other hand, the money in question did not come from Curaflex. To the contrary, it came from third parties, albeit for services performed by Curaflex. But the court held that Curaflex did not have an immediate right to possession of a percentage of the money at issue. Rather, its only right to any of the money derived from its contract with Bruni P.C., and was dependent on Bruni P.C.'s meeting its obligation under the contract. "[W]hen Bruni P.C. failed to transfer the funds from the lock box to a Curaflex account, or to instruct the bank to do so, it did not convert Curaflex's property. Rather, it breached its contractual obligation under the PSSA to order a transfer of funds." *Curaflex*, 877 F. Supp. 2d at 33.

The *Curaflex* and *Government of Rwanda* holdings are consistent with District of Columbia law, which defines the tort of conversion as "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) <u>over the personal property of another</u>, (4) in denial or repudiation of that person's rights thereto." *Government of Rwanda*, 227 F. Supp. 2d at 62, citing *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 58 (D.D.C. 2001) (emphasis added). The money in *Government of Rwanda* remained the personal property of the Government of Rwanda. It had merely been advanced to the defendant. The money in *Curaflex* was not the personal property of Curaflex and never had been. Curaflex simply had a contractual right to be paid a percentage of the money.

Likewise, the money at issue here - 20% of the net fees received by Cuneo in the *Leatherman* case[1] – although a specific, identifiable sum, is not, and never has been, the personal property of Joseph. Nor did it originate from him. Rather, it was paid to Cuneo by a third party, the defendant in *Leatherman*, as part of the settlement of that case, and not on behalf of Joseph. Joseph's only interest in that money, if any,[2] derives from his separate contractual arrangement with Cuneo. "A cause of action for conversion, however, may not be maintained to enforce a <u>mere obligation to pay money</u>." *Curaflex*, 877 F. Supp. at 32 (emphasis added).

The facts here present an even weaker case for a conversion claim than in *Curaflex*. In that case 100% of the money that was paid to Bruni P.C. was for services rendered by Curaflex, yet the court still dismissed Curaflex's conversion claim. Here,

---

[1] Joseph has repeatedly asserted that the 20% at issue amounts to $460,000. This is incorrect. Cuneo was paid $2,190,982, after deduction of expenses (including a $10,000 reserve for unpaid bills). According to the Settlement Agreement Joseph would be entitled a payment equal to 20% of that amount, or approximately $438,196, absent his material breach.
[2] Cuneo, of course, maintains that Joseph, by his material breach of the Settlement Agreement, has forfeited his right to receive any percentage from the *Leatherman* fee. Indeed, that is what this case is all about.

even Joseph does not claim that he did 20% of the work or earned 20% of the fee in the *Leatherman* case. Rather, his only right to any percentage of the fee derives from a contract settling other, unrelated litigation between him and Cuneo. The law is clear, however, that a mere obligation to pay money cannot be the basis for a conversion claim.

Because a contractual claim cannot be the basis for a conversion claim, it is irrelevant for purposes of deciding Joseph's summary judgment motion whether Cuneo's refusal to pay Joseph is justified or wrongful. That question will be decided in the context of Cuneo's declaratory judgment action and Joseph's breach of contract claim. Nevertheless, because Joseph trumpets the Court's statement at the preliminary injunction hearing to suggest that the Court has already decided that question, Cuneo is constrained to point out the conditional nature of the quoted statement: "I <u>might</u> agree that it <u>may</u> be difficult...." (emphasis added). The statement was, at most, an off-the-cuff statement by the Court, uttered while denying Joseph's preliminary injunction motion on different grounds. Moreover, it focused on only one aspect of the material breach by Joseph, that of contacting litigants. And Joseph ignores the Court's following statement: "Be that as it may, <u>I don't know enough, obviously, about the case at this point on that point</u>, but if that was the only contact that took place, it <u>may</u> not, in fact, amount to a material breach." Tr. at 10-11 (emphasis added). Since the preliminary injunction hearing the Court has been apprised through the affidavits of Jonathan W. Cuneo and Samuel J. Dubbin that Joseph's conduct consisted of a great deal more than mere correspondence with litigants in the *Gold Train* case. Rather, his suit against Cuneo's co-counsel constituted substantial interference with the still-pending *Gold Train* case, a material breach separate and apart from the contacting of litigants which the Court was

4

addressing. *See* Affidavit of Jonathan W. Cuneo, ¶¶ 5-9; Affidavit of Samuel J. Dubbin, ¶¶ 3-6.

Wherefore, for the foregoing reasons, Cuneo submits that the Court should deny Joseph's Motion for Partial Summary Judgment.

July 3, 2008                                       Respectfully submitted,

                                                   STEIN, MITCHELL & MEZINES, L.L.P.

                                                   __/s/_____
                                                   JACOB A. STEIN (D.C. Bar No. 052233
                                                   1100 Connecticut Avenue, N.W., Suite 1100
                                                   Washington, DC 20036
                                                   (202) 737-7777 * Fax (202) 296-8312
                                                   E-Mail: jstein@steinmitchell.com


                                                   CUNEO GILBERT & LaDUCA, LLP

                                                   __/s/_____
                                                   JONATHAN W. CUNEO (D.C. Bar No. 39389)
                                                   David W. Stanley (D.C. Bar No.174318)
                                                   Michael G. Lenett (D.C. Bar No. 425592)
                                                   507 C Street, N.E.
                                                   Washington, DC 20002
                                                   (202) 789-3960 * Fax (202) 789-1813
                                                   E-Mail: jonc@cuneolaw.com